# EXHIBIT B

NAACP Plaintiffs' Discovery Responses

Exhibit to Declaration of Hilary Harris Klein

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| SHAUNA WILLIAMS, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1057 |
| REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., | |
| *Defendants*. | |
| _____ | |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., | |
| *Plaintiffs*, | |
| | Civil Action No. 23 CV 1104 |
| v. | |
| PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., | |
| *Defendants*. | |

**_NAACP_ PLAINTIFFS' RESPONSES AND OBJECTIONS TO**
**LEGISLATIVE DEFENDANTS FIRST INTERROGATORIES AND REQUESTS FOR**
**PRODUCTION OF DOCUMENTS**

1

# RESPONSE TO INTERROGATORIES

## Reservation of Rights

Plaintiffs are responding to Defendants' First Set of Interrogatories ("Interrogatories") based on the information currently available to them. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiffs therefore reserve their right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiffs make their objections and responses in accordance with their interpretation and understanding of these Interrogatories and in accordance with their current knowledge, understanding, and belief as to the facts and information available to them at the time of serving these responses. If Defendants subsequently provide an interpretation of any of their Interrogatories that differs from Plaintiffs' understanding of the same, Plaintiffs reserve their right to complete the discovery of facts in this case and to rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. They also reserve the right to amend, revise, correct, modify, or clarify their responses to properly respond to any interpretation Defendants may give these Interrogatories.

Plaintiffs reserve their right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiffs are also willing to meet and confer about any of their objections or responses.

**General Objections**

        Plaintiffs, by and through their undersigned counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, provide the following objections and responses to Legislative Defendants' First Set of Interrogatories ("Interrogatories").

        1.     Plaintiffs object to the Interrogatories to the extent that they purport to impose obligations beyond, or otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable laws, rules, or governing orders.

        2.     Plaintiffs object to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, any other applicable privilege or immunity, or any protective order, or that is otherwise exempted from discovery, or prohibited from disclosure by law, rules, or protective orders. Plaintiffs hereby assert all applicable privileges and protections to the extent implicated by the Interrogatories. Any disclosure of such privileged and/or protected information is inadvertent and is not intended to waive those privileges or protections. Plaintiffs reserve the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

        3.     Plaintiffs object to the Interrogatories as overbroad and unduly burdensome to the extent that they are not limited to a specific time period or scope of the case.

        4.     Plaintiffs object to the Interrogatories to the extent that they purport to impose an obligation on Plaintiffs to locate, obtain, and produce information that is not in Plaintiffs' possession, custody, or control.

5.     Plaintiffs object to the Interrogatories to the extent that they require Plaintiffs to produce information that does not already exist and/or call for information in a format other than that in which it is ordinarily kept by Plaintiffs.

6.     Plaintiffs object to the Interrogatories to the extent that they seek information available from public sources.

7.     Plaintiffs object to the Interrogatories to the extent that they seek information beyond what is available from a reasonable search of Plaintiffs' files likely to contain relevant or responsive documents or information and from a reasonable inquiry of individuals likely to have information relevant to a claim or defense of any party or to the subject matter of this case.

8.     Plaintiffs object to the Interrogatories to the extent they seek disclosure of Plaintiffs' confidential information. Any such information will be disclosed only subject to a negotiated Protective Order. Plaintiffs further object to the Interrogatories to the extent that they seek information subject to a confidentiality obligation owed to a non-party to this case, until such time that the non-party agrees to disclosure, or an appropriate court order is entered.

9.     Plaintiffs object to the Interrogatories on the grounds and to the extent that they are overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to the Interrogatories on the ground and to the extent that the burden or expense of the proposed discovery outweighs its likely benefit, taking into account, for example, the needs of the case, the parties' resources, and the importance of the proposed discovery in resolving the issues at stake in the litigation. Plaintiffs further object to the Interrogatories to the extent they are cumulative of other discovery in this case; seek documents already in the possession, custody, or control of, or otherwise equally available to, the Defendants; or seek discovery more readily available through less burdensome means.

3

10. Plaintiffs object to these Interrogatories to the extent they seek information protected from disclosure under the First Amendment because such disclosure would intrude on or chill Plaintiffs' First Amendment rights, including the right to associate and to engage in the exchange of ideas, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958); *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), as revised (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

11. Plaintiffs object to the Interrogatories as premature to the extent that they seek information that will be the subject of expert testimony. Expert testimony will be disclosed in accordance with the schedule ordered by the Court.

12. Plaintiffs object to the Interrogatories to the extent that they seek legal conclusions. Furthermore, the Interrogatories requesting all evidence or the basis for a contention or legal conclusion present "mixed questions of law and fact" that "create disputes between the parties which are best resolved after much or all of the other discovery has been completed." Fed. R. Civ. P. 33, 1970 Advisory Comment Notes. Accordingly, Plaintiffs' responses should not be construed as a limitation on the proof that may be offered at trial. *See* Fed. R. Civ. P. 33, 1970 Advisory Comment Notes ("The general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof.").

13. By responding to these Interrogatories, Plaintiffs do not waive any objections to the admission of these responses into evidence on the grounds of competence, relevance, materiality, or on any other proper grounds for objection at trial.

14. Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied by or inferred from the responses below. Any answer or objection to an Interrogatory should not be taken as: (a) an  agreement with, or acceptance or admission of, the

existence of any alleged facts set forth or assumed by such Interrogatory; (b) an agreement that Interrogatories for similar information or documents will be treated in a similar manner; or (c) an acceptance of, or agreement with, any of the definitions in the Interrogatories, to the extent that the definition or meaning of any defined term is at issue in this Litigation. An answer to part or all of any Interrogatory is not intended to be, and shall not be construed to be, a waiver of any part of any objection to the Interrogatory.

15. The above General Objections apply to each of the Interrogatories and are hereby incorporated into each of Plaintiffs' Specific Responses and Objections set forth below. Plaintiffs' Specific Responses and Objections may repeat or restate a General Objection for emphasis or some other reason; however, the failure to repeat or restate a General Objection in Plaintiffs' Specific Responses and Objections shall not constitute a waiver of any General Objection.

16. Plaintiffs' Responses and Objections are made to the best of their present knowledge, information and belief. Discovery in this case is ongoing. Plaintiffs reserve the right at any time to revise, correct, clarify, supplement and/or amend the objections or responses set forth herein as and when Plaintiffs ascertain new, better, additional or different information; and/or complete additional analysis relating to the claims and/or defenses in this litigation.

**Objections to Definitions and Instructions**

1. Plaintiffs object to each definition and instruction to the extent that it seeks information beyond that permitted by the Federal Rules of Civil Procedure or the Local Rules.

2. Plaintiffs object to the terms "you" and "your" to the extent that the terms seek information outside of Plaintiffs' possession, custody, or control.

3. Plaintiffs object to the definitions of "documents," "communications," and "social

5

media" to the extent that they purport to include forms of information not discoverable under the Federal Rules, Local Rules, or any other applicable authority. Plaintiffs further object to the definitions to the extent that they define a category of documents in an overbroad manner and/or request a production of documents which would be unduly burdensome or disproportionate to the needs of the litigation.

4.      Plaintiffs object to Instruction Nos. 2 and 3 to the extent that they purport to seek information outside Plaintiffs' possession, custody, or control. Plaintiffs further object to these instructions to the extent that they purport to seek information beyond what is available from a reasonable search.

### Interrogatory No. 1

Please state or identify: your full legal name, date of birth, and each address where you have resided in the past 8 years.

For each of the Organizational Plaintiffs, please state or identify:

(a)      Your organization's full legal name and any other names (including acronyms, pseudonyms, or assumed names) that you have used in the past 10 years; and

(b)      Whether your organization has members and, if so, the current qualifications for membership.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs further object to this Request because subpart (a) seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, and the internal deliberations of the Organizational Plaintiffs and their members would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information. Furthermore, the burden and expense of redacting or screening for this information would far outweigh any use or relevance it has to the claims and defenses in this matter.

6

Plaintiffs object to this Interrogatory on the grounds that the request on Organizational Plaintiffs is compound and contains at least two distinct subparts that are not substantially related to be considered part of a single Interrogatory.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond as follows:

North Carolina NAACP:

(a) Plaintiff North Carolina State Conference of the N.A.A.C.P. has held this full legal title for at least the past 10 years. It is also commonly known as the "North Carolina NAACP," the "NC NAACP," and the "NC NAACP State Conference."

(b) The North Carolina NAACP has over 10,000 members across 72 local branch chapters. Members are qualified as those who have voluntarily enrolled and have paid dues to the North Carolina NAACP.

Common Cause:

(a) Plaintiff Common Cause has held its full legal title for at least the past 10 years. Within North Carolina, it is also commonly known as "Common Cause North Carolina" and "CCNC".

(b) Common Cause is a membership organization. In order to be an active member of Common Cause, an individual must have donated financially to the organization and/or taken an action with Common Cause in the last two years. Actions can include, but are not limited to, participating in a community event with Common Cause, volunteering as a Common Cause election observer, or advocating for a policy in support of Common Cause goals with an elected representative as part of an advocacy campaign.

<p style="text-align:center; color:red;">NOTICE OF DESIGNATION OF CONFIDENTIAL INFORMATION:</p>

Plaintiffs hereby designate the full legal name, address and birth date information of the individual plaintiffs provided in response to this Interrogatory as Confidential. This Protected Information that should not be publicly filed or otherwise disclosed, publicly or otherwise, by Legislative Defendants, as set forth in the [proposed] Stipulated Protective Order.

Mitzi Reynolds Turner:



<u>Dawn Daly-Mack:</u>

- REDACTED

<u>Hollis Briggs:</u>

- REDACTED

<u>Corine Mack:</u>

- REDACTED

<u>Calvin Jones:</u>

- REDACTED

<u>Joan Chavis:</u> at the time of the filing of the Complaint, Ms. Chavis resided in Wake County as stated therein. *See* Complaint, Paragraph 23. She has very recently relocated to Harnett County. Accordingly, NAACP Plaintiffs will seek Defendants' consent to a motion to voluntarily dismiss Ms. Chavis from this case.

<u>Linda Sutton:</u>

- REDACTED

<u>Syene Jasmin:</u>

- REDACTED

<span style="color:red">END DESIGNATION OF CONFIDENTIAL INFORMATION</span>

**Interrogatory No. 2**

For all Plaintiffs: State whether you, your organization, or any organization of which you are a member has drawn or created any alternative maps to the 2023 Plans. If you have drawn or created such maps, identify each individual involved in the development of each map you created, the software used to draw or create each map, and describe the criteria you or your organization used to draw or create each map.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privilege, including maps generated by or under the supervision of attorneys representing Plaintiffs in researching and litigating this matter, or draft expert materials protected under Rule 26 of the Federal Rules of Civil Procedure. Similarly, Plaintiffs object to this Interrogatory to the extent it seeks to compel the disclosure of expert materials before the August 1, 2024, expert disclosure deadline or before any remedial stage of this litigation.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs confirm that no Plaintiff has created or drawn any alternative map to the 2023 Plans.

**Interrogatory No. 3**

Identify each district you are challenging for each of your claims under Section 2 of the Voting Rights Act (Counts 1, 4, 6, 8, 10, 11), the Fourteenth Amendment (Counts 2, 3, 7), and the Fourteenth and Fifteenth Amendment (Counts 5, 9, 12).

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this interrogatory because it seeks to require Plaintiffs to regurgitate portions of their Complaint or to present legal conclusions at this stage in the litigation in which discovery is ongoing.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond that the following districts are challenged under Section 2 of the Voting Rights Act, the Fourteenth Amendment, and the Fourteen and Fifteenth Amendment:

9

2023 Senate Plan

The specific Senate districts challenged are set forth in pages 41 through 51 of the Complaint, as well as enumerated Counts 1 through 5 on pages 73 through 79 of the Complaint, including:

- Challenges to Senate Districts 1 and 2 under the discriminatory results test of Section 2 of the Voting Rights Act (Count 1);
- Challenges to Senate Districts 7 and 8 as impermissible racial gerrymanders in violation of the Fourteenth Amendment (Count 2);
- Challenges to Senate Districts 7, 8, 38, 39, 40, 41 and 42 as malapportioned in violation of the Fourteenth Amendment (Count 3).

Plaintiffs also allege that these specific districts, as well as the 2023 Senate Plan overall, violate the prohibition on intentional vote dilution under Section 2 of the Voting Rights Act (Count 4) and the prohibition on intentional discrimination under the Fourteenth and Fifteenth Amendments (Count 5).

2023 House Plan:

The specific House districts challenged are set forth in pages 51 through 61 of the Complaint, as well as enumerated Counts 6 through 9 on pages 79 through 83 of the Complaint, including:

- Challenge to House Districts 4, 5, 7, 10, 12, 24, 25 and 32 under the discriminatory results test of Section 2 of the Voting Rights Act (Count 6);
- Challenge to House Districts 11, 21, 33, 34, 35, 36, 37, 38, 39, 40, 41, 49, 66, 71, 72, 74, 75 and 91 as malapportioned in violation of the Fourteenth Amendment (Count 7). As a point of clarification, Paragraph 273 of the Complaint has a typographical error listing "House Districts 27 through 34, and House Districts 71, 72, 74, 75, and 91" as the subject of Plaintiffs' malapportionment challenge in Count 7; this is incorrect, and should have instead mirrored those districts identified above and which are specified in the body of the Complaint at Paragraphs 174 through 188 instead.

Plaintiffs also allege that these specific districts, as well as the 2023 House Plan overall violate the prohibition on intentional vote dilution under Section 2 of the Voting Rights Act (Count 8) and the prohibition on intentional discrimination under the Fourteenth and Fifteenth Amendments (Count 9).

2023 Congressional Plan

The specific Congressional districts challenged are set forth in pages 61 through 64 of the Complaint, as well as enumerated Counts 10 through 12 on pages 83 through 85 of the Complaint, including:

- Challenge to Congressional District 1 as violating the prohibition on intentional vote dilution under Section 2 of the Voting Rights Act (Count 10);
- Challenge to Congressional Districts 5, 6, 9, and 10 as violating the prohibition on intentional vote dilution under Section 2 of the Voting Rights Act (Count 11).

Plaintiffs also allege that these specific districts, as well as the 2023 Congressional Plan overall violate the prohibition on intentional discrimination under the Fourteenth and Fifteenth Amendments (Count 12).

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.


**Interrogatory No. 4**

For each Individual Plaintiff, describe in detail how you are allegedly harmed by the 2023 Congressional, state Senate, or state House district you are challenging for each of your claims under Section 2 of the Voting Rights Act (Counts 1, 4, 6, 8, 10, 11), the Fourteenth Amendment (Counts 2, 3, 7), and the Fourteenth and Fifteenth Amendments (Counts 5, 9, 12).

For each of the Organizational Plaintiffs, please state or identify:

      (a)    The members of your organization living in each challenged Congressional, state Senate, and state House district whose standing you will assert and the corresponding district(s) in which they reside; and

      (b)    All facts and documents on which you intend to rely to support your organization's standing, including but not limited to allegations of "harm" resulting from the 2023 Plans with respect to each challenged district in your Complaint.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this interrogatory because it seeks to require Plaintiffs to regurgitate portions of their Complaint or to present legal conclusions at this stage in the litigation in which discovery is ongoing.

Plaintiffs further object to this Interrogatory on the grounds that the request on Organizational Plaintiffs is compound and contains at least two distinct subparts that are not substantially related to be considered part of a single Interrogatory.

Plaintiffs further object to this Request because subpart (a) seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, and the internal deliberations of the Organizational Plaintiffs and their members, would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information.

Furthermore, the burden and expense of redacting or screening for this information would far outweigh any use or relevance it has to the claims and defenses in this matter.

Plaintiffs further object to this Request because subpart (b) requesting "all facts and documents on which you intend to rely to support . . . allegations of 'harm'" is beyond the scope of permissible discovery and unduly burdensome. Organizational Plaintiffs assert only representational standing in this matter as a representative of its members, which does not require a show of "harm" *per se* but rather demonstration that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiffs further object to this Request because subpart (b) is a blockbuster interrogatory attempting to require Plaintiffs to marshal all their evidence at this stage in the litigation, contrary to what is required under the Federal Rules of Civil Procedure. Plaintiffs will produce the Documents, data, and other evidence in support of their claims in this lawsuit according to the applicable scheduling order, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond as follows:

Plaintiff North Carolina NAACP has, as of the date of this disclosure, identified members who identify as Black or African American and are registered voters in at least the following districts: 2023 Senate Plan districts 1, 2, 8 & 41; 2023 House Plan districts 5, 9, 10, 12, 23, 24, 27, 32, 37 & 71; and 2023 Congressional Plan districts 1, 3, 5, 6 & 10. This includes members who identify as Black or African American and are registered voters in the following counties: Vance County; Warren County; Halifax County; Northampton County; Hertford County; Gates County; Pasquotank County; Bertie County; Wilson County; Edgecombe County; Martin County; Pitt County; Greene County; Lenoir County; Wayne County; New Hanover County; Mecklenburg County; Wake County; and Forsyth County. These areas are far from the only areas in which North Carolina NAACP has members. As needed to maintain standing, the North Carolina NAACP will work to identify members living in these and other areas of the state who are registered voters and identify as Black or African-American.

The North Carolina NAACP seeks to protect the interests of these members to vote under lawful and constitutional voting plans that do not deny them equal voting power or deny them an equal opportunity to elect candidates of their choice, or otherwise dilute their vote, sort, or discriminate against them on account of race. This is germane to its mission of advancing the social and political rights of Black people and all persons of color by advocating for policies and practices that eliminate discrimination. Central to this mission is fostering civic engagement and ensuring that people of color are represented at all levels of government by legislators who share their interests, values, and beliefs, and who will be accountable to the community. To this end, the

North Carolina NAACP facilitates nonpartisan voter registration drives to promote civic participation and has engaged in redistricting-related advocacy.

Plaintiff Common Cause has, as of the date of this disclosure, identified members who identify as Black or African American in at least the following districts: 2023 Senate Plan districts 1, 3 & 40; 2023 House Plan districts 5, 7, 8, 9, 10, 12, 23, 32, 37 & 71; and 2023 Congressional Plan districts 1 & 5. This includes members who identify as Black or African American and are registered voters in the following counties: Edgecombe County; Forsyth County; Franklin County; Guilford County; Lenoir County; Martin County; Mecklenburg County; Pasquotank County; Pitt County; Vance County; and Wake County. These areas are far from the only areas in which Common Cause has members. As needed to maintain standing, Common Cause will work to identify members living in these and other areas of the state who are registered voters and identify as Black or African-American.

Common Cause seeks to protect the interests of these members to vote under lawful and constitutional voting plans that do not deny them equal voting power or deny them an equal opportunity to elect candidates of their choice, or otherwise dilute their vote, sort, or discriminate them, on account of race. This is germane to its mission around fair elections and encouraging a more representative, open, and responsive government. As part of that mission, Common Cause has educated members and the public about the redistricting process, including how to participate, monitor, and hold decision-makers accountable. Common Cause has researched state redistricting practices to identify best practices for creating a legal, transparent, responsive, and equitable redistricting process. It also assists voters in navigating the elections process, provides resources to help voters determine their districts and polling places, and mobilizes voters to engage in advocacy for government accountability.

Plaintiff Calvin Jones is a Black citizen of the United States and of the State of North Carolina, and a resident of Norlina in Warren County and member of the Warren County NAACP. Mr. Jones's residence is within Senate District 2, House District 27, and Congressional District 1 under both the 2023 Plans and the prior plans used in the 2022 election. Mr. Jones is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Senate Plan dilutes Mr. Jones' vote on account of race in intent and effect in violation of Section 2 of the Voting Rights Act and violates his right to be free from intentional under the Fourteenth and Fifteenth Amendments, the 2023 House Plan violates his right to one-person, one-vote under the Fourteenth Amendment and intentionally dilutes his vote on account of race in violation of Section 2 of the Voting Rights Act and violates his right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments, and the 2023 Congressional Map intentionally dilutes his vote on account of race in violation of Section 2 of the Voting Rights Act and violates his right to be free from intentional under the Fourteenth and Fifteenth Amendments.

Plaintiff Corine Mack is a Black citizen of the United States and of the State of North Carolina, and a resident of Charlotte in Mecklenburg County and Branch President of the Mecklenburg NAACP. Ms. Mack's residence is within Senate District 41 in the 2023 Senate Plan and the state senate plan used in the 2022 general election. Ms. Mack is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Senate Plan violates her right to one-person, one-vote under the Fourteenth Amendment, dilutes her vote on account of

race in intent in violation of Section 2 of the Voting Rights Act, and violates her right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments.

Plaintiff Dawn Daly-Mack is a Black citizen of the United States and of the State of North Carolina, and a resident of Gaston in Northampton County and Branch President of the Northampton NAACP. Ms. Daly-Mack's residence is within Senate District 1, House District 27, and Congressional District 1 under the 2023 Plans and Senate District 3, House District 27, and Congressional District 1 under the prior plans used in the 2022 election. Ms. Daly-Mack is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Senate Plan dilutes Ms. Daly-Mack's vote on account of race in intent and effect in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional under the Fourteenth and Fifteenth Amendments, the 2023 House Plan violates her right to one-person, one-vote under the Fourteenth Amendment and intentionally dilutes her vote on account of race in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments, and the 2023 Congressional Map intentionally dilutes her vote on account of race in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional under the Fourteenth and Fifteenth Amendments.

Plaintiff Hollis Briggs is a Black citizen of the United States and of the State of North Carolina, and a resident of Wilmington in New Hanover County and a member of the NAACP. Mr. Briggs's residence was within Senate District 7 under the 2022 Senate Plan and is now in State Senate District 8 under the 2023 Senate Plan. Mr. Briggs is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Senate Plan violates his right to be free from racial gerrymandering under the Fourteenth Amendment, to one-person, one-vote under the Fourteenth Amendment, intentionally dilutes his vote on account of race in violation of Section 2 of the Voting Rights Act and violates his right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments.

Plaintiff Mitzi Reynolds Turner is a Black citizen of the United States and of the State of North Carolina, and a resident of High Point in Guilford County and member of the NAACP and Common Cause. Ms. Turner's residence is within Congressional District 6 under both the 2023 Congressional Plan and the congressional plan used in the 2022 election (the "2022 Congressional Plan"). Ms. Turner is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Congressional Plan intentionally dilutes her vote on account of race in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments.

Plaintiff Joan Chavis resided, at the time of the filing of the Complaint, in Wake County as stated therein. *See* Complaint, Paragraph 23. She has, very recently, relocated to Harnett County. Accordingly, NAACP Plaintiffs will seek Defendants' consent to a motion to voluntarily dismiss Ms. Chavis from this case.

Plaintiff Linda Sutton is a Black citizen of the United States and of the State of North Carolina, and a resident of Winston-Salem in Forsyth County and member of the NAACP. Ms. Sutton's residence is within House District 71 under both the 2023 House Plan and the 2022 House Plan. Ms. Sutton is a registered voter who has regularly voted in the past and intends to vote in the

14

future. Accordingly, the 2023 House Plan violates Ms. Sutton's right to one-person, one-vote under the Fourteenth Amendment, intentionally dilutes her vote on account of race in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments, and the 2023 Congressional Plan dilutes her vote on account of race in violation of Section 2 of the Voting Rights Act and violates her right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments.

Plaintiff Syene Jasmin is a Black citizen of the United States and of the State of North Carolina, and a resident of Winterville in Pitt County and member of the NAACP. Mr. Jasmin's residence was located in Congressional District 1 under the 2022 Congressional Plan and is now in Congressional District 3 under the 2023 Congressional Plan. Mr. Jasmin's residence is located within Senate District 5 and House District 9 under both the 2023 Plans and those used in the 2022 election. Mr. Jasmin is a registered voter who has regularly voted in the past and intends to vote in the future. Accordingly, the 2023 Congressional Plan intentionally dilutes his vote on account of race in violation of Section 2 of the Voting Rights Act and violates his right to be free from intentional discrimination under the Fourteenth and Fifteenth Amendments.

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.


**Interrogatory No. 5**

For all Plaintiffs: Identify all persons or entities from whom you have obtained any written or oral statement, report, memorandum, or testimony (including via email or text message) concerning any matter related to the allegations contained in your Complaint from January 1, 2020 through the present.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privilege, including communications from counsel or those acting under counsel's supervision.

Plaintiffs further object to this Request because it seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, and the internal deliberations of the Organizational Plaintiffs and their members, and communications between Individual Plaintiffs and organizations, would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information.

15

Furthermore, the burden and expense of redacting or screening for this information would far outweigh any use or relevance it has to the claims and defenses in this matter, and Plaintiffs further object to this Request as its timing (January 1, 2020 through present) is overbroad and disproportionate to the needs of the case given it is Legislative Defendants' actions, not Plaintiffs', that are have caused the harm alleged in this matter and form the basis of the defenses asserted.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs request that Defendants articulate the relevance of this information to any claim or defense in the instant action. Plaintiffs request to meet and confer with Defendants regarding this Request before they are able to provide a response.

## Interrogatory No. 6

For each Individual Plaintiff: Identify every organization (e.g. civic or non-profit), group, church, campaign (including your own campaign for political office, if any), political party, or political committee (including any of the Organizational Plaintiffs in this action) in which you are or were a member or in which you are or were otherwise involved during the last 8 years by stating the following:

      (a)    the name of the organization, group, church, campaign, political party, or political committee;

      (b)    the date your affiliation with the organization, group, church, campaign, political party, or political committee began and, if applicable, the date your affiliation ended;

      (c)    any title, office, or position you hold or have held in the organization, group, church, campaign, political party, or political committee; and

      (d)    whether you pay or paid dues, a membership fee, or any other sum of money to be a member or to be affiliated with the organization, group, church, campaign, political party, or political committee.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this Interrogatory on the grounds that the request is compound and contains at least four distinct subparts that are not substantially related to be considered part of a single Interrogatory.

16

Plaintiffs further object to this request because the terms "member" and "were otherwise involved" is undefined and vague and thus unduly burdensome to the extent that it expands the scope of discovery in a manner that is not proportional to the needs of the case. Whether or not someone is considered a "member" and considers themselves a "member" is dependent on the organization, and without further specification on what Legislative Defendants mean by "member" or "involved" Plaintiffs are unable to answer this interrogatory.

Plaintiffs further object to this Request because it seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership information, would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information.

Furthermore, the chilling effect of disclosing this information would far outweigh any use or relevance it has to the claims and defenses in this matter, and Plaintiffs further object to this Request as its timing (8 years) is overbroad and disproportionate to the needs of the case given it is Legislative Defendants' actions, not Plaintiffs', that are have caused the harm alleged in this matter and form the basis of the defenses asserted.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs disclose that, as set forth in the Complaint, Plaintiffs Calvin Jones, Hollis Briggs, Linda Sutton, Syene Jasmin, Dawn Daly-Mack, and Corine Mack, are members of local chapters of the North Carolina NAACP, and Plaintiff Mitzi Reynolds Turner is a member of the North Carolina NAACP and Common Cause.

Regarding additional affiliations, Plaintiffs request that Defendants articulate the relevance of this information to any claim or defense in the instant action. Plaintiffs agree to meet and confer with Defendants on what information is sought within the scope of this request.


**Interrogatory No. 7**

For all Plaintiffs: Except for your attorney, identify each person who participated in the preparation, factual investigation, and/or drafting of your responses to these Interrogatories or who you consulted, relied upon, or otherwise received information from in preparing your answers to these Interrogatories and specify each Interrogatory for which he/she participated in the preparation, factual investigation, and/or drafting of your responses or was consulted, relied upon, or otherwise constituted a source of information.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond as follows:

<u>NC NAACP:</u> These answers were provided by President Maxwell in consultation with State Conference and NAACP local branch leadership, with the assistance of counsel.

<u>Common Cause:</u> These answers were provided by Bob Phillips in consultation with Common Cause national and Common Cause North Carolina staff, with the assistance of counsel.

The Individual Plaintiffs received assistance from counsel and those acting under the direction of counsel only.

### Interrogatory No. 8

Identify all direct evidence supporting your allegations in Paragraphs 128 and 136 of the Complaint that "map-drawers" and others involved in the map-drawing process were "aware of" and "intended" the alleged "disparate impact of new district lines on Black voters." The term "direct evidence" in this interrogatory holds the meaning of the term "direct evidence" in *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1234 (2024).

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this blockbuster interrogatory because it seeks to require Plaintiffs to present legal conclusions at this stage in the litigation in which discovery is ongoing, and to marshal all their evidence at this stage in the litigation, contrary to what is required under the Federal Rules of Civil Procedure. Plaintiffs will produce the Documents, data, and other evidence support their claims in this lawsuit according to the applicable scheduling order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence.

Plaintiffs further object to this Request because it seeks information accessible to and/or in the possession of Defendants.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond that courts use the factors outlined in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), to determine if the decision-makers acted with illicit intent. Under *Arlington Heights*, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. "The impact of the official action . . . provide[s] an important starting point." *Id.* (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). From there, courts consider five non-exhaustive factors to determine whether a particular decision was

made with a discriminatory purpose: (1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history. *Arlington Heights*, 429 U.S. at 267–68. Evidence of race-based hatred or outright racism, or that any particular legislator harbored racial animosity or ill-will toward minorities because of their race, is not required. *N.C. NAACP v. McCrory*, 831 F.3d 204, 222 (4th Cir. 2016). Here, the evidence substantiating Defendants' awareness and intent and supporting these factors is set forth in detail in paragraphs 49 through 132 of the Complaint, including the long history of discriminatory redistricting in North Carolina, evidentiary records of *Covington v. North Carolina*, 316 F.R.D. 117, 168 (M.D.N.C. 2016), *aff'd* 137 S. Ct. 2211 (2017); *Cooper v. Harris*, 581 U.S. 285 (2017), *Common Cause v. Lewis*, No. 18CVS014001, 2019 N.C. Super. LEXIS 56, at *313 (Super. Sept. 3, 2019), *Harper v. Hall*, 380 N.C. 317 (2022) and subsequent remedial legislative record, and the 2023 redistricting process and legislative record. As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.

**Interrogatory No. 9**

Excluding expert witness evidence to be sponsored under Federal Rule of Evidence 702, identify all circumstantial evidence supporting your allegations in Paragraphs 128 and 136 of the Complaint that the "map-drawers" and others involved in the map-drawing process were "aware of" and "intended" the alleged "disparate impact of new district lines on Black voters." The term "circumstantial evidence" in this interrogatory holds the meaning of the term "circumstantial evidence" in *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1234–36 (2024).

**Objections:**

Please see the objections set forth in response to Interrogatory No. 8, which are incorporated here by reference.

**Response:**

Please see the responses set forth in response to Interrogatory No. 8, which are incorporated here by reference.

**Interrogatory No. 10**

Identify all direct evidence supporting your allegations in Paragraphs 265, 280, and 290 of the Complaint that the 2023 Plans were "enacted with the intent to discriminate on the basis of race as a motivating factor . . . ." The term "direct evidence" in this interrogatory holds the meaning of the term "direct evidence" in *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1234 (2024).

19

**Objections:**

Please see the objections set forth in response to Interrogatory No. 8, which are incorporated here by reference.

**Response:**

Please see the responses set forth in response to Interrogatory No. 8, which are incorporated here by reference.

## Interrogatory No. 11

Excluding expert witness evidence to be sponsored under Federal Rule of Evidence 702, identify all circumstantial evidence supporting your allegations in Paragraphs 265, 280, and 290 of the Complaint that the 2023 Plans were "enacted with the intent to discriminate on the basis of race as a motivating factor . . . ." The term "circumstantial evidence" in this interrogatory holds the meaning of the term "circumstantial evidence" in *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1234–36 (2024).

**Objections:**

Please see the objections set forth in response to Interrogatory No. 8, which are incorporated here by reference.

**Response:**

Please see the responses set forth in response to Interrogatory No. 8, which are incorporated here by reference.

## Interrogatory No. 12

Identify all evidence supporting your allegations of intentional vote dilution against the 2023 Senate Plan, the 2023 House Plan, and Congressional Districts 1, 5, 6, 9, and 10 as set forth in Counts 4, 8, 10, and 11 of the Complaint.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this blockbuster interrogatory because it seeks to require Plaintiffs to present legal conclusions at this stage in the litigation in which discovery is ongoing, and to marshal all their evidence at this stage in the litigation, contrary to what is required under the Federal Rules of Civil Procedure. Plaintiffs will produce the Documents, data, and other evidence support their claims in this lawsuit according to the applicable scheduling order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence.

Plaintiffs further object to this Request because it seeks information accessible to and/or in the possession of Defendants.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond that courts use the factors outlined in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), to determine if the decision-makers acted with illicit intent, and courts further consider the Senate Factors when considering claims of intentional vote dilution under Section 2 of the Voting Rights Act. *See United States v. Brown*, 561 F.3d 420, 433 (2009). Under *Arlington Heights*, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266. "The impact of the official action . . . provide[s] an important starting point." *Id.* (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). "The gravamen of an intentional vote-dilution claim is that the [legislature] enacted 'a particular voting scheme as a purposeful device to minimize or cancel out the voting potential scheme as a purposeful device to minimize or cancel out the voting potential of racial or ethnic minorities.'" *Petteway v. Galveston Cnty.*, 667 F. Supp. 3d 432, 442 (S.D. Tex. 2023) (quoting *Perez v. Abbott*, 253 F. Supp. 3d 864, 932 (W.D. Tex. 2017)). From there, courts consider five non-exhaustive factors to determine whether a particular decision was made with a discriminatory purpose: (1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history. *Arlington Heights*, 429 U.S. at 267–68. Evidence of race-based hatred or outright racism, or that any particular legislator harbored racial animosity or ill-will toward minorities because of their race, is not required. *N.C. NAACP v. McCrory*, 831 F.3d 204, 222 (4th Cir. 2016).

Here, the evidence substantiating Defendants' awareness and intent and supporting these factors is set forth in detail in paragraphs 49 through 132 of the Complaint, including the long history of discriminatory redistricting in North Carolina, evidentiary records of *Covington v. North Carolina*, 316 F.R.D. 117, 168 (M.D.N.C. 2016), *aff'd* 137 S. Ct. 2211 (2017); *Cooper v. Harris*, 581 U.S. 285 (2017), *Common Cause v. Lewis*, No. 18CVS014001, 2019 N.C. Super. LEXIS 56, at *313 (Super. Sept. 3, 2019), *Harper v. Hall*, 380 N.C. 317 (2022) and subsequent remedial legislative record, and the 2023 redistricting process and legislative record. Furthermore, evidence supporting a Section 2 violation under the totality of the circumstances is set forth in detail in paragraphs 201 through 239 of the Complaint, including the long history of discriminatory voting practices in North Carolina continuing into present day; the presence of racially polarized voting in the Black Belt and Piedmont Triad areas and the use of voting practices and procedures that enhance the opportunity for discrimination against Black voters; the extent to which Black North Carolinians in these areas bear the effects of discrimination in areas of education, employment, and health among others; the use of overt and subtle racial appeals in political campaigns persisting into recent elections; and the diminished extent to which Black minority candidates are elected to public office. As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.

21

**Interrogatory No. 13**

Identify all witnesses you may call at any hearing or trial in this matter to present evidence supporting your allegations regarding the General Assembly's intent in drawing the 2023 Plans.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this blockbuster interrogatory because it seeks to require Plaintiffs to disclose "all" witnesses at this stage in the litigation in which discovery is ongoing, and to marshal all their evidence at this stage in the litigation, contrary to what is required under the Federal Rules of Civil Procedure. Plaintiffs will disclose witnesses according to the applicable scheduling order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs refer Defendants to the individuals disclosed in their Initial Disclosures, as well as those of the Williams Plaintiffs, Legislative Defendants, and the State Defendants. As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request and their Initial Disclosures upon additional information and investigation.


**Interrogatory No. 14**

Identify the basis for alleging that racial considerations drove the General Assembly to draw Senate District 39, Senate District 42, House District 21, House District 34, House District 37, House District 41, House District 66, and House District 75 above the ideal population.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this interrogatory because it seeks to require Plaintiffs to regurgitate portions of their Complaint or to present legal conclusions at this stage in the litigation in which discovery is ongoing. The allegations of the Complaint speak for themselves.

Plaintiffs object to this interrogatory to the extent that it misconstrues Plaintiffs' malapportionment claims as racial gerrymandering claims, which have distinct constitutional injuries and are governed by distinct legal standards.

Plaintiffs further object to this Request because it seeks information accessible to and/or in the possession of Defendants.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond as follows:

As set forth in paragraphs 154 through 163 of the Complaint, Senate District 42 was systematically and unjustifiably underpopulated compared to the rest of the Mecklenburg Senate districts (Senate Districts 38, 39, 40, 41, 42), which all have significantly higher BVAP levels, causing a dilution of the voting power for voters within higher-BVAP districts. As set forth in paragraphs 253 through 259, this malapportionment violates the Fourteenth Amendment's Equal Protection Clause because the deviations are arbitrary and discriminatory, and cannot be justified by adherence to any legitimate, consistently-applied state interest in redistricting.

As set forth in paragraphs 174 through 181 of the Complaint, House District 35 was systematically and unjustifiably underpopulated compared to the rest of the Wake grouping districts (House Districts 11, 21, 33, 34, 36, 37, 38, 39, 40, 41, 49, 66). House District 35 is disproportionately white compared to the county as a whole, and gives those voters more voting power than voters in the rest of the county, diluting the voting power of voters in higher-BVAP districts. As set forth in paragraphs 272 through 274, this malapportionment violates the Fourteenth Amendment's Equal Protection Clause because the deviations are arbitrary and discriminatory, and cannot be justified by adherence to any legitimate, consistently-applied state interest in redistricting.

As set forth in paragraphs 182 through 188 of the Complaint, House Districts 71 and 72 are systematically and unjustifiably overpopulated compared to the rest of the Forsyth-Stokes grouping districts (House Districts 74, 75, and 91). House Districts 71 and 72 both have significantly BVAP levels than House Districts 74, 75, and 91, which results in a dilution of the voting power for the higher-BVAP districts. As set forth in paragraphs 272 through 274, this malapportionment violates the Fourteenth Amendment's Equal Protection Clause because the deviations are arbitrary and discriminatory, and cannot be justified by adherence to any legitimate, consistently-applied state interest in redistricting.

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request and their Initial Disclosures upon additional information and investigation.


**Interrogatory No. 15**

Identify what percentages of BVAP you consider to be a "High BVAP district[]" and to be a "Low BVAP district[]" as used Table 3 of Paragraph 185 of your Complaint.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this interrogatory because it seeks to require Plaintiffs to regurgitate portions of their Complaint or to present legal conclusions at this stage in the litigation in which discovery is ongoing. The allegations of the Complaint speak for themselves.

Plaintiffs further object to this Interrogatory to the extent it seeks to compel the disclosure of expert materials before the August 1, 2024, expert disclosure deadline or before any remedial stage of this litigation.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond that the difference in BVAP between districts as set forth in Table 3 of paragraph 185 is mathematically self-evident: the BVAP levels of House Districts 71 (32.41%) and 72 (40.12%) have BVAP levels that are 1.7x or more than those in House Districts 74 (10.18%), 75 (18.89%), and 91 (16.07%).

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request and their Initial Disclosures upon additional information and investigation.

**<u>Interrogatory No. 16</u>**

Identify the basis for your alleged injury in House Districts 33, 38, 39, and 72 under the malapportionment doctrine under the Fourteenth Amendment, as alleged in Paragraphs 174-188 & 273 of the Complaint.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this interrogatory because it seeks to require Plaintiffs to regurgitate portions of their Complaint or to present legal conclusions at this stage in the litigation in which discovery is ongoing. The allegations of the Complaint speak for themselves.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs respond that paragraph 273 of the Complaint has a typographical error listing "House Districts 27 through 34, and House Districts 71, 72, 74, 75, and 91," as the subject of Plaintiffs' malapportionment challenge in Count 7; this is incorrect, and should have instead mirrored those districts identified in the body of the Complaint at Paragraphs 174 through 188 instead, i.e., House Districts in Wake Count (11, 21, 33, 34, 35, 36, 37, 38, 39, 40, 41, 49, and 66) and in Forsyth/Stokes Counties (71, 72, 74, 75, and 91).

Plaintiffs further incorporate the response to Interrogatory No. 14 in response to this Request.

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request and their Initial Disclosures upon additional information and investigation.

**<u>Interrogatory No. 17</u>**

Identify the basis for your alleged injury in House Districts 27, 28, 29, 30, 31, and 32 under the malapportionment doctrine under the Fourteenth Amendment, as alleged in Paragraph 273 of the Complaint.

**Objections**

Please see the objections set forth in response to Interrogatory No. 16, which are incorporated here by reference.

**Response:**

Please see the responses set forth in response to Interrogatory No. 16, which are incorporated here by reference.

# REQUESTS FOR PRODUCTION

## Reservation of Rights

Plaintiffs are responding to Defendants' First Set of Requests for Production ("Requests") based on the information currently available to them. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Plaintiffs therefore reserve their right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Plaintiffs make their objections and responses in accordance with their interpretation and understanding of these Requests and in accordance with their current knowledge, understanding, and belief as to the facts and information available to them at the time of serving these responses. If Defendants subsequently provide an interpretation of any of their Requests that differs from Plaintiffs' understanding of the same, Plaintiffs reserve their right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. They also reserve the right to amend, revise, correct, modify, or clarify their responses to properly respond to any interpretation Defendants may give these Requests.

Plaintiffs reserve their right to object on any grounds, at any time, to the admission or use of any response on any ground. Plaintiffs are also willing to meet and confer about any of their objections or responses.

**General Objections**

Plaintiffs, by and through their undersigned counsel and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, provide the following Objections and Responses to Legislative Defendants' First Set of Requests for Production ("RFPs").

1.      Plaintiffs object to the RFPs to the extent that they purport to impose obligations beyond or otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of this Court, or any applicable laws, rules, or governing orders.

2.      Plaintiffs object to the RFPs to the extent that they seek information not relevant to any party's claim or defense, are not reasonably calculated to lead to the discovery of admissible evidence, and/or are not proportional to the needs of the case.

3.      Plaintiffs object to the RFPs to the extent that they seek information protected by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, any other applicable privilege or immunity, or any protective order, or that is otherwise exempted from discovery, or prohibited from disclosure by law, rules, or protective orders. Plaintiffs hereby assert all applicable privileges and protections to the extent implicated by the RFPs. Any disclosure of such privileged and/or protected information is inadvertent and is not intended to waive those privileges or protections. Plaintiffs reserve the right to request the return or destruction of any documents that contain any inadvertent disclosures of privileged or protected information.

4.      Plaintiffs object to the RFPs to the extent that they seek disclosure of Plaintiffs' confidential information. Any such information will be disclosed only subject to a negotiated Protective Order. Plaintiffs further object to the RFPs to the extent that they seek documents or

27

information subject to a confidentiality obligation owed to a non-party to this case, until such time that the non-party agrees to production or an appropriate court order is entered.

5. Plaintiffs object to the RFPs as overbroad and unduly burdensome to the extent they are not limited to a specific time period or the scope of the case.

6. Plaintiffs object to the RFPs to the extent that they purport to impose an obligation on Plaintiffs to locate, obtain, and produce information, documents, and things that are not in Plaintiffs' possession, custody, or control.

7. Plaintiffs object to the RFPs to the extent they require Plaintiffs to produce information, documents, and/or things that do not already exist and/or call for information in a format other than that in which it is ordinarily kept by Plaintiffs.

8. Plaintiffs object to the RFPs to the extent they seek information available from public sources.

9. Plaintiffs object to these RFPs to the extent they seek information protected from disclosure under the First Amendment because such disclosure would intrude on or chill Plaintiffs' First Amendment rights, including the right to associate and to engage in the exchange of ideas, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958); *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), as revised (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

10. Plaintiffs object to the RFPs as premature to the extent they seek discovery in advance of the applicable schedule set by the Court, including the parties' stipulated-to schedule for expert discovery.

11. Plaintiffs object to the RFPs to the extent they seek information beyond what is available from a reasonable search of Plaintiffs' files likely to contain relevant or responsive

28

documents or information and from a reasonable inquiry of individuals likely to have information relevant to a claim or defense of any party or to the subject matter of this case.

12.     Plaintiffs object to the RFPs on the grounds and to the extent that they are overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to the RFPs on the ground and to the extent that the burden or expense of the proposed discovery outweighs its likely benefit, taking into account, for example, the needs of the case, the parties' resources, and the importance of the proposed discovery in resolving the issues at stake in the litigation. Plaintiffs further object to the RFPs to the extent they are cumulative of other discovery in this case; seek documents already in the possession, custody, or control of, or otherwise equally available to, the Defendants; or seek discovery more readily available through less burdensome means.

13.     Plaintiffs object to RFPs based on "all" or "any" documents, communications, or data "relating to" a particular topic, because identifying and collecting all documents containing any reference or relationship to a particular topic is unduly burdensome and disproportionate to the needs of the case. Where indicated in their specific responses and objections, Plaintiffs will conduct reasonable and diligent searches by making reasonable inquiries of custodians reasonably likely to possess responsive documents and conducting reasonable and good faith searches of those custodial files to the extent proportional to the case, and respond to the RFPs accordingly. Plaintiffs cannot guarantee that they will identify or produce "all documents."

14.     By responding to these RFPs, Plaintiffs do not waive any objections to the admission of these responses into evidence on the grounds of competence, relevance, materiality, or on any other proper grounds for objection at trial.

15.     No admission of any nature whatsoever is to be implied by or inferred from the Responses below. Any response or objection to a RFP should not be taken as (a) an agreement with, acceptance or admission of the existence of any documents or alleged facts set forth or assumed by such RFP; (b) an agreement that RFPs for similar information or documents will be treated in a similar manner; or (c) an acceptance of, or agreement with, any of the definitions in the RFPs, to the extent that the definition or meaning of any defined term is at issue in this litigation. A response that Plaintiffs will produce responsive documents is not an admission that any such documents exist, only that Plaintiffs will conduct a reasonable search for such documents. A response to part or all of any RFP is not intended to be, and shall not be construed as, a waiver of any part of any objection to the RFP.

16.     The above General Objections apply to each of the RFPs and are hereby incorporated into each of Plaintiffs' Specific Responses and Objections set forth below. Plaintiffs' Specific Responses and Objections may repeat or restate a General Objection for emphasis or some other reason; however, the failure to repeat or restate a General Objection in Plaintiffs' Specific Responses and Objections shall not constitute a waiver of any General Objection.

17.     Plaintiffs' Responses and Objections are made to the best of their present knowledge, information and belief. Discovery in this case is ongoing. Plaintiffs reserve the right at any time to revise, correct, clarify, supplement, and/or amend the Objections or Responses set forth herein and the production made pursuant thereto, as and when Plaintiffs ascertain new, better, additional or different information; and/or complete additional analysis relating to the claims and/or defenses in this litigation.

<u>**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**</u>

1.    Plaintiffs object to each definition and instruction to the extent that it seeks information beyond that permitted by the Federal Rules of Civil Procedure or the Local Rules.

2.    Plaintiffs object to the terms "you," and "your" to the extent that the terms seek information outside of Plaintiffs' possession, custody, or control.

3.    Plaintiffs object to the definitions of "documents," "communications," and "social media" to the extent that they purport to include forms of information not discoverable under the Federal Rules, Local Rules, or any other applicable authority. Plaintiffs further object to the definitions to the extent that they define a category of documents in an overbroad manner and/or request a production of documents which would be unduly burdensome or disproportionate to the needs of the litigation.

4.    Plaintiffs object to Instruction Nos. 2 and 3 to the extent that they purport to seek information outside Plaintiffs' possession, custody, or control. Plaintiffs further object to these instructions to the extent that they purport to seek information beyond what is available from a reasonable search.


**<u>Request for Production No. 1</u>**

To all Plaintiffs: Produce all documents identified in your answers to the above Interrogatories.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs also incorporate by reference their Objections to the Defendants' First Set of Interrogatories to NAACP Plaintiffs and will withhold any responsive documents consistent with those objections.

Plaintiffs further object to this Request to the extent it seeks documents shielded from discovery by the attorney-client privilege, the work-product doctrine, or the common interest privilege. Plaintiffs intend to withhold any responsive materials identified as part of their reasonable search

that are subject to the aforementioned privileges. Documents withheld will be disclosed to Defendants in privilege logs accompanying Plaintiffs' rolling productions.

Plaintiffs further object to this Request as it requests information equally available to Defendants, including the public records specified in response to Interrogatory No. 8.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs assert that they have reviewed the Complaint and Initial Disclosures, the Williams Plaintiffs' Initial Disclosures, and the State Defendants Initial Disclosures, all of which have already been served upon Defendants, in preparing answers to Defendants' First Set of Interrogatories.

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.

### Request for Production No. 2

To all Plaintiffs: Any non-privileged communications or documents created, received, or maintained by you that relate to the political performance of the 2023 Plans, any alternative maps, or any individual districts, in any form including, but not limited to, any and all estimates, reports, studies, analyses, notes, text messages, journals, diaries or other writings, videotapes, recordings or other electronically stored media.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this RFP to the extent that it seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, and the internal deliberations of the Organizational Plaintiffs and their members, would chill protected First Amendment speech and activities. The disclosure of this information is further unwarranted given that this RFP is beyond the reasonable scope of discovery under Rule 26(b)(1) of the Federal Rules of Procedure and disproportionate and unduly burdensome, and Plaintiffs object on that basis as well. This is especially true given the lack of a temporal limitation and the lack of relevance of the requested information to the claims and defenses asserted in this matter, which concern the actions and intent of the North Carolina General Assembly, not Plaintiffs. *See* Fed. R. Civ. P. 26(b)(1) ("The scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit."). As such, the work of redacting or screening for this information would far outweigh any use or relevance it has to the claims and defenses in this matter.

Plaintiffs intend to withhold any responsive materials identified as part of their reasonable search that are subject to the privileges and/or First Amendment protection. Documents withheld pursuant to the aforementioned privileges and/or First Amendment protection will be disclosed to Defendants in privilege logs accompanying Plaintiffs' rolling productions.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs will produce responsive non-privileged communications identified following a reasonable search of public, non-privileged communications within the time period January 1, 2023, to December 19, 2023.

### Request for Production No. 3

To all Plaintiffs: Any alternative maps created, received, or maintained by you related to North Carolina's 2023 redistricting process, and all documents or other electronically stored media relating to or otherwise supporting the creation of any alternative maps.

**Objections:**

Plaintiffs incorporate by reference their Objections to Legislative Defendants Request for Interrogatory No. 2.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs confirm that no Plaintiff has created or drawn any alternative map to the 2023 Plans.

### Request for Production No. 4

To Organizational Plaintiffs: Excluding those documents protected by the attorney-client privilege, all documents reflecting or referring to any alleged "harm" or "injury" you claim to have suffered as a result of the 2023 Plans, including but not limited to financial records, communications, emails, notes, text messages, or recordings.

To Individual Plaintiffs: Excluding those documents protected by the attorney-client privilege, all documents reflecting or referring to any conversation or communication you had with any third party about any alleged "harm" or "injury" you claim to have suffered as a result of the 2023 Plans, including but not limited to, emails, notes, text messages, or recordings of any such conversations or communications.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this RFP because it seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, financial information, and the internal deliberations of the Organizational Plaintiffs and their members, would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information. Furthermore, the burden and expense of redacting or screening for this information would far outweigh any use or relevance it has to the claims and defenses in this matter.

Plaintiffs further object to this RFP because its request for "all documents" without any temporal limit is beyond the scope of permissible discovery and unduly burdensome. Organizational Plaintiffs assert only representational standing in this matter as representatives of their members, which does not require a showing of "harm" *per se* but rather demonstration that (a) an organization's members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Similarly, the Individual Plaintiffs' basis for standing and the alleged harm is otherwise substantiated by their residence, voter registration status, and racial identity, and thus this request for "all documents reflecting or referring to any conversation or communication you had with any third party about any alleged 'harm' or 'injury'" without any temporal limit is not proportionate to the needs of this case in light of the claims and defenses asserted.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs will produce responsive, non-privileged communications identified following a reasonable search of public, non-privileged communications within the time period of January 1, 2023, to December 19, 2023.

**Request for Production No. 5**

To all Plaintiffs: Copies of all posts, statuses, or direct messages made by you on any Social Media platform or other website that relate to or reflect any of the allegations or claims you have made in this lawsuit, or otherwise related to redistricting since January 1, 2020.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this RFP to the extent it seeks associational information that is protected under the First Amendment because its disclosure would intrude upon Plaintiffs' freedom of speech, belief, or association, and no compelling need for the information exists. *See, e.g.*,

34

*NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Disclosure of associational information, such as membership names, contact information, financial information, and the internal deliberations of the Organizational Plaintiffs and their members, would chill protected First Amendment speech and activities. As it is the actions and intent of the North Carolina General Assembly, not Plaintiffs, at issue in this matter, there is no compelling need for the disclosure of this information. Furthermore, the burden and expense of redacting or screening for this information, especially given the overbroad time period spanning back to January 1, 2020 (which Plaintiffs also object to), would far outweigh any use or relevance it has to the claims and defenses in this matter.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs will produce responsive, non-privileged social media postings discussing the redistricting of North Carolina's statewide plans identified following a reasonable search of social media postings within the time period of January 1, 2023, to December 19, 2023.

**Request for Production No. 6**

To all Plaintiffs: Copies of all documents referenced in your Rule 26(a)(1) Initial disclosures.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this Request because it seeks to compel the disclosure of expert materials that, pursuant to the applicable scheduling order, are not required to be disclosed until on or after August 1, 2024.

Plaintiffs further object to this Request as it requests materials that are not in the custody or control of Plaintiffs and/or materials that are publicly accessible to or otherwise in the possession of Defendants, including publicly available election results and data and other documents created during the 2023 redistricting process.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs will produce all expert materials on the timeline required for disclosure pursuant to the applicable scheduling order and by agreement of the Parties.

Plaintiffs also respond by referring Defendants to the following sources for the public information listed in Plaintiffs' Initial Disclosures, and request to meet and confer with Defendants on the extent to which production and Bates stamping of this information is a necessary expense for these publicly-available materials to be admissible at trial:

- North Carolina voting data maintained by the North Carolina State Board of Elections available at https://dl.ncsbe.gov/.
- United States Census data for North Carolina available at https://www.census.gov/en.html.
- Internet websites created or maintained by the North Carolina General Assembly, its members and staff available at https://www.ncleg.gov
- Records relating to redistricting in North Carolina maintained by the North Carolina General Assembly, its members and staff available at https://www.ncleg.gov/redistricting

As discovery is ongoing, and subject to and without waiving any of their Specific and General Objections, Plaintiffs reserve the right to supplement the response to this Request upon additional information and investigation.


**Request for Production No. 7**

To all Plaintiffs: Copies of any source code, software parameters, or other backup data used or produced by any of your experts in connection with this litigation. This includes, but is not limited to, any EI codes, comparisons, data disaggregation, data reaggregations, algorithms, algorithm parameters, or any vignettes or other instructions relied upon to manipulate or instruct electronic programs/applications used by any of your experts in connection with this litigation. To the extent such items were not developed by your expert but are otherwise available, please identify the code, software, programs, or applications and the name(s) and contact information of the person or entity that created the code, software, programs, or applications.

**Objections:**

Plaintiffs' General Objections are incorporated by reference in this response.

Plaintiffs object to this Request because it seeks to compel the disclosure of expert materials that, pursuant to the applicable scheduling order, are not required to be disclosed until on or after August 1, 2024.

Plaintiffs further object to this request as it seeks the disclosure of expert materials beyond what is required under Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

**Response:**

Subject to and without waiving any of their Specific and General Objections, Plaintiffs will produce all expert materials on the timeline required for disclosure pursuant to the applicable scheduling order and by agreement of the Parties.

Plaintiffs also agree to meet and confer following the disclosure of expert materials on the scope of information requested in this RFP.

36

Dated: July 11, 2024.

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Corey Leggett*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
corey.leggett@hoganlovells.com
olivia.molodanof@hoganlovells.com
madeleine.bech@hogan.lovells.com

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com
misty.howell@hoganlovells.com
odunayo.durojaye@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special
Appearance pursuant to L-R 83.1(d)

**SOUTHERN COALITION FOR
SOCIAL JUSTICE**

/s/ Hilary Harris Klein
Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525
hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org

**NAACP**

Janette Louard*
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

37