# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al._Plaintiffs_,_v._REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al._Defendants_. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al.,_Plaintiffs_,_v._PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al.,_Defendants_. | Civil Action No. 23 CV 1104 |

## LEGISLATIVE DEFENDANTS' RESPONSE TO NAACP PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

# INTRODUCTION

The North Carolina State Conference of the NAACP and Common Cause (the "Entity Plaintiffs") demand a license to abuse their First Amendment privilege through selective disclosure of information that cannot be vetted. The Entity Plaintiffs seek judicial relief affecting the political representation of 10.7 million North Carolina residents but lack standing in their own right. Thus, they have brought their members into the case, apparently without permission, by asserting members' standing. They then announced that discovery into members is barred by First Amendment privilege. Next, they declared they will selectively disclose information about members and expect the Court and the named defendants actively defending this action (the "Legislative Defendants") to accept their hearsay testimony and selectively picked and redacted documents on blind faith. They also reserve the right to selectively disclose even more information at their own election in the future. When Legislative Defendants declined this heads-I-win-tails-you lose proposal, the Entity Plaintiffs came to the Court for a protective order.

But Legislative Defendants already made clear that they "will not seek to compel discovery into" the Entity Plaintiffs' members, so long as evidence about members is not selectively introduced. D.E. 63-3 at 4. Thus, Legislative Defendants do not oppose a protective order. What they oppose is sword-and-shield abuses of privilege through selective disclosure. Under cross-cutting privilege doctrine, privilege-holders may either (1) raise privilege for protected information and forego reliance on privileged material or (2) waive privilege to obtain the benefit of privileged information and submit the privileged

matter to fulsome scrutiny. But privilege-holders may not have it both ways: they may not use privilege to gerrymander court records by submitting evidence they deem favorable and withholding other evidence within the same subject matter.

Put differently, the privilege assertion carries consequences, which this Court should enforce. First, because the Entity Plaintiffs have unequivocally asserted privilege, and because Legislative Defendants respect that assertion, the Court *should* enter a protective order. Second, because the Entity Plaintiffs insist on selectively presenting information protected by the same privilege, the Court should frame that protective order to shield the subject matter from use (and abuse) by *all* parties. Any other outcome would defy bedrock privilege principles and impose severe prejudice on Legislative Defendants and the general public.

## BACKGROUND

1.     This is one of two consolidated redistricting suits before this Court. Like all federal plaintiffs, redistricting plaintiffs bear "the burden" to satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A redistricting claim "is district specific." *Gill v. Whitford*, 585 U.S. 48, 66 (2018). Redistricting plaintiffs may challenge only "those legislative districts in which they reside." *North Carolina v. Covington*, 585 U.S. 969, 976 (2018); *see United States v. Hays*, 515 U.S. 737, 746 (1995); *Shaw v. Hunt*, 517 U.S. 899, 904 (1996). Moreover, where the injury is vote dilution (as in a claim under § 2 of the Voting Rights Act), it must be proven "that each voter resides in a district where their vote has been cracked or packed." *Harding*

*v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020); *see also Gill*, 585 U.S. at 69. That is not shown in districts where plaintiffs elect their preferred candidates. *See Gill*, 585 U.S. at 72. In addition, an individual will not be injured without an intention and eligibility to vote and may not assert claims of others. *See, e.g.*, *Vaughan v. Lewisville Indep. Sch. Dist.*, 475 F. Supp. 3d 589, 595 (E.D. Tex. 2020) (dismissing claim by white voter alleging dilution of minority votes); *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989) (similar holding as to political candidate); *see also Lujan*, 504 U.S. at 563-64 (finding no standing in the absence of "concrete plans" that would place plaintiffs within the scope of challenged government action).

The Entity Plaintiffs' action challenges every district in North Carolina's three statewide plans (house, senate, and congressional), for a total of 184 districts, under various legal theories. *See* D.E. 63-2 at 11-13 (identifying dozens of challenged districts and challenges to plans "overall"). Thus, they seek a judgment impacting the political representation of all 10.7 million North Carolina residents. Seven individuals joined their suit, alleging they reside, variously, in three congressional districts (CD1, CD3, and CD6), four house districts (HD9, HD27, HD37, and HD71) and five senate districts (SD1, SD2, SD5, SD8, and SD41). *NAACP* Compl. ¶¶18-25.[1] The complaint publicly names each individual and alleges each is "a Black citizen," a member of a NAACP branch, and "a registered voter who has regularly voted in the past and intends to vote in the future." *Id.*

---

[1] An eighth individual plaintiff has since been dismissed. D.E. 56.

Case 1:23-cv-01057-TDS-JLW    Document 65    Filed 10/16/24    Page 4 of 28

In the consolidated action, 18 individual plaintiffs allege they are Black or Latino registered voters residing in each of North Carolina's congressional districts, but they do not challenge the State's legislative plans. *Williams* Am. Compl. ¶¶7-24.

Together, the two operative complaints publicly name and provide information about 25 individuals. There is no evidence that any has experienced negative consequences by consequence of this disclosure. None have applied to bring their claims under pseudonyms under recognized procedures permitting pseudonymous actions for good cause, so long as the anonymous plaintiff will "identify herself under seal to the court and to the defendants." *B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021).

2.      The Entity Plaintiffs' action will be (without more) jurisdictionally deficient as to 172 districts the Entity Plaintiffs challenge. To make up that shortfall, the Entity Plaintiffs assert standing of members. *See NAACP* Compl. ¶¶14-17.

To invoke member standing, an organization "must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (*SFFA*) (citation omitted). The starting point under that first element is "naming the affected members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). There is no ambiguity here: "name" means name *names*. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (dismissing

4

complaint because it "has failed to identify a single *specific member* injured" by the challenged action).

Accordingly, Legislative Defendants sought basic discovery into members whose standing the Entity Plaintiffs would assert as their own (the "Standing Members"). In Interrogatory No. 4, served on June 11, 2024, Legislative Defendants requested that the Entity Plaintiffs identify "[t]he members of your organization living in each challenged Congressional, state Senate, and state House district whose standing you will assert and the corresponding district(s) in which they reside." D.E. 63-1 at 10-11. This, in turn, required that, for each Standing Member, the Entity Plaintiffs "state his or her full name, present or last known address, and telephone number." *Id.* at 5 (¶ 8).

3. The Entity Plaintiffs responded on July 11, 2024, stating that they had "as of the date of this disclosure, identified members who identify as Black or African American and are registered voters" in various districts. D.E. 63-2 at 14-15. They also stated that "[t]hese areas are far from the only areas in which" Standing Members reside and that they would "work to identify" additional members "[a]s needed to maintain standing." *Id.* The Entity Plaintiffs refused to provide the names and addresses of Standing Members, asserting that "[d]isclosure of associational information, such as membership names, contact information, and the internal deliberations of the Organizational Plaintiffs and their members, would chill protected First Amendment speech and activities." *Id.* at 13.

The same interrogatory response, two pages down, provides detailed information about each individual Plaintiff, again naming each and providing summaries of their claims

5

to having suffered injury-in-fact. *Id.* at 15-17. Plaintiffs did not seek a protective order covering that information and later filed it on this Court's public docket with their protective-order motion. *Id.*

4.     About two months before the discovery cut-off, Legislative Defendants' counsel wrote to counsel for the Entity Plaintiffs identifying the obvious deficiencies in the response to Interrogatory No. 4. D.E. 63-3 at 3-5. First, the letter noted that basic information about Standing Members passes "the low relevance threshold for discovery." *Id.* at 3. Second, the letter questioned the validity of a First Amendment privilege assertion, given that the Entity Plaintiffs "have not made the threshold showing necessary to support the privilege assertion." *Id.* Third, the letter explained that, under the sword-and-shield doctrine, the privilege assertion operated to prohibit the Entity Plaintiffs from selective introduction of evidence concerning members. *Id.* at 3-4. Finally, the letter proposed a resolution: Legislative Defendants "will not seek to compel discovery into [the] subject matter" of membership if the Entity Plaintiffs would "confirm in writing that they will not seek to introduce any evidence concerning the subject matter of members whose standing [they] will assert at any time in this case." *Id.* at 4.

In responsive correspondence two weeks later, counsel for the Entity Plaintiffs again listed every individual Plaintiff by name and asserted that naming these individuals satisfied the Entity Plaintiffs' standing burden for all districts. D.E. 63-4 at 3. In the same letter, the Entity Plaintiffs explained that they are "prepared to provide evidentiary support for [the] confirmations, in the format of organizational affidavits, establishing that specific

6

members were confirmed in the challenged districts listed" but that the Entity Plaintiffs would refuse to identify Standing Members or permit Legislative Defendants any means to determine their identities. *Id.* at 4. The Entity Plaintiffs stood by their privilege assertion but did not respond to Legislative Defendants' observation that selective disclosure is improper. *Id.* The Entity Plaintiffs have since filed that letter (including individual Plaintiffs' names and information about them) on the public docket of this Court.

On September 25, 2024, Plaintiffs served an affidavit of the President of the North Carolina State Conference of the NAACP, who is identified by name (Deborah Dicks Maxwell). D.E. 63-6. Ms. Maxwell attested that she "worked with my leadership team and, with the assistance of counsel, confirmed that we have at least one member of the North Carolina NAACP who is a registered voter that self-identifies as Black or African American" in specific districts. *Id.* at ¶15. The affidavit also states that "[t]hese are far from the only areas in which we have members" and that "[i]f needed to maintain standing in this lawsuit, I could work to identify members living in additional areas of the state who are registered voters and self-identify as Black or African American." *Id.* at ¶16. Ms. Maxwell attested that disclosure of any other information "would have a severe adverse impact," and cited as evidence the "death threats and the bombing of a former North Carolina NAACP President's home." *Id.* at ¶¶13-14. As noted, Ms. Maxwell is the current

North Carolina NAACP President.[2] Plaintiffs later filed the affidavit on this Court's public docket.

5.    Counsel for the parties conferred on September 26, 2024. Counsel for the Entity Plaintiffs proposed various means by which the Entity Plaintiffs might selectively present privileged material of their own choosing. D.E. 63 at ¶ 27. Counsel for Legislative Defendants responded that selective use of information is the problem, not a solution, but the Entity Plaintiffs persisted in asserting an unqualified right to prove standing without scrutiny. It also appeared that the Entity Plaintiffs insisted on asserting standing of members without even contacting those members: their counsel stated that it would take "at least two weeks to seek permission to disclose this information from individual members." *Id.*

Because counsel for the Entity Plaintiffs maintained that information about members might be forthcoming, counsel for Legislative Defendants noted in correspondence that the Entity Plaintiffs appeared to be wavering in whether to assert privilege, and counsel also reiterated that subsequent disclosure of information would be prejudicial if Legislative Defendants did not have a fulsome opportunity to vet the disclosure in discovery. D.E. 63-7 at 2. Counsel for Legislative Defendants requested that

---

[2] The names and information about leaders of the North Carolina NAACP and Common Cause feature prominently on their respective websites. NAACP, North Carolina State Conference, *Leadership*, https://ncnaacp.org/leadership/ (accessed Oct. 15, 2024); Common Cause, North Carolina, *About Us*, https://www.commoncause.org/north-carolina/about-us/ (accessed Oct. 15, 2024).

any responsive information be produced by October 4, 2024. *Id.* Counsel further explained that "Legislative Defendants will object to the introduction or use at any time of any information responsive to Interrogatory No. 4 in the absence of a complete, unqualified, and timely response to Interrogatory No. 4." *Id.* at 3. Legislative Defendants, however, did not represent any intent to file a motion compelling discovery. *See id.*

In response, counsel for the Entity Plaintiffs denied that they are "'wavering' on the assertion of First Amendment privilege" and stood by their position that member identities need not be disclosed. D.E. 63-5 at 6. The Entity Plaintiffs continued to propose that they may selectively introduce information about members, without identifying them. *Id.* at 6-7.

When Legislative Defendants did not accept these selective-disclosure proposals, the Entity Plaintiffs moved this Court for a protective order seeking to protect their members from discovery (i.e., what Legislative Defendants have offered). The first page of the Entity Plaintiffs' supporting memorandum again lists the names of each individual Plaintiff. *See* Memorandum ISO Mot. for Protective Order ("Mem.") 2 n.1.

## ARGUMENT

Legislative Defendants respect the First Amendment rights of the Entity Plaintiffs and their members and have repeatedly offered to forego discovery into membership. Legislative Defendants now ask the Court to enter an appropriate protective order establishing that members not be dragged in by anyone without their consent.

9

But the Entity Plaintiffs are abusing their privilege in a case *they* brought to alter the political representation for 10.7 million people. They have liberally filed documents identifying Black NAACP members as residents of specific challenged districts in a manner that would be reckless if reprisal or intimidation were realistic outcomes from public involvement in this suit. Apparently, those concerns are not driving the Entity Plaintiffs' privilege strategy. Instead, their purpose in asserting privilege here appears to be twofold: (1) the Entity Plaintiffs want to submit evidence to establish associational standing without adversarial scrutiny, and (2) they want to assert standing of members without seeking their permission or soliciting their views on this case.

Regardless of their goals, the legal principles governing the instant motion are straightforward. First, the information requested in Interrogatory No. 4 easily meets the low relevance and proportionality thresholds. Standing Members' names are relevant to standing, as is the minimum information necessary to verify names, so the information is discoverable. Second, while Legislative Defendants accept the Entity Plaintiffs' privilege assertion—which is now established beyond revocation—it carries consequences. Like every other privilege-holder, the Entity Plaintiffs cannot selectively introduce and withhold information at their pleasure. The Court should therefore enter an order that protects member identities and avoids prejudice of selective disclosure.

## I. Interrogatory No. 4 Seeks Discoverable Information

There is no merit in the Entity Plaintiffs' suggestion that the information Interrogatory No. 4 requests is beyond the bounds of discovery, absent a valid privilege.

10

Mem. 14-22. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance "has been broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party." *EEOC v. Sheffield Fin., LLC*, No. 06-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (citation omitted). "Relevance is a low standard." *Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 17-503, 2019 WL 8108060, at *5 (E.D. Va. July 3, 2019). "In the admissibility context, information is relevant if it has 'any tendency' to make a material fact more or less likely,…and the test for relevance in discovery is even broader than that." *Id.* (internal citation omitted). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Blind Indus. & Servs. of Md. v. Route 40 Paintball Park*, No. 11-3562, 2012 WL 2946688, at *2 (D. Md. July 17, 2012) (citation omitted). "The party resisting discovery bears the burden of establishing the legitimacy of its objections." *Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*, No. 11-659, 2013 WL 5424844, at *3 (E.D.N.C. Sept. 26, 2013).

That standard is satisfied. Associational standing requires "naming the affected members," *Summers*, 555 U.S. at 498, so discovery into Standing Members is warranted. Interrogatory No. 4 (*see* D.E. 63-1 at 5, 10-11) requires just three pieces of information; each is relevant. First, the "full name" of Standing Members is tautologically relevant to their names. Second, the "present or last known address" is relevant because individuals

11

have standing to challenge only "those legislative districts in which they reside." *Covington*, 585 U.S. at 976. Third, a "telephone number" is reasonably calculated to lead to the discovery of admissible evidence because someone presented with a name and address will reasonably want to verify whether that information is accurate. Moreover, because standing under some theories Plaintiffs assert requires proof of vote dilution, *Harding*, 948 F.3d at 307, reasonable questions include whether the named members prefer candidates alleged to be preferred by Black voters and whether the named members' candidates typically win or lose.

Plaintiffs' efforts to muddy these straightforward points are unpersuasive.

## A.    Interrogatory No. 4 Seeks First Party, Not Third Party, Discovery

Plaintiffs invoke the standard of discovery from "non-parties," Mem. 15, but Interrogatory No. 4 is directed to the Entity Plaintiffs, who are parties, to probe *their* basis of standing. That is not third-party discovery. The case law Plaintiffs cite addresses "[w]hen discovery is sought *from* nonparties," *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (emphasis added), and does not govern here. The Entity Plaintiffs sued Legislative Defendants, not the other way around. And the Entity Plaintiffs brought members into this case—apparently without permission—by asserting associational standing. Legislative Defendants are not to blame that member identities became "relevant to any party's claim or defense" and thus discoverable. Fed. R. Civ. P. 26(b)(1).

The Entity Plaintiffs implicitly focus their assertions on Legislative Defendants' intention to depose members whose standing is asserted. As an initial matter, this conflates

12

the present discovery dispute with one that may arise later. Interrogatory No. 4 is not a subpoena, and its validity does not turn on whether future depositions are proper. Even if the Entity Plaintiffs were correct in insisting depositions are improper (they are not correct), that would be no defense to Interrogatory No. 4, which seeks information relevant in its own right. For the same reason, the Entity Plaintiffs' suggestion that Rule 30(b)(6) depositions satisfy their discovery obligations fails to acknowledge that Interrogatory No. 4 is proper discovery in its own right. Parties may employ *both* interrogatories *and* depositions. Besides, Rule 30(b)(6) deponents will also refuse to name members, so that is no substitute.

Moreover, discovery into membership beyond Interrogatory No. 4 will (without a privilege assertion) plainly be proper. Parties are entitled to information sufficient "to verify" discovery responses, *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prod. Co.*, No. 08-2348, 2011 WL 13199217, at *6 (D.S.C. Feb. 17, 2011), and even a complete response to Interrogatory No. 4 will raise necessary follow-up questions. Because discovery responses can contain errors, one proper set of questions concerns whether each Standing Member actually exists, whether they belong to the one of the Entity Plaintiffs, and whether information provided about them is correct. Because standing must be assessed at the time of filing, and must be maintained throughout the suit, a second set of questions concerns the temporal nature of facts about Standing Members, including whether they were members when the suit was filed, whether they are still members, and so forth. And because standing must be proved for members, questions going to injury include whether Standing

Members are eligible and registered to vote, whether they intend to vote, whether their preferred candidates often prevail, and whether they share candidate preferences with other Black voters. All this is relevant and proportionate, given that certain answers could defeat claims against one or more challenged districts.

**B.  Plaintiffs' Theory That Naming Members Is Unnecessary Is Premature and Incorrect**

Plaintiffs also resist discovery under a contrived theory that "naming the affected members," *Summers*, 555 U.S. at 498, is not legally required. Mem. 16-22. This is flawed.

1.  The argument is premature because the scope of discovery is several degrees broader than the elements of standing, however construed. The admissibility standard embraces material with "any tendency to make a fact more or less probable than it would be without the evidence," Fed. R. Evid. 401(a), and information need not itself be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1). Thus, Plaintiffs have it wrong in advocating a very narrow scope of their ultimate standing burden and drawing the discovery line there. *See* Mem. 16-22. Even under Plaintiffs' theory that members can be "identified" without a "*name*," *id.* at 17 (citation omitted), it cannot be fairly maintained that names are inadmissible or disconnected from the fair pursuit of admissible evidence.

Notably, the only discovery decision Plaintiffs cite, *Nairne v. Ardoin*, No. 22-178, 2023 WL 5831051, at *1 (M.D. La. Sept. 8, 2023), is a magistrate order that was reversed, remanded, and led to an order commanding production of member names in response to discovery. *See Nairne v. Ardoin*, 3:22-cv-00178, D.E. 158 (M.D. La. Oct. 24, 2023) (reversing magistrate's ruling), attached as Exhibit A; *Nairne v. Ardoin*, 3:22-cv-00178,

D.E. 169 (M.D. La. Nov. 2, 2023) (subsequent order requiring production of names and other information about plaintiff's members), attached as Exhibit B. Other courts have required disclosure of membership identities in litigation, often with confidentiality protection. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, No. 21-259, 2022 WL 2806850, at *5-9 (W.D. Tex. July 18, 2022); *Christ Covenant Church v. Town of Southwest Ranches*, No. 07-60516, 2008 WL 2686860, at *12 (S.D. Fla. June 29, 2008); *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 20-973, 2022 WL 2901007, at *4 (E.D. Tex. Jan. 11, 2022).[3] Here, neither party seeks compelled production of membership identities. Plaintiffs believe it unnecessary and protected by privilege; Legislative Defendants do not seek to compel production and ask that Plaintiffs be held to their privilege assertion.

      2.     The Entity Plaintiffs are incorrect about the legal standard. Their assertion that "the names of specific members are not required," Mem. 15, cannot be squared with a "requirement of naming the affected members," *Summers*, 555 U.S. at 498. Their attempted distinction between *identifying* and *naming*, Mem. 17, does not confront that *Summers* demands "naming," 555 U.S. at 498. Nor does it address *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990), where an affidavit stated the affiant's personal knowledge "that two

------

[3] The Entity Plaintiffs have not proposed responding to discovery about members under a protective order, and such a request would be difficult to square with their liberal naming of individual Plaintiffs in public court filings. *See League of United Latin Am. Citizens*, 2022 WL 2806850, at *4-5 (applying the standard for proceeding anonymously in assessing prerogative to list members under pseudonyms in public filings (while disclosing them to the court and parties)).

licenses were revoked" under the challenged government act, but the Supreme Court found that insufficient because "it fails to identify the individuals whose licenses were revoked." *Id.* at 609-10 (emphasis omitted); *Summers*, 555 U.S. at 498 (recounting this holding of *FW/PBS*). In context, that failure could only be omitting names, because the affidavit had provided all other specificity (i.e., number of licenses and revocation).

The Entity Plaintiffs ignore other case law. They rely on out-of-circuit district-court decisions that generally relax the *pleading* standard, Mem. 16-22, but they fail to address Fourth Circuit precedent that Legislative Defendants presented to them, D.E. 63-3 at 3, which rejects this doctrine, holding that names must be explicit in the complaint. *S. Walk at Broadlands*, 713 F.3d at 184 (dismissing complaint because it "has failed to identify a single *specific member* injured"). The Entity Plaintiffs neglect to mention that the NAACP has lost this issue in this Court, *see N.C. State Conf. of NAACP v. N. C. State Bd. of Elections*, 283 F. Supp. 3d 393, 401-02 (M.D.N.C. 2017), and in others, *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010); *League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 485 (W.D. Tex. 2022) (three-judge court) ("NAACP at least pleads that it has 'thousands' of members in Texas 'who are registered voters' and 'who reside in [challenged] districts,'" but "identifies none of those members with specificity, as it must do to show associational standing"). The Entity Plaintiffs also ignore *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015), a redistricting case holding that an association must "file its list of members" to show standing. *Id.* at 271. While the Supreme Court found it improper for a trial court to *sua sponte* dismiss the case where the association

16

was not on notice that its standing was challenged, the Court held that it must have the *opportunity* to show standing—by filing member names—not that it was *excused* from naming members. *Id.* at 268-71. Here, the Entity Plaintiffs know well by now that their standing is challenged.

3. Plaintiffs are also wrong in their suggestion that First Amendment privilege alters their Article III burden. Mem. 16-17. Standing is an "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560-61, and the Supreme Court has explained that the "requirement of naming the affected members" cannot be "dispensed with," *Summers*, 555 U.S. at 498. The Entity Plaintiffs claim *Summers* did not address whether names must be disclosed "publicly when an organization asserted a First Amendment privilege over that information," Mem. 16, but irreducible means *irreducible*. And *Summers* did speak to the issue by addressing the leading First Amendment privilege case, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958). *Summers*, 555 U.S. at 498-99. The Supreme Court had the opportunity to distinguish *NAACP* on First Amendment grounds and did not. Instead, it explained that member disclosure is unnecessary "only where *all* the members of the organization are affected by the challenged activity" as in *NAACP* where "all organization members [are] affected by release of membership lists."[4] *Id.* at 498-99. In such cases, the requirement of naming members is superfluous because the very fact of

---

[4] Moreover, any First Amendment exception would properly apply in a suit seeking to maintain member secrecy from government intrusion, not in a case like this, where the Entity Plaintiffs seek judicial alteration of the political representation of 10.7 million people based on standing of unnamed members.

membership qualifies one as injured by government action purposefully directed at members. That is not a First Amendment exemption, but a practical application of standing prerequisites.

The Entity Plaintiffs have not invoked this exemption, and it cannot apply for the same reasons the exemption did not apply in *N.C. State Conf. of NAACP*, 283 F. Supp. 3d at 401-02, *City of Kyle*, 626 F.3d at 237, and *League of United Latin Am. Citizens*, 604 F. Supp. 3d at 485. Regardless, issues raised under this exemption (like other standing issues) are premature at this juncture.

## II.    The Entity Plaintiffs' Privilege Cannot Be Used as Both Sword and Shield

The Entity Plaintiffs' right to resist discovery into membership rests, in truth, not on relevance or proportionality but on privilege. Discovery is available only into "nonprivileged matter." Fed. R. Civ. P. 26(b)(1). Here, the parties find common ground on key issues. Legislative Defendants acknowledge that First Amendment privilege is a valid defense to discovery into membership and will to accept that the predicates of this privilege are satisfied here, so long as the privilege is not abused.[5] The present dispute arises only because the Entity Plaintiffs refuse the consequences of their privilege assertion.

_____

[5] The extent to which proof of likely harassment is a threshold stands in a state of uncertainty after the Supreme Court recently stated that "this evidentiary burden" applies only after "the challenged regime" is shown to be "narrowly tailored to an important government interest." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 617 (2021). How that holding fits in with established discovery disclosure rules is unclear but need not be resolved here.

18

A.     This case fits well within the doctrine forbidding use of privilege "as both a sword and a shield." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999); *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008); *Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011). The doctrine holds that a litigant "may not use [a] privilege to prejudice his opponent's case or to disclose some selected [privileged information] for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *In re Grand Jury Proc.*, 219 F.3d 175, 182-83 (2d Cir. 2000) (citation omitted); *see also U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015) (Wynn, J., concurring) ("When a party raises an advice of counsel defense, however, all advice on the pertinent topic becomes fair game."). A litigant who places privileged information at issue "waives the privilege as to the subject matter" of that information. *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992). The doctrine is cross-cutting. *See, e.g.*, *In re Grand Jury*, 219 F.3d at 182 (attorney-client privilege); *Richardson*, 764 F. Supp. 2d at 739 (psychotherapist-patient privilege); *United States v. Nobles*, 422 U.S. 225, 239–40 (1975) (work-product privilege); *In re EPD Inv. Co.*, No. 10-62208, 2021 WL 4622423, at *13 (marital privilege).

Even the most sacrosanct constitutional privileges are subject to sword-and-shield limitations to prevent abuse. It is well established that the Fifth Amendment privilege

against self-incrimination presents "a choice between complete silence and presenting a defense" and that this "dilemma" "has never been thought an invasion of the privilege against compelled self-incrimination." *Williams v. Florida*, 399 U.S. 78, 84 (1970); *United States v. Rylander*, 460 U.S. 752, 759 (1983). The consequence of raising a Fifth Amendment privilege is that the defendant is foreclosed from presenting evidence that cannot be introduced without his own testimony, no matter how important it might be to the defense. The same principle applies in civil settings. *See United States v. Ali*, 874 F.3d 825, 829-30 (4th Cir. 2017).

Likewise, a member of Congress waives the Speech or Debate Clause privilege by offering "evidence of his own legislative acts at trial." *United States v. Renzi*, 769 F.3d 731, 747 (9th Cir. 2014). And those cases recognizing a First Amendment privilege for journalists hold that it "may be waived," *Michael v. Est. of Kovarbasich*, No. 15-275, 2015 WL 8750643, at *4 (C.D. Cal. Dec. 11, 2015), or else litigants could "strategically withhold[] information" after having "placed" some of it "at issue," *Driscoll v. Morris*, 111 F.R.D. 459, 464 (D. Conn. 1986); *see also Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C. 1978) ("Any contrary rule upholding the privilege in this instance would provide a vast and unfair litigation advantage to the newsman-plaintiff, who could preserve inviolate information obviously relevant to an adequate defense of the lawsuit he has precipitated."); *Indep. Prods. Corp v. Loew's, Inc*, 22 F.R.D. 266, 276 (S.D.N.Y. 1958) (same holding as to First Amendment testimonial privilege).

B.    In this case, the Entity Plaintiffs have settled firmly in asserting privilege and denied unequivocally that they are wavering in that assertion. D.E. 63-5 at 6. The consequence is that evidentiary material within the subject matter of privilege is off limits to both sides.

The problem here is not that NAACP desires a protective order: a proper protective order would shield their membership from discovery. The problem, instead, is that the NAACP desires that protective order, and at the same time, states that it will selectively introduce evidence it purports to have about members. This includes testimony that unnamed people are members, redacted papers, information about registration and residency, and so forth. But the Entity Plaintiffs refuse to identify Standing Members' names to permit their standing (and any information about them) to be examined during discovery. This is precisely what the sword-and-shield doctrine forbids. The Entity Plaintiffs' proposal would, if accepted, deprive this Court of the benefit of discovery and adversarial vetting of information on a topic "antecedent" to adjudication of claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). There is no reason that a First Amendment privilege should be the *one* privilege in Anglo-American law permitting selective disclosure. And this case—affecting 10.7 million people—presents no vehicle carve out an exception from these time-honored principles.

The Entity Plaintiffs criticize Legislative Defendants for not accepting a resolution that would permit the Entity Plaintiffs to present "specific organizational member voting records reflecting their self-designated race, city, zip code, party affiliation, voting history,

and current voting districts but redacted of personally identifying information (including redacting the name, street address (but not town or zip code), [and] Voter Registration Number, and NCID)," in "exchange for an agreement" against depositions of members, as well as "a stipulation from Defendants that [Entity] Plaintiffs have established that specific individual members reside in those districts." D.E. 63 at ¶27. But that is no compromise: it is a heads-I-win-tails-you-lose proposal of selective disclosure that gives the Entity Plaintiffs everything and Legislative Defendants nothing. It is no different from a "compromise" offer by a criminal defendant that the criminal defendant be permitted to testify that he did not commit the crime in "exchange" for agreement from the prosecution not to cross-examine him.

This proposal requires blind trust by the Court and other litigants of the Entity Plaintiffs' assertions, which are not fully vetted even by them. Without names and the opportunity to question Standing Members, it is not possible to evaluate whether persons in redacted voting records are actually members of the Entity Plaintiffs or whether they otherwise have standing. Even the Entity Plaintiffs appear not to have contacted these individuals. *See id.* (noting that "NAACP Plaintiffs would need at least two weeks to seek permission to disclose this information from individual members"). Moreover, names in voting records that appear to be the same can actually refer to different people. This is especially true in multi-generational households, or when individuals register to vote without the suffix to their names. And while these voting records include party affiliation

and "voter history," they do not reveal anything about a particular voter's preferred candidates or for whom they may have voted in the past.

Membership lists, too, can be inaccurate. Here, "[l]ifetime membership" in the NAACP is conferred by "a one-time payment of dues," D.E. 63-6 at ¶11, but individuals who paid dues years or decades ago may no longer consider themselves members. People who join organizations may over time drift from its mission or reject it, or simply forget about the membership, and they do not necessarily call the organization asking to be removed from its list. Even those who desire to maintain membership may not agree with everything an organization does, including the lawsuits it brings. Besides, members of the Entity Plaintiffs may support candidates who prevail in challenged districts (and thus do not have standing to challenge the districts on vote-dilution grounds) or otherwise have impediments to standing in their own right.

To ascertain whether members have standing, this is the type of information that must be ascertained in discovery. The use of privilege to wall off Legislative Defendants from learning this information, and to restrict the record to only what the Entity Plaintiffs selectively disclose, is an abuse. No other privilege may be wielded in that prejudicial manner, and there is no reason to construe the First Amendment privilege differently.

C. Based on these principles, the Court should issue a protective order that preserves member privacy and the integrity of this proceeding. A proper protective order will prohibit discovery into members and also selective use of information about members. Anything short of that will open the privilege up to abuse and compromise the adversarial

nature of this case and the Court's ability to decide critical issues. Proposed orders achieving the proper balance are submitted with this filing.

Because the Entity Plaintiffs have firmly bound themselves to assert privilege, they should not be afforded another opportunity to waive it. Discovery is nearly closed, so any waiver of privilege now in favor of full discovery would prejudice Legislative Defendants in their ability to take discovery concerning members. At a minimum, if waiver remains permitted, case deadlines should be extended to cure any prejudice.

## CONCLUSION

The Court should grant the motion in part and deny it in part. It should grant a protective order protecting the Entity Plaintiffs' members from discovery in this case and foreclosing introduction of evidence concerning members in subsequent proceedings.

Respectfully submitted, this the 16th day of October, 2024.

**BAKER & HOSTETLER LLP**

By: /s/ Katherine L. McKnight
Richard B. Raile*
DC Bar No. 1015689
Katherine L. McKnight*
DC Bar No. 994456
Trevor Stanley*
DC Bar No. 991207
1050 Connecticut Ave. NW
Suite 1100
Washington DC 20036
Ph: (202) 861-1500
rraile@bakerlaw.com
kmcknight@bakerlaw.com
tstanley@bakerlaw.com

Patrick T. Lewis*
Ohio State Bar No. 0078314
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Ph: (216) 621-0200
plewis@bakerlaw.com

Erika D. Prouty*
Ohio State Bar No. 0095821
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Ph: (614) 462-4710
eprouty@bakerlaw.com

* *Appeared via Special Notice*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
   Phillip J. Strach
   North Carolina State Bar No. 29456
   Alyssa M. Riggins
   North Carolina State Bar No. 52366
   Cassie A. Holt
   North Carolina State Bar No. 56505
   Alexandra M. Bradley
   North Carolina State Bar No. 54872
   301 Hillsborough Street, Suite 1400
   Raleigh, North Carolina 27603
   Ph: (919) 329-3800
   phil.strach@nelsonmullins.com
   alyssa.riggins@nelsonmullins.com
   cassie.holt@nelsonmullins.com
   alex.bradley@nelsonmullins.com

*Attorneys for Legislative Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I, Phillip J. Strach, hereby certify that the foregoing brief includes 6,241 words as indicated by Microsoft Word, excluding the caption, signature lines, certificate of service, cover page, and tables.

This the 16th day of October, 2024.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456

## <u>CERTIFICATE OF SERVICE</u>

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification to counsel of record.

This the 16th day of October, 2024.

<div style="margin-left:50%">

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456

</div>