IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al.,<br><br>*Defendants*. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al.,<br><br>*Defendants*. | Civil Action No. 23 CV 1104 |

**REPLY IN SUPPORT OF
NAACP PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER OVER THE
IDENTITIES OF NON-PARTY MEMBERS OF THE ORGANIZATIONAL
PLAINTIFFS**

Defendants' Response betrays their true objectives in pursuing this dispute: to delay trial, *see* Doc. 65 at 24 (arguing "case deadlines should be extended"), to force on non-party members of Organizational Plaintiffs[1] the threat of public identification and the burdens of needless depositions, *id.* at 15 n.3 (challenging confidentiality protections over any identifications), 12-13 (reasserting right to depose non-party members), and to surreptitiously raise the pleading standard for redistricting claims beyond that required by the Supreme Court. These demands are far beyond what any applicable rule provides, or any court has permitted under similar circumstances. Worse, these tactics amount to harassment that threaten violations of the First Amendment rights of Organizational Plaintiffs and their members to associate while preserving "the vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

Moreover, Defendants' conduct in this case, and insistence on dragging non-party members into this litigation before availing themselves of other avenues for discovery, reveals that their tactics are not based on a genuine concern for lack of standing. The balancing test merits granting the protective order under these circumstances, especially where proof that specific members of Organizational Plaintiffs are harmed in specific districts already exists to satisfy organizational standing without the need to disclose member names. Accordingly, the protective order should be granted and the case should proceed to trial on the current schedule.

---

[1] Defined terms carry the same meaning as in NAACP Plaintiffs' Memorandum of Law, Doc. 62.

A. <u>Defendants' conduct shows they lack a genuine concern as to Organizational Plaintiffs' standing.</u>

The record holds ample evidence that Defendants are not raising this issue, on the eve of the close of discovery, based on a good faith concern of lack of standing. This is indicated by each of the following decisions, which Defendants have failed to justify, much less explain in their opposition brief:

- ➢ Opting not to file a motion to dismiss for lack of standing or even raise the issue as an affirmative defense in their answer. *See* Doc. 31 at 38-39.

- ➢ Waiting six weeks after discovery opened to issue any discovery requests on the issue of standing. *See* Doc. 63 ¶ 5.

- ➢ Waiting another eight weeks after NAACP Plaintiffs ("Plaintiffs") asserted a First Amendment privilege over non-party member identities to dispute that assertion. *See id.* ¶ 12.

- ➢ Waiting over five months into a six-month discovery period, and on the day they knew the Motion would be filed, to notice depositions of the Organizational Plaintiffs. *See* Doc. 64.

If Defendants were genuinely concerned that Organizational Plaintiffs lacked standing in asserted districts, they would have given at least *some* indication of that in the first eight months of this matter. But they did not, and thus Plaintiffs were not on notice that this dispute would arise until last month.

The deficiencies wrought from Defendants' failure to raise this issue earlier or pursue the available avenues for discovery are readily apparent in their briefing. For example, Defendants repeatedly contend that Organizational Plaintiffs rely on the membership of individuals "apparently without permission." Doc. 65 at 2, 8, 10, 12, 22. Putting aside that member "permission" to bring a lawsuit is not a prerequisite for an organization's standing, these assertions could not be further from the truth, as evidenced

3

by Common Cause North Carolina Executive Director Bob Phillips October 18, 2024, deposition testimony. *See* Third Klein Decl., Ex. A at 41:21-42:22 ("Phillips Tr.") (confirming Common Cause sought authorization from members who live in challenged districts before filing the complaint).[2]

In fact, Plaintiff Common Cause chose to contact members *before* filing the Complaint in December 2023, and then *again* in July 2024 before responding to Defendants' latent discovery requests on the issue. *Id*. at 203:9 – 205:1. Plaintiff Common Cause did yet another review of their standing members' voter files in fall 2024 to confirm member registration status in relevant districts. *Id.* at 260:7-261:15. After failing to avail themselves of the appropriate and much less intrusive avenues for testing organizational standing, Defendants should not be rewarded for their lack of diligence.

B. <u>Defendants fabricate a new standard of associational standing[3] and misrepresent case law in their brief.</u>

Defendants' entire Response is premised on a standard of associational standing distorted beyond recognition from what is required here and lacks any support in persuasive (much less binding) case law. They contend that Organizational Plaintiffs must present proof that specific members have the same "views of the case" and have given some sort of "permission" for the case to have been brought at all. Doc. 65 at 2, 8, 10, 12, 14, 22.

---

[2] Transcript pending final review and signature, but Plaintiffs represent the quoted passages are accurate in substance.

[3] "[A]ssociational standing" is coterminous with "organizational" or "representation" standing, *i.e.*, standing based on representation of members and not on the organization's own behalf. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (setting forth test for showing "associational standing"); *Students for Fair Admissions v. President & Fellows of Harvard Coll.* ("*SFFA*"), 600 U.S. 181, 199 (2023) (citing *Hunt* but referencing associational standing as "organizational" or "representational" standing).

Notably, none of these assertions cite authority or otherwise have support in well-established case law for associational standing.

As set forth in Plaintiffs' Memorandum, Organizational Plaintiffs can satisfy the requisite showing for associational standing in all claims by evidencing that specific members have been located in each of the challenged districts, and that these members identify as Black and are registered to vote in those areas. *See generally* Doc. 65 at 17-18; *Baker v. Carr*, 369 U.S. 186 (1962); *Gill v. Whitford*, 585 U.S. 48 (2018); *United States v. Hays*, 515 U.S. 737 (1995); *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316 (1999). Accordingly, Organizational Plaintiffs are able to satisfy the elements of associational standing by demonstrating that specific members would have standing to sue in their own right, that these interests are germane to each organization's purpose, and that no claim requires the participation of individual members in the lawsuit. *SFFA*, 600 U.S. at 199.

By contrast, Defendants urge the Court to adopt novel additional burdens for a showing of associational standing to justify their request for intrusive discovery. Doing so, however, would require this Court to pursue a path in contradiction of a core justification for associational standing: That organizations can vindicate the rights of members where member participation is not required to achieve prospective and injunctive relief like that requested here, as opposed to damages or other individualized forms of relief that would require individual member participation. *United Food & Com. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553-54 (1996). Defendants' misrepresentation of case law

5

Case 1:23-cv-01057-TDS-JLW    Document 66    Filed 10/23/24    Page 5 of 14

extends beyond just the standing doctrine relevant to claims of vote dilution, and the Court should look skeptically at their characterization of specific holdings as set forth below:

1. Defendants' characterization of *Nairne v. Ardoin*, and selective omission of relevant parts of that record, borders on lack of candor. *See* Doc. 65 at 14-15. The magistrate judge's order was not "reversed" on any point of law or fact found therein, but rather ordered for reconsideration in light of a *subsequent development* that changed the facts in the record.

Specifically, in *Ardoin* (like here), defendant initially failed to challenge standing before it requested the names, addresses, phone numbers, and occupations of non-party members of the Louisiana NAACP. *See* Naifeh Decl. ¶ 8. Only *after* the magistrate denied the motion to compel did defendant move for summary judgment, prompting the reviewing district court to find that "standing has been raised by the Defendant" and asking the magistrate to reconsider in light of this development. *See id.* ¶ 9-10, Ex. A. Notably, even after reconsidering, the magistrate court still denied the motion to compel phone numbers and occupations for non-party members and required disclosure of names and addresses on an "Outside Attorneys Eyes Only" basis. *Id.* ¶ 13. Similarly, the district court denied defendant's attempts to depose non-party members, and required the organizational representative's testimony of membership identities to be made under seal at trial in a courtroom with strict limitations on admittance. Naifeh Decl. ¶ 14-15, Ex. B. In other words, the law and logic of the original magistrate opinion stands firm and was not reversed on its merits. Only after the defendant filed a challenge to associational standing (a step not yet taken here) did the court require an extremely limited and protected disclosure of

6

non-party member names and addresses and denied the request to depose the individual members. *See id.* ¶ 14. Defendants' gross omissions in representing this case are even more concerning given that motion to compel was filed by counsel appearing in this matter as well. Naifeh Decl. ¶ 4, Ex. A (Docket Entry 132 filed by "Strach, Phillip").

2. Similarly, Defendants wrongly claim that the "NAACP has lost this issue in this Court," citing *N.C. State Conf. of NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 401-02 (M.D.N.C. 2017). But that matter concerned the wrongful removal from voter registration lists, not vote dilution, and the issue with standing was that the harmed North Carolina NAACP member was impacted only by the conduct of one, but not another, defendant group (and thus could not provide a basis for associational standing against that second defendant group), and was not a member when the complaint was filed. *Id.* By contrast, it is not in dispute that Plaintiffs allege it is Defendants' conduct that will cause vote dilution here. This Court also found in the 2017 matter that the North Carolina NAACP could not establish associational standing against the second defendant group through allegations that all NAACP members were harmed, or through individuals who were not current members, positions the North Carolina NAACP need not rely on here. *Id.* In other words, this Court never *considered* the matters at issue here, much less ruled NAACP to have lost as Defendants erroneously contend.[4]

---

[4] Legislative Defendants' citation to out-of-district decisions is similarly misplaced. In the Fair Housing Act matter *NAACP v. City of Kyle*, 626 F.3d 233 (5th Cir. 2010), plaintiff had not alleged "that a specific member of the NAACP" had suffered an injury in fact, but the court never considered whether membership lists should be disclosed, *id.* at 237; here Plaintiffs have evidence of locating specific, injured members. In *League of United Latin Am. Citizens v. Abbott,*

7

3. Far from supporting Legislative Defendants' position, *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ("*ALBC*"), does the opposite. In *ALBC*, the Supreme Court reversed a lower court's determination that the organization lacked standing as procedurally improper after the organization offered "no testimony or evidence that it has members . . . in any of the [four] specific districts that it challenged." 575 U.S. at 269. Instead, the Supreme Court held the organizational representative's testimony as to widespread membership *did* "support an inference that the organization has members in all of the State's majority-minority districts, other things being equal, which is sufficient to meet the Conference's burden of establishing standing." *Id.* at 270. In other words, the Supreme Court endorsed the exact showing of evidence that Plaintiffs intend to offer here. The organization filed a list of members with the Supreme Court before the issue of whether that was required to establish standing was decided by either court. *Id.* at 271 (noting plaintiff "has filed just such a list in this Court."). So, in fact, the Supreme Court did *not* hold that an organization "must" file its list of members as Defendants misrepresent. Doc. 65 at 16.

It is telling that Defendants never grapple with the case truly on point: *Common Cause Fla. v. Byrd*, No. 4:22-cv-109, 2024 U.S. Dist. LEXIS 54503 (N.D. Fla. Mar. 27, 2024). That case considered the associational standing of Common Cause and the Florida NAACP and properly found that disclosure of membership names was not required to

---

604 F. Supp. 3d 463 (W.D. Tex. 2022) (three-judge court), the district court considered a challenge to standing at the motion to dismiss stage (which did not happen here), deciding that "non-party individuals, named by plaintiffs for the purpose of showing associational standing [may] proceed anonymously." *Id.* at *11-12.

assert standing where organizational testimony otherwise sufficed. *Id.*; *see also* Doc. 62 at 21-22 (discussing *Byrd*). Defendants do not even cite, much less attempt to distinguish, that holding, which strongly supports Plaintiffs' motion.

C. <u>The sword and shield doctrine does not require disclosure here or bar Defendants from adducing evidence of standing at trial.</u>

Defendants' wall of string citations in support of their "sword and shield argument," *see* Dkt. 65 at 19-20, also fails to support their arguments. Not one case mentions the First Amendment privilege to freely associate or involves a challenge to associational standing.

Instead, these cases relate to different privileges and fact patterns entirely irrelevant to Plaintiffs' motion: six concern the attorney-client/work product privileges,[5] three relate to the Fifth Amendment privilege,[6] one concerns the Speech or Debate Clause privilege,[7] and the furthest afield relate to the psychotherapist-patient privilege and marital privilege.[8] Only four of the 16 remotely relate to the First Amendment, but even still, three of them concern a different type of privilege: the qualified journalist privilege protecting them from compelled disclosure of information gathered in the course of their investigatory work—

---

[5] *See Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *In re Grand Jury Proc.*, 219 F.3d 175, 182-83 (2d Cir. 2000); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015); *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992); *United States v. Nobles*, 422 U.S. 225, 239-40 (1975).
[6] *Williams v. Florida*, 399 U.S. 78, 84 (1970); *United States v. Rylander*, 460 U.S. 752, 759 (1983); *United States v. Ali*, 874 F.3d 825, 829-30 (4th Cir. 2017).
[7] *United States v. Renzi*, 769 F.3d 731, 747 (9th Cir. 2014).
[8] *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008); *Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011); *In re EPD Inv. Co.*, No. 10-62208, 2021 WL 4622423, at *13.

9

which is subject to a different standard.[9] Defendants also conveniently omit that the balancing test in First Amendment cases is "unrealistic" to use in the case of a plaintiff journalist, where their "sources will almost always be relevant, a subject of compelling need, and unavailable through alternative sources." *Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C. 1978).

Defendants' final sword-and-shield citation, *Indep. Prods. Corp v. Loew's, Inc.*, also provides no support for forcing public disclosure of membership names since it does not touch the subject. *See* 22 F.R.D. 266, 276-77 (S.D.N.Y. 1958) (emphasis added). Like the other 15 cited by Defendants, this case has no bearing on Plaintiffs' motion. Defendants' Response is otherwise devoid of any mention of the balancing test courts in this district apply, *see River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16CV607, 2018 U.S. Dist. LEXIS 247444, at *5 (M.D.N.C. May 25, 2018), let alone any arguments for why the balance might tip in their favor (because it does not).

Even if the Court adopted Defendants' description of the sword and shield doctrine's applicability, it would not warrant granting the result Defendants desire. If the doctrine "holds that a litigant 'may not use [a] privilege to prejudice his opponent's case or to disclose some selected [privileged information] for self-serving purposes,'" Doc. 65 at 19 (quoting *Bilzerian*, 926 at 1292), it has no bearing here where Organizational Plaintiffs seek to withhold what is privileged and disclose what is not. Organizational Plaintiffs seek

---

[9] *Michael v. Est. of Kovarbasich*, No. 15-275, 2015 WL 8750643, at *4 (C.D. Cal. Dec. 11, 2015) (unreported); *Driscoll v. Morris*, 111 F.R.D. 459, 464 (D. Conn. 1986); *Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C. 1978).

a protective order protecting membership names and other identifying information pursuant to the First Amendment precisely because it is not required to show standing where alternative methods of proof are available, such as testimony from organizational representatives and redacted voting records. If specific names of members were required to establish standing at this stage in the litigation—and *ALBC* tells us they are not—then the balancing test would at most require a disclosure in the most protective way possible, either through in camera review or, at most, with an "Outside Attorney's Eyes Only" level of protection. But under no circumstances would it permit Defendants to burden any members to be publicly named or called to testify as to standing.

Accordingly, there is no "selective" disclosure of privileged information that could serve as a "sword." Defendants' assertion that at least one Individual Plaintiff (Mitzi Reynolds Turner) has publicly named herself as a member somehow undercuts Common Cause's assertion of privilege over the names of non-party members is a red herring. Common Cause had no part in Plaintiff Reynolds' willingness to join this lawsuit and name herself a member and the fact that some members are comfortable doing this does not automatically render *all* other members willing to do the same or mean that the Organizational Plaintiffs have made any waiver. Phillips Tr. at 268:7-269:5.

D. <u>Defendants' requested relief cannot be granted.</u>

For these reasons, Defendants' request that such a protective order should "foreclos[e] introduction of evidence concerning members in subsequent proceedings," Doc. 65 at 24, is unsupported. It is also procedurally improper given they have failed to include this request for relief in their own motion. *See* Local Rule 7.3(a) (requiring that "all

11

motions, unless made during a hearing or at trial, shall be in writing" and that each motion be "set out in a separate document"); *Hall El v. Hall-El*, No. 1:24CV546, 2024 U.S. Dist. LEXIS 150219, at *1 (M.D.N.C. Aug. 19, 2024) (finding request for recusal within a set of objections violates Local Rule 7.3(a) "because it has not been set forth by way of a separate motion"). It should be denied accordingly.

E. Conclusion.

For the reasons set forth above and in Plaintiffs' Memorandum, Doc. 62, the Court should enter a protective order providing that Plaintiffs need not disclose the names (or other personally identifying information) of non-party members of the Organizational Plaintiffs in response to Defendants' Request for Interrogatory No. 4, and to grant such other relief as it deems necessary and appropriate. *See* Doc. 62 at 23.

Dated: October 23, 2024

Respectfully submitted,

*/s/ Hilary Harris Klein*
Hilary Harris Klein

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
olivia.molodanof@hoganlovells.com

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW

**SOUTHERN COALITION FOR SOCIAL JUSTICE**

Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
Lily Talerman (State Bar #61131)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525
hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org

12

Washington, DC 20004  lily@scsj.org
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special
Appearance pursuant to L-R 83.1(d)

13

Case 1:23-cv-01057-TDS-JLW   Document 66   Filed 10/23/24   Page 13 of 14

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d), I hereby certify that this brief contains 3,112 words as counted by the word count feature of Microsoft Word.

/s/ Hilary Harris Klein
Hilary Harris Klein

## CERTIFICATE OF SERVICE

I certify that on October 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Hilary Harris Klein
Hilary Harris Klein