IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., *Plaintiffs*, v. REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., *Defendants*. | 1:23CV1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., *Plaintiffs*, v. PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., *Defendants*. | 1:23CV1104 |

## MEMORANDUM ORDER

These cases are before the court on the motion of Plaintiffs North Carolina State Conference of the NAACP ("NAACP") and Common Cause in case number 1:23cv1104 (the "Associational Plaintiffs") for a protective order against disclosure of the identities of the members of their respective associations on which they predicate

associational standing.  (Doc. 61.)[1]  The Legislative Defendants seek the identities of such individuals unless the Associational Plaintiffs elect not to rely on these members for standing purposes.  (Doc. 63.)  For the reasons noted below, the motion will be granted in part and denied in part.

I. BACKGROUND

In case number 1:23-cv-1104, the Associational Plaintiffs bring twelve total counts: discriminatory results in violation of Section 2 of the Voting Rights Act as to North Carolina Senate Districts 1 and 2 (count 1) and discriminatory effects in violation of the same as to North Carolina House of Representatives Districts 4, 5, 7, 10, 12, 24, 25, and 32 (count 6); intentional vote dilution in violation of Section 2 of the Voting Right Act as to the State Senate and State House of Representatives maps (counts 4 and 8), and congressional districts 1, 5, 6, 9 and 10 (counts 10 and 11); malapportionment in violation of the Fourteenth Amendment as to Senate Districts 7, 8, 38, 39, 40, 41, and 42 (count 3), and House Districts 27, 28, 29, 30, 31, 32, 33, 34, 71, 72, 74, 75, and 91 (count 7); intentional discrimination in violation of the Fourteenth and Fifteenth Amendments as to the State Senate map (count 5), State House map (count 9), and congressional map (count 12); and racial gerrymandering in violation of the Fourteenth

---

[1] Pursuant to the court's order consolidating these cases, all citations are to case 1:23cv1057 unless otherwise noted.

2

Amendment as to Senate Districts 7 and 8 (count 2).  (Doc. 1 in case 1:23cv1104 ¶¶ 240-90.)

Plaintiff NAAACP "is a nonpartisan, non-profit organization composed of more than 100 branches and 20,000 members throughout the state of North Carolina, including every county in North Carolina."  (Id. ¶ 14.)  Its mission is to advance the social and political rights of black people and all persons of color by advocating for policies and practices that eliminate discrimination, which includes ensuring representation at all levels of government by legislators who share their interests, values, and beliefs.  (Id.)  It "facilitates nonpartisan voter registration drives to promote civic participation and has engaged in redistricting-related advocacy."  (Id.)  Plaintiff NAACP alleges it has members who identify as black or African American and are registered voters in 2023 Senate Plan districts 1, 2, 8 & 41; 2023 House Plan districts 5, 8, 9, 10, 12, 23, 24, 25, 27, 32 & 71; and 2023 Congressional Plan districts 1, 3, 5, 6 & 10.  (Id. ¶ 15.)  It alleges that "[t]his includes members who identify as Black or African American and are registered voters in the following counties: Vance County; Warren County; Halifax County; Northampton County; Hertford County; Gates County; Pasquotank County; Bertie County; Nash County; Wilson County; Edgecombe County; Martin County; Pitt County; Greene County; Lenoir County;

Wayne County; New Hanover County; Mecklenburg County; Wake County; and Forsyth County." (Id.)

Plaintiff Common Cause "is a nonpartisan, non-profit organization with over 1.5 million members nationwide and staff in 31 states, including North Carolina." (Id. ¶ 16.) Its mission "centers around fair elections and encouraging a more representative, open, and responsive government" and, in furtherance of that, it "educate[s] members and the public about the redistricting process, including how to participate, monitor, and hold decision-makers accountable." (Id.) It also "researches state redistricting practices to identify best practices for creating a legal, transparent, responsive, and equitable redistricting process" and "assists voters in navigating the elections process, provides resources to help voters determine their districts and polling places, and mobilizes voters to engage in advocacy for government accountability." (Id.) Plaintiff Common Cause alleges it has members who identify as black or African American in 2023 Senate Plan districts 1, 2, 8, 38, 39 & 41; 2023 House Plan districts 5, 7, 8, 9, 10, 12, 23, 24, 25, 27, 32, 37, 71 & 75; and 2023 Congressional Plan districts 1, 3, 5 & 6. (Id. ¶ 17.) It alleges that "[t]his includes members who identify as Black or African American and are registered voters in the following counties: Vance County; Warren County; Halifax County; Northampton County; Hertford County; Gates County;

4

Pasquotank County; Bertie County; Nash County; Wilson County; Edgecombe County; Martin County; Pitt County; Greene County; Lenoir County; Wayne County; New Hanover County; Mecklenburg County; Wake County; and Forsyth County." (Id.)

The Associational Plaintiffs seek a protective order from responding to Legislative Defendants' interrogatory number 4, which stated as follows:

> For each Individual Plaintiff, describe in detail how you are allegedly harmed by the 2023 Congressional, state Senate, or state House district you are challenging for each of your claims under Section 2 of the Voting Rights Act (Counts 1, 4, 6, 8, 10, 11), the Fourteenth Amendment (Counts 2, 3, 7), and the Fourteenth and Fifteenth Amendments (Counts 5, 9, 12).
>
> For each of the Organizational Plaintiffs, please state or identify:
>
> (a) The members of your organization living in each challenged Congressional, state Senate, and state House district whose standing you will assert and the corresponding district(s) in which they reside; and
>
> (b) All facts and documents on which you intend to rely to support your organization's standing, including but not limited to allegations of "harm" resulting from the 2023 Plans with respect to each challenged district in your Complaint.

(Doc. 63-1 at 10-11.) The interrogatory states that "identify," "as related to a person" means "his or her full name, present or last known address, and telephone number." (Id. at 5.)

Plaintiff North Carolina NAACP responded in relevant part as follows:

5

> Plaintiff North Carolina NAACP has, as of the date of this disclosure, identified members who identify as Black or African American and are registered voters in at least the following districts: 2023 Senate Plan districts 1, 2, 8 & 41; 2023 House Plan districts 5, 9, 10, 12, 23, 24, 27, 32, 37 & 71; and 2023 Congressional Plan districts 1, 3, 5, 6 & 10. This includes members who identify as Black or African American and are registered voters in the following counties: Vance County; Warren County; Halifax County; Northampton County; Hertford County; Gates County; Pasquotank County; Bertie County; Wilson County; Edgecombe County; Martin County; Pitt County; Greene County; Lenoir County; Wayne County; New Hanover County; Mecklenburg County; Wake County; and Forsyth County. These areas are far from the only areas in which North Carolina NAACP has members. As needed to maintain standing, the North Carolina NAACP will work to identify members living in these and other areas of the state who are registered voters and identify as Black or African-American.

(Doc. 63-2 at 12.) Plaintiff Common Cause responded in relevant part as follows:

> Plaintiff Common Cause has, as of the date of this disclosure, identified members who identify as Black or African American in at least the following districts: 2023 Senate Plan districts 1, 3 & 40; 2023 House Plan districts 5, 7, 8, 9, 10, 12, 23, 32, 37 & 71; and 2023 Congressional Plan districts 1 & 5. This includes members who identify as Black or African American and are registered voters in the following counties: Edgecombe County; Forsyth County; Franklin County; Guilford County; Lenoir County; Martin County; Mecklenburg County; Pasquotank County; Pitt County; Vance County; and Wake County. These areas are far from the only areas in which Common Cause has members. As needed to maintain standing, Common Cause will work to identify members living in these and other areas of the state who are registered voters and identify as Black or African-American.

(Id. at 13.)

The Associational Plaintiffs objected to responding further

and seek a protective order against providing the names or other personally identifying information of their members. (Doc. 61 at 5.) They also seek an order "that non-party members of the [Associational] Plaintiffs who are not otherwise disclosed as witnesses in this matter may not be deposed." (Id.)

## II. ANALYSIS

Legislative Defendants argue they are entitled to know whether there are members of the Associational Plaintiffs in each challenged district sufficient to support the associations' standing to challenge each district. (Doc. 65 at 10.) The Associational Plaintiffs contend that the names and personal information of their "non-party members" are protected by the First Amendment and need not be disclosed. (Doc. 62 at 4.) Legislative Defendants do not seek the names of members of the Associational Plaintiffs on whom standing is not predicated, and they do not oppose the entry of an order protecting the identities and discovery of all NAACP and Common Cause members if the court also then precludes those Plaintiffs from "present[ing] evidence concerning the subject matter of members of the North Carolina NAACP and Common Cause at any stage of proceedings in this case"; in other words, these Defendants contend, the Associational Plaintiffs should not be permitted to offer any undisclosed person to claim standing in any challenged district. (Doc. 65-3 at 2.) The practical effect of Legislative Defendants' position

7

would be to limit the Associational Plaintiffs' challenge to the districts in which the named Plaintiffs reside.

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" Chafin v. Chafin, 568 U.S. 165, 171 (2013); see U.S. Const. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 37 (1976)). "A proper case or controversy exists only when at least one plaintiff establishes that [it] has standing to sue." Murthy v. Missouri, 144 S. Ct. 1972, 1985 (2024) (internal quotation marks and original alterations omitted).

"An organization can show that it has standing to sue in its own right ('organizational' standing) or on behalf of its members ('associational' standing)." N.C. All. for Retired Ams. v. Hirsch, No. 5:24-CV-275, 2024 WL 3507677, at *2 (E.D.N.C. Jul. 19, 2024) (citing Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll., 600 U.S. 181, 199 (2023); S. Walk at Broadlands Homeowners' Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013)). Here, although the NAACP and Common Cause Plaintiffs refer to themselves as "organizational" Plaintiffs,

8

they claim associational standing for purposes of these claims. (Doc. 1 in case 1:23cv1104 at 85-86.)

Associational standing requires a showing that "[1] [the association's] members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)). To demonstrate standing of an individual member, the association must demonstrate (1) the member has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the member has "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (cleaned up); see TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife,

9

504 U.S. 555, 559-61 (1992). "[S]tanding is not dispensed in gross." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 353 (2006) (quoting Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996)).

The Associational Plaintiffs assert a variety of violations of Section 2 of the Voting Rights Act, the Equal Protection Clause of the Fourteenth Amendment, and the Fifteenth Amendment. To assert these claims on behalf of their members, these associations must have at least one allegedly injured member in each of the challenged districts. See Gill v. Whitford, 585 U.S. 48, 66 (2018) ("To the extent the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific. . . . A plaintiff who complains of gerrymandering, but who does not live in a gerrymandered district, 'asserts[s] only a generalized grievance against governmental conduct of which or she does not approve.'" (quoting United States v. Hays, 515 U.S. 737, 745 (1995))). See Perry-Bey v. City of Norfolk, 678 F. Supp. 2d 348, 363-65 (E.D. Va. 2009) (requiring plaintiff to show that she is a registered voter, a member of a minority group whose voting strength was diluted, and resides in a ward that was affected by a change to the city council's election plan); Hancock Cnty. Bd. of Supervisors v. Ruhr, 487 F. App'x 189, 196 (5th Cir. 2012) (for malapportionment claims, "a voter from a district that is overpopulated and under-represented suffers an injury-in-fact"). Consequently, the Associational Plaintiffs must identify one

10

member in each district to meet this burden. Ala. Legis. Black Caucus v. Alabama, 575 U.S. 254, 271 (2015) (in redistricting challenge brought by association, among others, remanding and instructing district court to "reconsider [association plaintiff's] standing by permitting the [plaintiff] to file its list of members and permitting the State to respond, as appropriate").

The Associational Plaintiffs argue that they have provided declarations from their associations' representatives confirming members' standing. Plaintiff NAACP claims that it has at least one member in each of the "impacted areas challenged" in this matter (Doc. 63-6 ¶ 15)[2], and Plaintiff Common Cause has identified the presence of members who are registered to vote in 12 listed counties and 2023 Senate Plan districts 1, 3 and 40, 2023 House Plan districts 5, 7, 8, 9, 10, 12, 23, 32, 37, and 71, and Congressional districts 1 and 5.[3] (Doc. 63-9 ¶¶ 9–10.) Plaintiff

---

[2] The NAACP's affidavit generally claims the association has members in each of the challenged districts but goes on to "specifically" list a number of districts. (Doc 63-6 ¶ 15.) The following districts are challenged by at least one count of the complaint but are not included in this list: 2023 Senate Plan districts 7, 38, 39, 40, and 42; 2023 House Plan districts 4, 7, 28, 29, 30, 31, 33, 34, 72, 74, and 91; Congressional Plan district 9. (See Docs. 1 ¶¶ 240-90, 63-6 ¶ 15.)

[3] In the complaint, Common Cause alleged that it also had "members who identify as Black or African American" in the following additional districts: 2023 Senate Plan districts 2, 38, 39, & 41; 2023 House Plan districts 24, 25, 27, & 75; and Congressional Plan districts 3 & 6. (Doc. 1 at ¶ 17.) Common Cause has not since asserted that it has members in these districts or identified members in these districts that support its associational standing.

11

Common Cause states it can identify members in additional districts if required. (Doc. 63-9 ¶ 11.) Plaintiffs have also offered to provide the voting records for these individuals, redacted of personal information. (Doc. 61 ¶ 9.)

The Legislative Defendants respond that they should not have to take Plaintiffs' word that they have demonstrated standing. They are correct. But the burden is not heavy. The associations need only identify one person per challenged district. See <u>FW v. PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 235 (1990) (affidavit that stated two petitioners had their licenses revoked under a statutory provision did not support standing because "it fail[ed] to identify the individuals whose licenses were revoked"); <u>cf.</u> <u>S. Walk</u>, 713 F.3d at 184 (no representational standing where organization did not specifically identify members that were allegedly injured by an exclusive dealing arrangement (citing <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 498 (2009))).

The Associational Plaintiffs argue that their membership list enjoys First Amendment protection and should be shielded from production. They also provide declarations from organization representatives which state that public disclosure of the members' identity would not only chill membership, but risk retaliation. (Docs. 63-6 ¶¶ 13-14, 63-9 ¶ 13.) The Supreme Court has observed that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as

12

effective a restraint on freedom of association as [other] forms of governmental action." Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 606 (2021) (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958)). Associational Plaintiffs rely on that case law here. But those cases are distinguishable. Patterson involved an effort by the Alabama Attorney General to "oust" the NAACP from the state, not from an effort by the NAACP to sue the state where the association's claims rested on members' standing. And Bonta involved a state's requirement for charitable organizations to disclose major donors ostensibly to deter misconduct. Here, by contrast, the Associational Plaintiffs seek to bring claims that require that at least one member has standing. Legislative Defendants, moreover, do not seek disclosure of membership lists. Rather, they seek only the name of the allegedly injured member in each challenged district to determine whether the Associational Plaintiffs have standing to bring their voting rights claims for that district. (Doc. 65 at 2, 5, 10.) Indeed, Plaintiffs' argument is tough to square with the Supreme Court's instructions on remand in Ala. Legis. Black Caucus, 575 U.S. at 271, where the Court required the district court to reconsider its order finding no standing after permitting the NAACP to file a list of its members and permitting the State to respond.

The Associational Plaintiffs also argue that they should be protected from disclosing the identities of their members because

13

no formal challenge to standing has been raised. (Doc. 66 at 3-4.) But the record reflects, as Legislative Defendants point out, that they have been seeking the information through consensual means to determine whether they have a basis for such challenge. (Doc. 65 at 5-9.) In any event, this court "ha[s] an independent obligation to confirm its jurisdiction, even in the absence of a state challenge." Ala. Legis. Black Caucus, 575 U.S. at 270.

While we deny the protective order as to the names and addresses of the members on whom standing is predicated, in order to protect those members from any possible retribution or retaliation, the Associational Plaintiffs may provide such information pursuant to the parties' previously-agreed confidentiality order that the court approved. (Doc. 55.) That mirrors the approach taken recently by the district court in Nairne v. Ardoin, 715 F. Supp. 3d 808, 828 (M.D. La. 2024), under similar circumstances. (See Docs. 68-2, 68-3.) There, the parties agreed that the names could remain confidential, and the identities of the members were presented at trial under seal. Whether further disclosure is warranted here and the Associational Plaintiffs' objection to the deposition of any identified member is premature, as no deposition is noticed and the parties have not determined that they are incapable of satisfying the standing inquiry by other

14

means.[4]

## III. CONCLUSION

Having carefully considered the Associational Plaintiffs' motion (Doc. 61),

IT IS ORDERED that the motion is DENIED to the extent that Plaintiffs NAACP and Common Cause shall provide forthwith the name and address of each member on which they predicate their voting rights claims for each challenged district. Plaintiffs may provide such information pursuant to their protective order. (Doc. 55.)

IT IS FURTHER ORDERED that the motion is GRANTED at this time as to the telephone number for each such identified member.

IT IS FURTHER ORDERED that the motion is DENIED AS MOOT as to the membership lists for Plaintiffs NAACP and Common Cause.

```
                    /s/    Allison J. Rushing
            United States Circuit Judge

                    /s/   Richard E. Myers, II
            Chief United States District Judge

                    /s/     Thomas D. Schroeder
            United States District Judge
```

November 6, 2024

---

[4] Although the parties' prior email exchanges address whether discovery of any member should be permitted or precluded, the parties have not briefed that issue, and the court accordingly does not reach it. For a similar reason, we grant the request to protect the telephone numbers of the Associational Plaintiffs.

15