# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS; *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting; *et al.*,<br><br>    *Defendants.* | Civil Action No. 23-CV-1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate; *et al.*,<br><br>    *Defendants.* | Civil Action No. 23-CV-1104 |

**LEGISLATIVE DEFENDANTS' REPLY IN SUPPORT OF
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

The Court should enter partial summary judgment to narrow the questions for trial. There is no triable question on most districts Plaintiffs have challenged and no evidence to justify a trial on the NAACP Plaintiffs' malapportionment claim.

**ARGUMENT**

**I. Plaintiffs Lack Standing For Most of the Relief They Request**

Legislative Defendants demonstrated (Legislative Defs.' Memorandum ("Mem.") at 4-11) standing deficiencies that limit the claims Plaintiffs may assert. Plaintiffs' opposition papers reveal additional deficiencies.

**A. Plaintiffs Lack Standing to Challenge Districts Where No Plaintiff Resides**

Legislative Defendants identified (Mem. 7-8) 143 districts where no Plaintiff or disclosed member is even alleged to reside. Neither set of Plaintiffs disputes Legislative Defendants' factual assertion on this point. *See* NAACP Opp. 8; Williams Opp. 3-4. The Court can make quick work of all such districts.

The NAACP Plaintiffs argue that a voter may challenge the "area where vote dilution has occurred," NAACP Opp. 8, not just the voter's district. This is incorrect. "To the extent that the plaintiffs' alleged harm is the dilution of their votes, that injury is district specific." *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *see also Anne Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 & n.11 (5th Cir. 2020) (applying the standard of *Gill* to Voting Rights Act claims). "An individual voter in [North Carolina] is placed in a single district. He votes for a single representative. The boundaries of the district, and the composition of its voters, determine whether and to what extent a particular voter is packed or cracked."

*Gill*, 585 U.S. at 66. Accordingly, a plaintiff may challenge and obtain relief against only the district where that voter resides. *Id.* at 66-68; *see also id.* at 66 ("a plaintiff who alleges that he is the object of a racial gerrymander … has standing to assert only that his own district has been so gerrymandered"); *id.* at 67 (explaining that "malapportionment cases" are district-specific). The NAACP Plaintiffs' contrary position rests on cases addressing the *merits* of claims they assert. See NAACP Opp. 8-9. But "the standing to assert a claim is distinct from the merits of that claim." *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 n.5 (4th Cir. 2020), *as amended* (Aug. 31, 2020).

For their part, the Williams Plaintiffs appear to acknowledge basic standing doctrine and characterize their challenges as district-specific. *See* Williams Opp. 6-7. They accuse Legislative Defendants of misapprehending their claims. *See, e.g.*, *id.* at 7-8. But in discovery, the Williams Plaintiffs clearly stated that they "challenge[] the entire 2023 Congressional Plan." Ex. 1, Excerpts from Shauna Williams Disc. Resp. at 3. The Williams Plaintiffs apparently now abandon their statewide claim, *see, e.g.*, Williams Opp. 7, which is meritless in any event, *Gill*, 585 U.S. at 66. The Court should enter summary judgment against any claim in their case except against districts where the Williams Plaintiffs reside.

Like the NAACP Plaintiffs, however, the Williams Plaintiffs muddy the waters by contending they may seek a "remedy" against districts other than those they have standing to challenge. Williams Opp. 10. This ignores that "the remedy that is proper *and sufficient*" in a redistricting case "lies in the revision of the boundaries of the individual's own district." *Gill*, 585 U.S. at 66 (emphasis added). While revising the individual's own district during a remedial phase may require incidental changes to adjacent districts, that does not

entitle a plaintiff to challenge those adjacent districts in their own right. *See id.* at 67 (criticizing a similar "failure to distinguish injury from remedy"); *Agee v. Benson*, 2024 WL 1298018, at *4 (W.D. Mich. Mar. 27, 2024) (three-judge court) (overruling as beyond court's jurisdiction objection that districts where no plaintiff resided should have been altered at remedial phase).

Finally, the Williams Plaintiffs themselves "seem to have conflated" Legislative Defendants' motion by treating it as addressing "the permissible evidence that may be brought." Williams Opp. 10. Legislative Defendants moved for summary judgment, not to exclude evidence. The proper scope of evidence should be addressed at the appropriate juncture.

### B. NAACP Plaintiffs' Claims Should Be Dismissed as to Districts Where No Plaintiff Resides, and They Are Not Entitled to Summary Judgment

The NAACP Plaintiffs contend that Legislative Defendants admit standing for districts where their members are alleged to reside. NAACP Opp. 6. This is incorrect. As the record now stands, the Court should issue summary judgment on districts where only NAACP members are alleged (but not shown) to reside. *See* Mem. 10 (listing districts).

Standing must be shown "with the manner and degree of evidence required at the successive stages of the litigation," which at the summary-judgment stage means "affidavit or other evidence." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). This requires that evidence be admissible or at least reducible to admissible evidence at trial. *Cottom v. Town of Seven Devils*, 30 F. App'x 230, 234 (4th Cir. 2002); *Ellison v. Inova Health Care Servs.*, 730 F. Supp. 3d 221, 230-31 (E.D. Va. 2024). Legislative Defendants did not know what

3

Case 1:23-cv-01057-TDS-JLW Document 86 Filed 01/17/25 Page 4 of 16

evidence NAACP Plaintiffs would submit in response to Legislative Defendants' motion for summary judgment. Now it is clear that the only evidence the NAACP Plaintiffs offer concerning their members is inadmissible and hence creates no material fact dispute.

The NAACP Plaintiffs rely on declarations, not of members, but of organizational witnesses containing hearsay assertions lacking foundation. The assertion that the NAACP Plaintiffs "received the permission of every individual whose voting records were produced," NAACP Opp. Ex. 4, Third Maxwell Decl. ¶ 3; NAACP Opp. Ex. 5, Second Phillips Decl. ¶ 3(a), is inadmissible hearsay. The assertion that organizational witnesses consulted entity records to confirm membership status is inadmissible because those documents have not been introduced and no effort to overcome a hearsay objection has been made. *See* Third Maxwell Decl. ¶¶ 4-5; Second Phillips Decl. ¶¶ 4-5. Assertions about these records also "violate[] Federal Rule of Evidence 1002, which recognizes the inherent unreliability of oral testimony about the contents of a document and so requires a party to introduce an 'original writing' to establish the document's contents." *In re Pfister*, 749 F.3d 294, 300 n.4 (4th Cir. 2014) (citations omitted). Moreover, those records could not be admissible because they were not produced with the NAACP Plaintiffs' initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); D.E. 63-1 at 16 (document request seeking all documents referenced in the NAACP Plaintiffs' initial disclosures). Legislative Defendants are prejudiced by the failure to produce these records, as there is no way to vet the accuracy of assertions about undisclosed documents. This material should not be admitted at trial.

In all events, the NAACP Plaintiffs are not entitled to summary judgment. Without admissible evidence, they are not entitled to *prevail* as *plaintiffs* on any issue. Moreover,

4

the NAACP Plaintiffs' evidence is subject to dispute. For example, the NAACP's witness could not recall how many members she spoke to, whether conversations were recorded in any way, or when they took place, Ex. 2, Maxwell Dep. (Vol. I) 84:8-88:4; could not confirm that all members identified were members throughout the litigation, Ex. 3, Maxwell Dep. (Vol. II) 77:17-24, 80:3-18; and could not tell how many total members NAACP had identified, *id*. 68:12-16. This undermines the NAACP Plaintiffs' assertions concerning members. Additionally, the NAACP Plaintiffs did not move for summary judgment by the court-ordered deadline. The Court would be required to provide "notice and a reasonable time to respond" if it were considering summary judgment *sua sponte*, Fed. R. Civ. P. 56(f)(1), especially given that Legislative Defendants are prejudiced by the deadline and length limits governing this filing.

### C. Summary Judgment Is Warranted on the NAACP Plaintiffs' Vote Dilution Claims

No evidence establishes the NAACP Plaintiffs' standing to bring vote-dilution claims, as they have not established a cognizable injury in fact from vote dilution. Mem. 10-11. The NAACP Plaintiffs accuse Legislative Defendants of proposing a "heightened standard for associational standing," NAACP Opp. 9, but this is inaccurate. All vote-dilution plaintiffs must establish that they "live[] in a cracked or packed district." *Gill*, 585 U.S. at 69. To know whether an individual's vote is "diluted … as a result of cracking or packing," *id.* (alteration marks omitted), it is necessary to know what candidates the individual prefers. The NAACP Plaintiffs implicitly concede this point in their effort to show that each Plaintiff and disclosed member could reside in an alternative

5

district that would enable that individual to elect his or her candidate of choice. NAACP Opp. 6-8. But, without evidence of who those candidates are, there is no triable question on their standing.

The NAACP Plaintiffs say it should be enough "that 95%+ of Black voters coalesce around a single preferred candidate." *Id.* at 10. Setting aside whether the race of members can be established through admissible evidence, the Supreme Court rejected the idea that "a statistical probability" can establish standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Nor is there merit in the NAACP Plaintiffs' concern that evidence of a plaintiff's preferred candidate is "unworkable." NAACP Opp. 10. It would not be difficult for an affidavit to state that an individual has voted in elections in a district and that the individual's preferred candidate has usually lost.

## II. Summary Judgment Is Warranted on the Malapportionment Claims

Legislative Defendants demonstrated (Mem. 11-28) that this is not among the "unusual cases" where a legislative plan with a maximum population deviation below 10% can be deemed malapportioned. *Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. 253, 259 (2016). The NAACP Plaintiffs fail to create a triable question of fact. *See* NAACP Opp. 15-27.

### A. No Evidence Shows a Systematic Policy of Under- and Over-Populating Districts

The NAACP Plaintiffs argue to the wrong standard by demanding that Legislative Defendants "justify" the small departure from mathematical perfection. NAACP Opp. 2. But the Supreme Court has "refused to require States to *justify* deviations" below 10%.

6

*Harris*, 578 U.S. at 259 (emphasis added). These "'minor deviations from mathematical equality'" do not "'make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require *justification* by the State.'" *Id.* (citation omitted; emphasis added). The question is not whether the State can justify small deviations, but whether the NAACP Plaintiffs can prove "that a deviation of less than 10% reflects the predominance of illegitimate reapportionment factors." *Id.* At this stage, this high burden must be met with evidence of sufficient "caliber or quality to allow a rational finder of fact to find" predominance. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The NAACP Plaintiffs have no such evidence. To begin, Legislative Defendants explained that the opinions of the NAACP Plaintiffs' expert (Mr. Fairfax) do not establish predominance because he offered no opinion about what (if anything) motivated the deviations. Mem. 17-18. The NAACP Plaintiffs do not dispute this point. *See* NAACP Opp. 22-23.

Instead, the NAACP Plaintiffs ask the Court to infer predominance from numbers and depictions of districts, coupled with color commentary. *See id.* at 18-23. But "it is elemental that counsel's arguments are not evidence in a case." *Long v. Hooks*, 972 F.3d 442, 463 (4th Cir. 2020), *as amended* (Aug. 26, 2020) (en banc). Moreover, the NAACP Plaintiffs purport only to establish that various district lines are "not justified" by "traditional criteria." NAACP Opp. 19; *see also id.* at 20 ("The deviations in this grouping are not justified by any legitimate criteria."), 20 ("This deviation is not explained by any legitimate redistricting criteria"), 21 ("This configuration serves no traditional redistricting criteria"), 22 ("This deviation is not explained by any legitimate redistricting criteria").

7

Where the Supreme Court has "refused to require States to justify deviations" below 10%, *Harris*, 578 U.S. at 259, a fact dispute over whether deviations are justified is not "material" under "the substantive law," *Anderson*, 477 U.S. at 248.

The NAACP Plaintiffs also do not refute Legislative Defendants' point that the county-grouping requirement explains the deviations to an unknown extent. Mem. 15-17. The NAACP Plaintiffs claim to have bypassed the county-grouping rules by a "cluster-based approach" which treats the county-grouping requirement as a non-factor and effectively ignores it. NAACP Opp. 18. But "maintaining the integrity of political subdivisions" is a legitimate criterion, *Harris*, 578 U.S. at 258, so the NAACP Plaintiffs needed evidence to prove its impact was somehow subordinate to illegitimate criteria. The NAACP Plaintiffs cannot prove a claim by redefining it to ignore legitimate criteria.

Next, the NAACP Plaintiffs claim to have created a triable question through concessions by "Defendants' own witnesses" that "political considerations drove" various configurations. NAACP Opp. 22-23. This is a red herring. Senator Hise and Mr. Springhetti testified that political considerations motivated the placement of territory into or outside given districts. *See* NAACP Opp. Ex. 13 at 471:1-16, 474:14-475:8; NAACP Opp. Ex. 14 at 145:19-146:15. They did *not* testify that the General Assembly systematically manipulated population deviations, i.e., that it deliberately "under-populated Republican-leaning districts and over-populated Democratic-leaning districts." *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 347 (4th Cir. 2016). As Legislative Defendants' opening memorandum explained (Mem. 13-15), the applicable standard requires proof, not merely that a legislature utilized political

8

criteria resulting in *incidental* deviations, but rather that the legislature *intended* the systematic under- and over-population of classes of districts. *Larios v. Cox*, 300 F. Supp. 2d 1320, 1327 (N.D. Ga.), *aff'd*, 542 U.S. 947 (2004). Even the most ardent proponents of the *Larios* doctrine acknowledge that "[p]olitical motivations will remain, resulting in population inequality here and there," such that "a district here or there [will be] out of balance for partisan benefit." *Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1098 (D. Ariz. 2014) (Wake, J., concurring in part, dissenting in part, and dissenting from the judgment). A malapportionment challenge, at a minimum, in a case like this must prove "systematic population inequality for party advantage that is not only provable but entirely obvious as a matter of statistics alone." *Id.*

Accordingly, it is dispositive that the NAACP Plaintiffs do not dispute the statewide deviation figures in Legislative Defendants' memorandum (Mem. 19-26). *See* NAACP Opp. 23. No "systematic policy" of under- and over-population, *Larios*, 300 F. Supp. 2d at 1327, could be proven here because it did not exist. Plaintiffs' suggestion that they are entitled to pick and choose districts to challenge under this theory would, if accepted, entitle challengers to gerrymander malapportionment challenges simply by identifying the over-populated districts reflecting a characteristic of their own choosing. But the selection of challenged districts reflects the NAACP Plaintiffs' motivation, not the General Assembly's motivation. The NAACP Plaintiffs ignore the fact that the same legislature that configured the districts they challenge also under-populated Democratic-leaning districts and over-populated Republican-leaning districts. *See* Mem. 20-26.

9

Even if the NAACP Plaintiffs could create a triable fact question, they cannot prevail at this stage. Setting aside that they did not move for summary judgment, a claim of predominant intent is nearly impossible for a *plaintiff* to establish as a matter of law. *See Hunt v. Cromartie*, 526 U.S. 541, 549-50 (1999) (reversing trial court's finding of predominant intent for a plaintiff on summary judgment). Here, the General Assembly's under-population of Democratic-leaning districts and over-population of Republican leaning districts (at a minimum) precludes summary judgment in the NAACP Plaintiffs' favor.

**B.     The NAACP Plaintiffs Seek to Circumvent *Rucho***

The malapportionment claim is barred by *Rucho v. Common Cause,* 588 U.S. 684 (2019).

Setting aside whether any *Larios* claim withstands *Rucho*, this one cannot. By disclaiming any need to prove systematic over- and under-population, NAACP Opp. 23, the NAACP Plaintiffs present a run-of-the-mill partisan-gerrymandering suit no different from that in *Rucho*. Their claim boils down to two contentions: (1) "political considerations drove" line drawing, *e.g.*, NAACP Opp. 23; and (2) the plans do not achieve mathematic perfection¸ *see id.* at 23-24. Far from a theory limited to "unusual cases," *Harris*, 578 U.S. at 259, the NAACP Plaintiffs' claim would succeed in virtually every case. The Supreme Court long ago recognized that "partisan districting is a … common practice," *Vieth v. Jubelirer*, 541 U.S. 267, 286 (2004) (plurality opinion), and legislative plans do not typically meet mathematic perfection (because they need not, *Harris*, 578 U.S. at 258). Hence, a claim that could succeed on proof of political line drawing plus departures from

10

mathematical perfection would "almost *always* [create] room for an election-impeding lawsuit contending that partisan advantage was the predominant motivation." *Vieth*, 541 U.S. at 286. *Rucho* rejects that possibility. *See* 588 U.S. at 703.

The NAACP Plaintiffs' theory is also devoid of any "limited and precise rationale." *Id.* (citation omitted). This Court has no way to know whether the political considerations cited in the NAACP Plaintiffs' evidence "went too far." *Id.* at 708. And, by depending almost entirely on assertions that districts "disregard[] traditional criteria," NAACP Opp. 20, the NAACP Plaintiffs ignore that *Rucho* found that fairness cannot "be measured by adherence to 'traditional' districting criteria." 588 U.S. at 706; *see also Banerian v. Benson*, 589 F. Supp. 3d 735, 736 (W.D. Mich. 2022) (three-judge court) (rejecting similar claim as "a blood relative of the claims of partisan gerrymandering" rejected in *Rucho*). *Rucho*'s discussion of one-person, one-vote claims does not help the NAACP Plaintiffs, *contra* NAACP Opp. 25, because the standard requires only that districts have "approximately" equal population, *see Rucho*, 588 U.S. at 709, not perfectly equal population. "[T]he one-person, one-vote rule is relatively easy to administer as a matter of math," *id.* at 708, precisely because of the 10% rule the NAACP Plaintiffs seek to undermine. And, while the NAACP Plaintiffs are correct that some courts have found viable malapportionment claims where a legislature "intentionally underpopulated districts," NAACP Opp. 24, they ignore that each of those cases depended on proof of a policy of systematic under- and over-population. Mem. 12-14. By disclaiming any intent or ability to prove that, NAACP Opp. 23, the NAACP Plaintiffs defeat their own recourse to those decisions.

11

Finally, the NAACP Plaintiffs do not address Legislative Defendants' argument that the Fourth Circuit has acknowledged that this type of claim rises or falls on the justiciability question governing partisan-gerrymandering claims more generally. Mem. 26. The NAACP Plaintiffs also ignore that the governing opinion in *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006), held that, "[e]ven in addressing political motivation as a justification for an equal-population violation … *Larios* does not give clear guidance." *Id.* at 423. *Rucho* does provide clear guidance, and it resolves this case as a matter of law.

## CONCLUSION

The Court should grant the motion for partial summary judgment.

Respectfully submitted, this the 17th day of January, 2025.

| **BAKER & HOSTETLER LLP** | **NELSON MULLINS RILEY & SCARBOROUGH LLP** |
|---|---|
| By: /s/ Katherine L. McKnight<br>Richard B. Raile*<br>DC Bar No. 1015689<br>Katherine L. McKnight*<br>DC Bar No. 994456<br>Trevor Stanley*<br>DC Bar No. 991207<br>1050 Connecticut Ave. NW<br>Suite 1100<br>Washington DC 20036<br>Ph: (202) 861-1500<br>rraile@bakerlaw.com<br>kmcknight@bakerlaw.com<br>tstanley@bakerlaw.com<br><br>Patrick T. Lewis*<br>Ohio State Bar No. 0078314<br>Key Tower<br>127 Public Square, Suite 2000<br>Cleveland, Ohio 44114 | By: /s/ Phillip J. Strach<br>Phillip J. Strach<br>North Carolina State Bar No. 29456<br>Alyssa M. Riggins<br>North Carolina State Bar No. 52366<br>Cassie A. Holt<br>North Carolina State Bar No. 56505<br>Jordan A. Koonts<br>North Carolina State Bar No. 59363<br>301 Hillsborough Street, Suite 1400<br>Raleigh, North Carolina 27603<br>Ph: (919) 329-3800<br>phil.strach@nelsonmullins.com<br>alyssa.riggins@nelsonmullins.com<br>cassie.holt@nelsonmullins.com<br>jordan.koonts@nelsonmullins.com<br><br>*Attorneys for Legislative Defendants* |

Ph: (216) 621-0200
plewis@bakerlaw.com

Erika D. Prouty*
Ohio State Bar No. 0095821
Rebecca Schrote*
Ohio State Bar No. 0101051
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Ph: (614) 462-4710
eprouty@bakerlaw.com
rschrote@bakerlaw.com

*Appeared via Special Notice*

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I, Phillip J. Strach, hereby certify that the foregoing brief includes 3,107 words as indicated by Microsoft Word, excluding the caption, signature lines, certificate of service, and cover page.

This the 17th day of January, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456

**CERTIFICATE OF SERVICE**

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification to counsel of record.

This the 17th day of January, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456