UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., <br><br> *Defendants*. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., <br><br> *Defendants*. | Civil Action No. 23 CV 1104 |

**MEMORANDUM OF LAW IN SUPPORT OF *WILLIAMS* PLAINTIFFS' MOTION TO STRIKE OUT OF SCOPE CONTENT IN DR. BARBER'S MARCH 17, 2025 REPORT**

*Williams* Plaintiffs move to strike various opinions and analyses in Dr. Michael Barber's March 17, 2025 49-page "Supplemental Report" as an impermissible sur-reply not contemplated or allowed by the parties' agreed-upon supplemental expert discovery and the Court's ensuing order permitting the parties to supplement their expert reports solely as they relate to the 2024 election. Specifically, *Williams* Plaintiffs respectfully request that the Court strike all parts of Dr. Barber's March 17, 2025 report responding to Dr. Rodden's reply report and deposition questions on pages 3–31, except the first full paragraph on page 15 and Table 1 on page 16, because they are both outside the scope of the parties' agreement, the Court's order, and the applicable Federal Rules of Civil Procedure.

## BACKGROUND

On May 14, 2024, all parties—*Williams* Plaintiffs, *NAACP* Plaintiffs, State Board Defendants, and Legislative Defendants—submitted their joint Amended Rule 26(f) Report. ECF No. 47. The Court approved the Amended Rule 26(f) Report as submitted on May 22, 2024. ECF No. 48. In the Amended Rule 26(f) Report, the parties agreed that expert reports required by Rule 26(a)(2)(B) were subject to the following deadlines: Plaintiffs' opening experts reports were due on August 1, 2024; Defendants' expert reports were due on September 26, 2024; and Plaintiffs' reply to Defendants' reports were due on October 17, 2024. ECF No. 47 at 6. The parties further agreed that supplemental expert reports for the limited purpose of "considering electoral results from the 2024 General Election" would be due on January 31, 2025, with supplemental rebuttal expert reports due

February 14, 2025. *Id.* Due to delays in the release of data by the North Carolina State Board of Elections relating to the 2024 General Election, the parties requested—and the Court granted—modifications to the deadlines for supplemental expert reports. ECF Nos. 89, 90. Because the State Board of Elections released the data on January 31, 2025, supplemental expert reports considering the results of the 2024 General Election were due on March 17, 2025, supplemental rebuttal expert reports are due on March 31, 2025, and the close of expert supplemental depositions is April 14, 2025. Other than discovery relating to supplemental expert reports and two depositions taken slightly out of time, discovery closed on November 4, 2024. ECF No. 47 at 5; ECF Nos. 72, 73.

On March 17, 2025, in accordance with the modified deadline, the parties exchanged supplemental expert reports. Legislative Defendants served the Supplemental Expert Report of Michael Barber, PhD. Ex. A. In producing his 49-page report, Dr. Barber wrote that he was "asked by counsel for the Legislative Defendants to supplement [his] original report in light of the outcome of the 2024 election." Ex. A at 3. This was within the scope of the Court's orders providing for these supplemental reports. However, in addition to supplementing his original report in light of the 2024 election, Dr. Barber wrote that he was "also [] asked to respond to several new analyses that were presented by Dr. Rodden [] in their reply reports, as well as supplement [his] original report in light of questions that [he] was asked in [his] deposition." *Id*. This second category of analyses is what is at issue in this motion to strike.

- 3 -

Case 1:23-cv-01057-TDS-JLW    Document 95    Filed 03/25/25    Page 3 of 10

In this second category of analyses, Dr. Barber expresses additional critiques of Dr. Rodden's county envelope analysis, runs two additional sets of simulations, critiques Dr. Rodden's reply report analysis using Dr. Barber's simulations, and responds to Dr. Rodden's opinion regarding multicollinearity in his reply report. Ex. A at 4–14. None of these critiques or analyses use, rely upon, or otherwise discuss 2024 General Election results. Dr. Barber's critique of Dr. Rodden's analysis of alternative congressional maps relies in part on the partisan lean metric he generates using the 2024 statewide election index, but the analysis he presents is entirely new, not an update of analyses previously disclosed. In addition, a substantial part of this analysis focuses on incumbent addresses and precinct locations instead of 2024 General Election results. Ex. A at 15–31. Similarly, Dr. Barber responds to Dr. Rodden's election performance analysis of District 1 in his reply report. Ex. A at 14–15. That is, Dr. Barber uses 2024 election results to introduce new analyses and opinions to respond to material in Dr. Rodden's reply report.[1]

Dr. Barber was also apparently instructed to use his supplemental report to clean up his prior deposition testimony. Ex. A at 3 ("I have been asked to. . . supplement my original report in light of questions that I was asked in my deposition"). He follows that direction in his report. *See, e.g.*, Ex. A at 6 ("In my deposition I was asked if both race and

---

[1] The only paragraph responding to Dr. Rodden's analyses in which Dr. Barber arguably supplements his previous report with 2024 General Election results is on page 15, beginning with "The 2024 election also shows that the partisan index that I used in my original report to describe the partisan lean of districts was predictive, but not perfectly accurate, as no index of statewide elections will be" and corresponding Table 1. Ex. A at 15–16. *Williams* Plaintiffs have no objection to this paragraph and Table 1 as proper material for a supplemental expert report. *Williams* Plaintiffs also take no position on the inclusion of the portions of Dr. Barber's report responding to Mr. Fairfax. Ex. A at 32–48.

partisanship were included in the original regression analysis and we had a lengthy discussion about the potential for multicollinearity in these types of regressions"); *id.* at 6 n.2 ("It is still my belief that including both race and partisanship is important and necessary, but to illustrate that in the context of the simulations it is not critical and in either case the county envelope method over-predicts race as a significant factor in district shape I conduct the analysis with race alone and exclude partisanship from the regression").

## ANALYSIS

The vast majority of Dr. Barber's March 17, 2025 report falls outside the scope and purpose of supplemental expert reports as agreed upon by the parties and as contemplated by Rule 26(e), and should therefore be stricken. This includes all of Dr. Barber's report on pages 3–31, except for the first full paragraph on page 15 and Table 1 on page 16.

In their Amended 26(f) Report, the parties agreed—and the Court approved—that supplemental expert reports would be for the limited purpose of "considering electoral results from the 2024 General Election." ECF No. 47 at 6. Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1 03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (internal quotations omitted) (noting "this court's history of strict adherence to discovery schedules"). Here, the Court's orders authorizing the supplemental expert reports plainly were not meant to reopen discovery, permit sur-replies, or invite additional analyses responsive to questions asked in deposition.

Rule 26(e), meanwhile, contemplates supplementation only when a party learns that some part of the report "is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). When authorized, supplemental expert reports "permit[] a party to correct inadvertent errors or omissions" and do not provide "a license to amend an expert report." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008). Courts have rejected efforts to use supplementation of an expert report as "gamesmanship" or to "sandbag one's opponent." *Id. See also Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation.").

Legislative Defendants' attempt to have Dr. Barber smuggle in new analyses and opinions to respond to Dr. Rodden's reply report and opposing counsel's deposition questions under the guise of supplementation violates the Amended Rule 26(f) Report agreement of the parties and exceeds supplementation allowed under Rule 26(e). Permitting Legislative Defendants' end run around the close of discovery creates incentives for gamesmanship. Following this example, any expert could present new analyses entirely from scratch as long as they incorporated or invoked 2024 General Election results. The bulk of Dr. Barber's March 17, 2025 report therefore "was not supplementation, but merely an out-of-time disclosure." *Akeva*, 212 F.R.D. at 310.

Dr. Barber's untimely report should therefore be excluded. Rule 37(c)(1) provides that "a party [that] fails to provide information or identify a witness as required by Rule 26(a) or (e) [] is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In deciding whether the nondisclosure of evidence is substantially justified or harmless or whether to exclude the evidence, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

*Williams* Plaintiffs are prejudiced by the untimely disclosure of the new opinions presented in Dr. Barber's report. Because of the intended limited scope of the supplemental expert reports, neither *Williams* Plaintiffs nor Dr. Rodden could have expected a 49-page report with entirely new analyses to be submitted with supplemental expert reports. Had they understood that the parties would be engaging in a wholesale re-litigation of the expert analyses at issue in this case, they would not have agreed to such a condensed supplemental discovery schedule. ECF No. 89 at 3 (providing deadline for rebuttal reports two weeks after the exchange of supplemental reports). Even if they had more time, allowing Defendants to effectively reopen discovery at this late stage—nearly *five months* after the close of discovery and less than *three* months before trial—would require an unnecessary

and unplanned expenditure of time and resources, resources that would otherwise be put toward trial preparation. Legislative Defendants have provided no justification for asking Dr. Barber to respond to Dr. Rodden's reply report and to deposition questions as part of his supplemental expert report.

Striking the offending portions of Dr. Barber's report is appropriate at this time to ensure the parties have a clear understanding of the proper scope of Dr. Barber's report in preparing for a supplemental rebuttal report, deposition, and trial. *See, e.g.*, *Akeva*, 212 F.R.D. at 308, 312 (granting motion to strike for an expert that was disclosed after discovery ended and before the report was submitted to the court because the additional report interfered with parties' ability to prepare for trial); *Indura S.A. v. Engineered Controls Int'l Inc.*, No. 1:10CV457, 2011 WL 3862083, at *2 (M.D.N.C. Sept. 1, 2011) (considering motions to strike before expert reports were submitted to the court).

## CONCLUSION

For the foregoing reasons, *Williams* Plaintiffs respectfully request that the Court order out of scope portions of Dr. Barber's March 17, 2025 report on pages 3–31, except the first full paragraph on page 15 and Table 1 on page 16, to be stricken.

Dated: March 25, 2025

| /s/ *Narendra K. Ghosh* | /s/ *Abha Khanna* |
|---|---|
| **PATTERSON HARKAVY LLP** | **ELIAS LAW GROUP LLP** |

Narendra K. Ghosh, NC Bar No. 37649
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Phone: (919) 942-5200
nghosh@pathlaw.com

*Counsel for* Williams *Plaintiffs*

Abha Khanna*
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Phone: (206) 656-0177
Facsimile: (206) 656-0180
AKhanna@elias.law

Qizhou Ge*
Mark Haidar*
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Facsimile: (202) 968-4498
AGe@elias.law
MHaidar@elias.law

* *Special Appearance pursuant to Local Rule 83.1(d)*

## CERTIFICATE OF WORD COUNT

I certify that this motion complies with the requirements of Local Rule 7.3. This memorandum contains 1,919 words exclusive of the caption, signature lines, and this certificate.

Dated: March 25, 2025                              By: /s/ *Abha Khanna*