UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., *Plaintiffs*, v. REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., *Defendants*. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., *Plaintiffs*, v. PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., *Defendants*. | Civil Action No. 23 CV 1104 |

**REPLY TO LEGISLATIVE DEFENDANTS' RESPONSE IN OPPOSITION TO *WILLIAMS* PLAINTIFFS' MOTION TO STRIKE OUT OF SCOPE CONTENT IN DR. BARBER'S MARCH 17, 2025 REPORT**

*Williams* Plaintiffs respectfully request that the Court strike pages 3–31 of Dr. Michael Barber's March 17, 2025 report, with the exception of the first full paragraph on p. 15 and Table 1 on p. 16. Nothing in Legislative Defendants' Opposition to Plaintiffs' Motion, ECF No. 99 ("Opp'n"), changes the fact that much of Dr. Barber's report is an impermissible sur-reply report not contemplated or allowed by the parties' agreed-upon supplemental expert discovery, the Court's ensuing order permitting the parties to supplement their expert reports solely as they relate to the 2024 election, and Rule 26(e) supplementation.

*First*, Rule 26(e) does not permit Dr. Barber's March 17, 2025 report, which was expressly intended to respond to deposition questions and Dr. Jonathan Rodden's October 17, 2024 reply report. Authority cited by Legislative Defendants explains that the "threshold issue is whether the [Expert] Report is a supplement or a rebuttal." *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-CV-00358, 2020 WL 6581868, at \*2 (E.D. Tex. Nov. 10, 2020). A rebuttal report is "intended to contradict or rebut evidence" by the opposing expert and "explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *Id.* (first citing Fed. R. Civ. P. 26(a)(2)(D)(ii); and then citing *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at \*3 (E.D. Tex. Jan. 17, 2018)). A supplemental report, on the other hand, "adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the [supplement report's deadline]." *Id.* (citation omitted). Dr. Barber's March 17, 2025 report squarely qualifies as a rebuttal report

rather than a supplemental report. Dr. Barber did not seek to "complete" any missing data in his prior report or update his analyses with additional data, and much of the material in his report relies on data such as 2023 incumbent locations and randomly-generated simulation methods that have been available since the inception of this case. Instead, his report sought to further "counteract" Dr. Rodden's analyses and is best understood as an untimely rebuttal report. *Id.*

Indeed, as *Williams* Plaintiffs pointed out in their Motion to Strike, Rule 26(e) supplementation applies only when a party learns that some part of the report "is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Supplementation does not provide Legislative Defendants "a license to amend an expert report," and "courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship and have repeatedly rejected attempts by parties to bolster their position [] by 'supplementing' an expert report with a 'new and improved' expert report." *Petersen v. Midgett*, 140 F. Supp. 3d 490, 502 (E.D.N.C. 2015). Legislative Defendants do not purport to correct any inadvertent errors or omissions, and Dr. Barber's March 17, 2025 report merely attempts to improve upon his prior report. And questions about the limitations of Dr. Barber's report in the course of deposition hardly constitutes "new information [] brought to the expert's attention [] during a deposition" requiring Rule 26(e) supplementation. *See* Opp'n at 6. To the contrary, the deposition

questions Dr. Barber purports to respond to address the same critiques Dr. Rodden raised in his reply report. Ex. A, Rodden Reply Report at 6–9.

While Legislative Defendants claim that Rule 26(e) requires supplementation of "material changes made in the opinions of an expert," Opp'n at 7 (citing Fed. R. Civ. P. 26 Advisory Committee Note to 1993 Amendment), Legislative Defendants do not contend that Dr. Barber's supplemental report included "material changes" to his opinions based on 2024 election results or any new information since his previous report. In fact, in Dr. Barber's only update using 2024 election results, he states that his "original partisan index was quite accurate in predicting the party that won the 2024 election in each district." Ex. B, Barber Suppl. Report at 15. The remainder of his analyses consists of efforts to bolster his previous report and reflects no material changes to his opinions.

In fact, every case cited by Legislative Defendants indicates that Rule 26(e) supplementation is not appropriate here. Opp'n at 8–9; s*ee Gates v. Synthes, Inc.*, No. 1:08CV500, 2011 WL 13323688, at *2 (M.D.N.C. Aug. 16, 2011) (rejecting a report as improper supplementation because it was not an attempt to "correct the original expert report because it is misleading" but instead presented "an entirely new theory"); *Lightfoot v. Georgia-Pac. Wood Prods. LLC*, No. 7:16-CV-244-FL, 2017 WL 11611001, at *4 (E.D.N.C. Nov. 2, 2017) (permitting supplemental report that corrected inadvertent errors or omissions, including providing a list of materials reviewed for the original report, correcting a previously misidentified year, and clarifying a statement already included in the original report); *United States ex rel. Skibo v. Greer Lab'ys, Inc.*, No. 5:13-CV-110-

- 4 -

Case 1:23-cv-01057-TDS-JLW    Document 100    Filed 04/15/25    Page 4 of 10

MOC-DCK, 2019 WL 1992139, at *5 (W.D.N.C. May 6, 2019) (permitting supplementation after the party "made it clear at every step in [the] case that they intended to supplement [their expert's] report to incorporate new [] data, documents, and testimony as that new information became available" and the supplemental report merely incorporated new data into damages calculation using the same methodology); *Gibson Brands, Inc.*, 2020 WL 6581868, at *3 (permitting supplementation when the report updated existing methodology with additional data rather than rebut opposing expert report); *Capitol Just. LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34, 38 (D.D.C. 2009) (permitting supplementation for an expert who used the same methodology in his damages model as in his initial report but updated the inputs and calculations "to produce a more complete and accurate report").

*Second*, accepting Legislative Defendants' interpretation of Rule 26(e) would allow any expert to file new substantive reports indefinitely during and after the court-ordered discovery period. Opp'n at 3. Legislative Defendants accuse *Williams* Plaintiffs of "open[ing] the door to supplementation by questioning Dr. Barber" in deposition about the limits of his analysis. *Id.* at 2. Specifically, Legislative Defendants complain that *Williams* Plaintiffs' counsel "asked Dr. Barber numerous questions about his opinions regarding multicollinearity," *id.* at 4—an issue that affected the regressions he ran in his initial report after he added the correlated variables party and race—and analyses that Dr. Rodden provided in response to Dr. Barber's critiques. Ex. A, Rodden Reply Report at 6–9 ("Dr. Barber's regressions include two variables—BVAP and Democratic vote share—that are

extremely highly correlated. . . A very basic lesson from any introductory statistics course is that researchers may not include two such variables in the same regression, since such regressions produce coefficients and standard errors that are nonsensical"). Legislative Defendants complain that "Dr. Barber could not have known that he would need to demonstrate the reliability of his method for challenging Dr. Rodden's opinions beyond the confines of his report," Opp'n at 8, but that is precisely the purpose of depositions—to challenge the reliability and the limits of the analyses in expert reports. If inquiring about the limitations of an expert's analysis is "opening the door" to new analyses and reports, Legislative Defendants essentially invite all experts to modify their analyses in response to deposition questions and after the close of discovery. Contrary to Legislative Defendants' suggestion, Opp'n at 3, supplementation is not intended to permit unlimited rounds of expert reports in the lead-up to trial. *See Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation."); *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003) (concluding that permitting supplemental reports intended to "deepen and strengthen" prior reports "would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given").

*Third*, *Williams* Plaintiffs are prejudiced by Dr. Barber's unexpected expert report. Legislative Defendants claim that *Williams* Plaintiffs had "ample time" to review and respond to Dr. Barber's March 17, 2025 report. Opp'n at 2. But *Williams* Plaintiffs did not anticipate having to respond to a 49-page report of new analyses within two weeks, and their expert was only able to submit a "brief initial response to [Dr. Barber's] main claims." Ex. C, Rodden Rebuttal Report at 2. Dr. Rodden did not, for example, have time to review Dr. Barber's new simulated maps in detail, including to examine their configuration of districts in the areas at issue in this litigation or to otherwise form an opinion as to their value in assessing the county envelope analysis. Had *Williams* Plaintiffs anticipated such a task, they never would have agreed to a two-week period to prepare rebuttal reports and a supplemental deposition period during which their expert was largely unavailable. And while Legislative Defendants ultimately agreed to an "extended time for Dr. Barber's supplemental deposition" in an attempt to mitigate that prejudice, Opp'n at 2, the 5-hour time limit—which Legislative Defendants initially objected to[1]—is still significantly less than the 7.5-hour time limit previously allotted for expert depositions. ECF No. 47 at 5. Even if there was sufficient time for Dr. Rodden to respond substantively and for Dr. Barber's second deposition, neither the parties nor the court's schedule contemplated a new, resource-intensive round of expert discovery so late in the game.

---

[1] Legislative Defendants continue to suggest that 3.5 hours was sufficient time to depose Dr. Barber regarding his 49-page supplemental report. *See* Opp'n at 11, n.4 ("Legislative Defendants believe that an extended deposition time is unnecessary"). Legislative Defendants offer no explanation for why an expert report that they suggest presents "material changes" in opinion, *id.* at 7, does not warrant a fulsome deposition.

Finally, even if there were no prejudice, surprise, or disruption to trial, Dr. Barber's March 17, 2025 report is not substantially justified or harmless and should be stricken. *See Beach Mart, Inc. v. L & L Wings, Inc.*, No. 2:11-CV-00044-F, 2016 WL 347398, at *3 (E.D.N.C. Jan. 27, 2016). Discovery closed on November 4, 2024, other than supplemental expert reports considering the 2024 General Election. ECF No. 47 at 5. Dr. Rodden's reply report was served on October 17, 2024, and Dr. Barber's deposition took place on October 30, 2024. Even if Legislative Defendants were justified in supplementing Dr. Barber's analyses in response, they have identified no reason why it took them more than five months to submit Dr. Barber's supplemental analyses. Much of Dr. Barber's analyses do not rely on 2024 election data, including his additional simulations, comments on multicollinearity, and analyses of 2023 incumbent residences. Ex. B, Barber Suppl. Report at 4–14, 16–25. Where Dr. Barber does use 2024 election data, he largely does not merely update his previous analyses with new data but presents entirely new analyses, *id.* at 15–31, and as he admits, his analyses would not have been substantially different had he used his pre-2024 partisan index instead of his 2024 partisan index, *id.* at 15. Permitting such supplementation would "contort [the] sensible rule [for supplementation] into the unacceptable rule that a party may permissibly submit a new expert report until pretrial disclosures are due or until 30 days before trial so long as the party characterizes the new report as a supplementation." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008).

The Court should grant *Williams* Plaintiffs' Motion to Strike.

Dated: April 15, 2025

/s/ *Narendra K. Ghosh*
**PATTERSON HARKAVY LLP**

Narendra K. Ghosh, NC Bar No. 37649
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Phone: (919) 942-5200
nghosh@pathlaw.com

*Counsel for* Williams *Plaintiffs*

/s/ *Abha Khanna*
**ELIAS LAW GROUP LLP**

Abha Khanna*
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Phone: (206) 656-0177
Facsimile: (206) 656-0180
AKhanna@elias.law

Qizhou Ge*
Mark Haidar*
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Facsimile: (202) 968-4498
AGe@elias.law
MHaidar@elias.law

* *Special Appearance pursuant to Local Rule 83.1(d)*

## CERTIFICATE OF WORD COUNT

I certify that this reply brief complies with the requirements of Local Rule 7.3 and contains 1,932 words exclusive of the caption, signature lines, and this certificate.

Dated: April 15, 2025                                          By: /s/ *Abha Khanna*