# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS; *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23-CV-1057 |
| REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting; *et al.*, | |
| *Defendants*. | |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23-CV-1104 |
| PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate; *et al.*, | |
| *Defendants*. | |

## LEGISLATIVE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE NAACP PLAINTIFFS' UNTIMELY DISCLOSURE OF CHRISTOPHER KETCHIE AND RELATED EXHIBITS

Legislative Defendants, by and through the undersigned counsel, submit this

memorandum of law in support of their motion in limine to exclude potential testimony

from Christopher Ketchie ("Ketchie"), and to exclude his declaration[1] and related exhibits from use at trial. [D.E. 122].

## INTRODUCTION AND NATURE OF MATTER BEFORE THE COURT

Plaintiffs' expert disclosures were due on August 1, 2024. Their initial disclosures were due by May 29, 2024. Nearly a year later, with pretrial disclosures on May 16, 2025, the NAACP Plaintiffs disclosed a declaration of Christopher Ketchie, the Research Director for Southern Coalition for Social Justice, attesting that he, among other things, "create[d] demonstrative maps" for North Carolina districts, many of which have election or racial overlays. Accompanying that declaration are seventy-nine exhibits on their exhibit list which were not disclosed in discovery, including draft maps, demographic analyses, and district-specific partisan studies. The NAACP Plaintiffs know that only a qualified expert can prepare these types of materials: they have sponsored lengthy reports and opinions by Anthony Fairfax, a disclosed expert who prepared similar items to those Ketchie now offers.

The NAACP Plaintiffs failed to timely disclose Ketchie's opinions and analyses, or establish his expertise in discovery, precluding Legislative Defendants from knowing his identity or conducting discovery into him or his opinions. Now, on the eve of trial, the NAACP Plaintiffs attempt to disclose Ketchie's analyses and opinions under the facade of a pretrial disclosure. But the nature of Ketchie's declaration and his seventy-nine exhibits

---

[1] Legislative Defendants note that, although Ketchie's declaration was served concurrently with the NAACP Plaintiffs' pretrial disclosures, it was not listed on their exhibit list. Thus, it is unclear what the NAACP Plaintiffs' intention is regarding this declaration. Therefore, Legislative Defendants respectfully request its exclusion to prevent any further surprise or unfair prejudice.

is plainly that of an expert witness. This effort to bypass ordinary expert disclosure deadlines violates both the Court's Scheduling Order and the Rules of Civil Procedure. As such, these items, along with any live or written testimony from Ketchie, should be excluded from trial. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

## **STATEMENT OF FACTS**

The NAACP Plaintiffs commenced this action on December 19, 2023, challenging various aspects of the enacted North Carolina Senate, House, and Congressional plans under several theories.[2] *N.C. State Conf. of NAACP, et al. v. Berger, et al.*, 1:23-cv-01104 at D.E. 1 (M.D.N.C. 2023). On March 18, 2024, this Court consolidated the NAACP Plaintiffs' action with the present matter. [D.E. 34].

On April 23, 2024, all parties to the consolidated action submitted a joint Rule 26(f) report containing comprehensive proposed discovery and disclosure deadlines. [D.E. 44]. Then, on May 14, 2024, the parties submitted an amended Rule 26(f) report, following instructions and clarification from the Court. [D.E. 47]. Notably, the amended report proposed August 1, 2024, and October 17, 2024, deadlines for Plaintiffs' opening and reply expert reports, respectively. [*Id.*]. On May 22, 2024, this Court entered a Scheduling Order largely approving the amended Rule 26(f) report, including the proposed expert deadlines.

---

[2] On April 8, 2025, this Court granted partial summary judgment, dismissing some districts from Counts 2, 4-6, 8, 9, 11, and 12 of the NAACP Plaintiffs' claims for relief. [D.E. 98] The Court also entered full summary judgment dismissing all of Counts 3 and 7 of the NAACP Plaintiffs' claims for relief. [*Id.*]. The NAACP Plaintiffs subsequently dismissed Counts 6, 8, and 9 on April 22, 2025. [D.E. 104].

3

[D.E. 48]. Amongst other things, the Scheduling Order required the parties to complete any remaining Rule 26(a) initial disclosures by no later than May 29, 2024. [*Id.*]. The order also set the deadline for completing initial discovery as November 4, 2024. [*Id.*].[3]

The NAACP Plaintiffs served their initial disclosures on May 8, 2024.[4] They supplemented those disclosures on August 9, 2024[5] and again on September 20, 2024.[6] Not once did the NAACP Plaintiffs name or disclose Christopher Ketchie. Similarly, the NAACP Plaintiffs' disclosures represented that the maps, district plans, and demographic information which they would use to support their claims were all in the "public domain." [Ex. 1 at ¶2(11)(13); Ex. 2 at ¶2(11)(13); Ex. 3 at ¶2(11)(13)]. Ketchie's maps and analyses are plainly not in the public domain.[7]

Legislative Defendants served their first set of discovery requests on June 11, 2024, which the NAACP Plaintiffs responded to on July 11, 2024.[8] Of particular relevance, Legislative Defendants' second request for production instructed the NAACP Plaintiffs to produce:

---

[3] The deadlines for discovery pertaining to data relating to the 2024 general election were originally set for February 28, 2025 [D.E. 48] but were subsequently modified due to delays in the data's release. [D.E. 90].

[4] The NAACP Plaintiffs' May 8, 2024, Initial Disclosures are attached as Exhibit 1.

[5] The NAACP Plaintiffs' Aug. 9, 2024, Amended Initial Disclosures are attached as Exhibit 2.

[6] The NAACP Plaintiffs' Sept. 20, 2024, Amended Initial Disclosures are attached as Exhibit 3.

[7] To the extent Plaintiffs argue that the maps are available at Dave's Redistricting links, official state maps are searchable in Dave's, but the interface does not generally provide user friendly searchability of all maps or portions of maps drafted by any member of the public, anywhere in the world. Even if the interface were user friendly, requiring opposing counsel to search the entire "public domain" plainly does not comport with the requirements of Rule 26.

[8] Excerpts of the NAACP Plaintiffs' July 11, 2024, responses to Legislative Defendants' First Set of Discovery Requests are attached as Exhibit 4.

4

> Any non-privileged communications or documents created, received, or maintained by you that relate to the political performance of the 2023 Plans, any alternative maps, or any individual districts, in any form including, but not limited to, any and all estimates, reports, studies, analyses, notes, text messages, journals, diaries or other writings, videotapes, recordings or other electronically stored media.

[*Id.* at pp. 32-33]. Although the NAACP Plaintiffs indicated that they would produce non-privileged information, they did not identify or produce anything from Ketchie, nor did they supplement their disclosures, responses, or productions to include his analyses.[9] [*Id.*]. Additionally, Legislative Defendants' fifth interrogatory asked the NAACP Plaintiffs to identify all persons from whom they have "obtained any written or oral statement, report, memorandum, or *testimony*," concerning the complaint's allegations. [*Id.* at pp.15-16] (emphasis added). Ketchie's declaration is unquestionably testimony, yet neither it nor his name were disclosed prior to May 16, 2025. Likewise, when Legislative Defendants' thirteenth interrogatory asked for the names of all witnesses they "may call" at trial, the NAACP Plaintiffs cited to their initial disclosures. [*Id.* at p.22]. Ketchie's name was absent from those and all amended disclosures.

On August 1, 2024, the NAACP Plaintiffs provided their expert disclosures and opening reports. Ketchie was not identified as expert, nor were his analyses disclosed. In rebuttal to the NAACP Plaintiffs' initial expert reports, Legislative Defendants served their expert reports on September 26, 2024. As part of their reports, two of Legislative

---

[9] To the extent the NAACP Plaintiffs might claim that Ketchie was engaged as a consulting expert, such privilege has been waived by their subsequent production now. And the protections for consulting experts do not allow one party to surprise another on the eve of trial with a belated expert disclosure. *See Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 425 (M.D.N.C. 2005).

Defendants' experts, Dr. Michael Barber,[10] and Dr. Sean Trende,[11] produced choropleth maps analyzing the racial and political composition of certain districts and areas. Drs. Barber and Trende also analyzed compactness and political splits. *See infra* p. 12. On October 17, 2024, Plaintiffs served their reply expert reports. While the NAACP Plaintiffs' expert Anthony Fairfax replied to Drs. Trende and Barber,[12] nothing was produced from Ketchie. Following comprehensive expert discovery, including supplemental reports and depositions where Legislative Defendants' experts were subject to rigorous questioning regarding their reports, discovery completely closed on April 14, 2024.

Pursuant to this Court's order, [D.E. 50], the parties served their pretrial disclosures on May 16, 2025. There, for the first time, the NAACP Plaintiffs disclosed the identity of Ketchie. [D.E. 117-1]. Additionally, the NAACP Plaintiffs served Legislative Defendants with a declaration from Ketchie,[13] along with seventy-nine exhibits which were not previously produced in discovery.[14] [D.E. 117-2 at NAACPPX 374-453]. Ketchie's

---

[10] Relevant excerpts from Dr. Michael Barber's initial expert report are attached as Exhibit 5.

[11] Relevant excerpts from part II of Dr. Sean Trende's expert report are attached as Exhibit 6.

[12] Relevant excerpts from the expert reply report of Anthony Fairfax are attached as Exhibit 7. Notably, Mr. Fairfax's reply included choropleth maps; a type of map produced by Ketchie on May 16, 2025.

[13] The May 16, 2025, declaration of Christopher Ketchie is attached as Exhibit 8.

[14] NAACP Plaintiffs' exhibit list claims that a few of Ketchie's exhibits were used in various depositions. *See, e.g.*, [D.E. 117-2 at NAACPPX 386, 389, 392 (claiming use in the deposition of Senator Ralph Hise) and 401 (claiming use in the deposition of Blake Springhetti)]. A review of these exhibits compared to the noted deposition exhibits reveals that they are not all the same. Similarly, the source of the documents was not disclosed at the time of the deposition, with Plaintiffs' counsel representing that the deposition exhibits were created using Dave's Redistricting App (a publicly available source), based on data provided by Legislative Defendants. For all Legislative Defendants knew at the time, the NAACP Plaintiffs' counsel could have created the exhibits. *See* Excerpts from the Deposition of Senator Ralph Hise ("Hise Dep.") (attached as Exhibit 9 at 418:5-17, 424:5-14. To the extent this Court is only inclined to grant the Motion in part, Legislative Defendants respectfully request that the Court exclude all exhibits other than

declaration purported to authenticate the exhibits, claiming authorship of these newly disclosed documents. [Ex. 8 at ¶5]. The declaration also set forth Ketchie's supposed qualifications to create illustrative plans and other exhibits in the package of materials, along with a purported methodology for generating the exhibits. [*Id.* at ¶¶2, 4-11, 14].

Upon closer review, these exhibits offer a wide range of previously undisclosed analyses and conclusions, including:

- BVAP choropleth maps of various districts[15];
- Statistical reports of various demographic measures, along with new compactness measures[16]; and
- Several district-specific partisanship studies.[17]

In fact, Ketchie's exhibits are strikingly similar to the various maps, graphics, and analyses performed by disclosed experts such as Anthony Fairfax,[18] Dr. Jonathan Rodden, Dr. Trende, and Dr. Barber. Unlike Ketchie, however, these individuals were timely disclosed and subject to (sometimes multiple) depositions. *See* [D.E. 05/19/2025 Text Order] (noting that Legislative Defendants made Dr. Barber available for an extended supplemental deposition).

---

those used in deposition—to the extent they were actually used—limited only to the portion that was used, and subject to the witness' ability to authenticate them once Plaintiffs lay a proper foundation for their use.

[15] A non-exhaustive sampling of Ketchie's BVAP choropleth and heat map exhibits is attached as Exhibit 10.

[16] A non-exhaustive sampling of Ketchie's demographic reports and compactness measure exhibits is attached as Exhibit 11.

[17] Ketchie's district-specific partisanship study exhibits are attached as Exhibit 12.

[18] Curiously, both Ketchie and Fairfax have similar educational backgrounds which they claim supports their qualifications to offer their respective conclusions – a master's degree involving Geographic Information Systems and Geospatial Information Sciences from North Carolina State University. [Ex. 8 at ¶2]; [D.E. 101-6 at ¶2].

Although the NAACP Plaintiffs' pretrial disclosures and Ketchie's declaration represent that the information in the exhibits was created using items produced by Legislative Defendants, these documents go far beyond simply using a shapefile to generate a demonstrative map. In fact, Ketchie's declaration and exhibits reveal that he made intentional choices in creating these exhibits, including:

- The political index he used [Ex. 12];
- Which districts to zoom into and analyze [*Id.*];
- What thresholds (or lack thereof) he used to produce his choropleth maps [Ex. 10];
- Which additional compactness measures he wanted to use [Ex. 11]; and
- What pieces of underlying metadata he wanted to produce versus withhold.[19]

Ketchie's choices also raise questions about reliability and credibility, since many of the maps are missing district numbers or have district lines obscured by labels.[20] It is unclear if these are mistakes, going to the reliability and credibility of Ketchie and his materials, or if they were intentional choices Ketchie made, prompting questions about the bases for his exercises of discretion. Unlike Legislative Defendants' experts who were subject to rigorous and repeated deposition questioning regarding their choices, Legislative Defendants were afforded no such opportunity to question Ketchie on his choices. Based upon the *NAACP* Plaintiffs' belated disclosure of Ketchie, along with the simultaneous

---

[19] A non-exhaustive sampling of Ketchie's metadata exhibits is attached as Exhibit 13. As these exhibits reveal, Ketchie's metadata panes apparently contain significantly more information than what was produced, as indicated by the single-page screenshot despite the imaged pane containing a scroll bar or drop-down menu that was not expanded.

[20] A non-exhaustive sampling of Ketchie's exhibits which are missing district labels is attached as Exhibit 14.

8

production of new exhibits and a declaration attempting to authenticate them, it is clear that, absent an order from this Court, the NAACP Plaintiffs will attempt to introduce improper evidence in violation of the Federal Rules of Civil Procedure.

## STATEMENT OF THE QUESTIONS PRESENTED

1.     Should Christopher Ketchie, his associated exhibits (NAACPPX 374-453), and declaration be excluded from trial?

## ARGUMENT

The content of Ketchie's declaration and exhibits, and the manner of their disclosure are both an improper expert opinion offered after the disclosure deadline, and a violation of Rules 26 and 37 of the Federal Rules of Civil Procedure. Regardless of which characterization the Court prefers, both independently warrant exclusion.

## I.     Ketchie is an Untimely, Undisclosed Expert

"A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in possession of the jurors.'" *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (citation omitted). "At bottom ... Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." *U.S. v. Perkins*, 470 F.3d 150, 156 (2006). Here, that is exactly what the NAACP Plaintiffs attempt to do with the late production of Ketchie's declaration and accompanying seventy-nine exhibits.

Courts in this circuit regularly forbid expert testimony "dressed in lay witness clothing." For example, in *U.S. v. Johnson*, the Fourth Circuit held that a trial court abused its discretion by permitting a law enforcement agent to testify to his interpretation of a

9

wiretapped phone call based solely on information gleaned after an investigation was complete. 617 F.3d 286, 292-93 (2010). Though the line between Rule 701 lay witness and Rule 702 expert testimony is "a fine one," the Court declined to accept the agent's "post-hoc assessments" because his analysis relied on scientific, technical, or other specialized knowledge, and not personal knowledge or perception. *Id*. (quotation omitted).

Ketchie's declaration and exhibits contain the same post-hoc assessments that require specialized GIS skills and a license to Maptitude software. Indeed, Ketchie is the Research Director of SCSJ and emphasizes his background in GIS in his affidavit—a showing of training and education that is only necessary for expert witnesses under Rule 702.

Furthermore, courts routinely consider reports that assess a districting plan's population and political splits, geographic compactness measures, and partisanship as expert testimony. *See e.g. Harris v. McCrory*, 159 F.Supp.3d 600, 618 (M.D.N.C. 2016) (admitting the expert testimony of Stephen Ansolabehere on compactness scores and other metrics analyzing the enacted map), *affirmed by Cooper v. Harris*, 581 U.S. 285, 311 (2017); *Robinson v. Ardoin*, 605 F.Supp.3d 759, 784-85 (M.D. La. 2022) (accepting William Cooper and Anthony Fairfax as experts in demography, redistricting, and census data where both looked at compactness, contiguity, and political splits not only on their maps, but the enacted maps) *vacated on other grounds by* 86 F.4th 574 (5th Cir. 2023); *Alpha Phi Alpha Fraternity Inc. v. Raffensperger,* 700 F. Supp. 3d 1136, 1233 (N.D. Ga. 2023) (accepting Blakeman Esselstyn as an expert in demography, redistricting, and geographic information systems, as well as William Cooper and John Morgan as experts in

10

redistricting and demography where both experts reported compactness scores, splits, and other demographic information regarding redistricting plans); *Ohio A. Philip Randolph Institute v. Householder*, 373 F.Supp.3d 978, 1038-39, 1046 (S.D. Ohio 2019) (accepting Dr. David Niven as an expert where he used a partisan index to assess the enacted map and further compared the number of census tract splits between prior enacted maps), *vacated on other grounds by Chabot v. Ohio A. Philip Randolph Institute*, 140 S. Ct. 102 (2019); *Whitford v. Gill*, 218 F.Supp.3d 837, 912-93 (W.D. Wis. 2016) (accepting then-Mr. Trende as an expert in political geography where he used a partisan index to assess political units in a districting map), *vacated on other grounds by Gill v. Whitford*, 585 U.S. 48 (2018).

While Plaintiffs are likely to argue that Ketchie's exhibits are permissible pursuant to Federal Rules of Evidence 1006 (summary of voluminous data) and 201 (judicial notice of the underlying geography), this is simply not applicable here. Ketchie did more than just take underlying data or shapefiles and produce illustrations. Ketchie made choices that experts are routinely questioned about. Legislative Defendants never had the opportunity to question Ketchie about his choice of partisan index, and whether he studied others before choosing the one he did. The same is true for his choice of black and white opacity settings for his maps showing BVAP levels, and why Ketchie chose not to provide a key with truncated shading ranges called "bins" as a visual aid. Nor did Legislative Defendants have the opportunity to inquire as to Ketchie's rationale for focusing on certain districts or splits, including his inclusion of some precincts versus others in his exhibits, and what a more fulsome picture might look like. Legislative Defendants also could not question Ketchie regarding his data practices and how he loaded information. Notably, Ketchie's declaration

11

includes instructions for how to perform certain tasks, *see, e.g.,* [Ex. 8 at ¶11], but no mention of whether he followed that practice. And finally, Legislative Defendants could not question Ketchie on other issues that go to credibility or reliability—including why some maps are missing district numbers or other identifying information.

Legislative Defendants' experts were subject to this sort of rigorous examination during their depositions. *See, e.g.,* [Deposition of Dr. Sean Trende[21] ("Trende Dep.") at 55:5-56:8, 142:22-143:16, 198:22-199:13, 234:11-235:8, 242:18-243:6, 251:6-18, 300:10-21]; [Supplemental Deposition of Dr. Michael Barber[22] ("Barber Dep.") at 64:5-65:19, 126:18-127:14]. And in fact, Legislative Defendants' experts report on many of the same points as Ketchie—including compactness, splits, and racial and partisan makeup of districts. [Ex. 5; Ex. 6] To the extent Plaintiffs wanted to rebut this information provided by Dr. Trende and Dr. Barber, they had ample opportunity to do so under the Court's scheduling order by disclosing Ketchie as an expert witness. Instead, Plaintiffs failed not only to make any sort of timely expert disclosure of Ketchie's work, but also failed to disclose him as an individual with any knowledge in this case. Plaintiffs' lack of disclosure subjects Legislative Defendants to severe, uncurable prejudice at this late stage.

## II. The NAACP Plaintiffs' Disclosure of Ketchie and His Related Exhibits Violates the Federal Rules of Civil Procedure, Warranting Exclusion.

Regardless of whether Ketchie provides expert or lay witness testimony, pursuant to the Federal Rules of Civil Procedure, untimely disclosed witnesses and information

---

[21] Relevant excerpts from the Deposition of Dr. Sean Trende are attached as Exhibit 15.
[22] Relevant excerpts from the Supplemental Deposition of Dr. Michael Barber are attached as Exhibit 16.

should generally be excluded from trial. Fed. R. Civ. P. 26(a), 37(c)(1). In fact, Rule 26(a) is designed to prevent unfair surprises—like what the NAACP Plaintiffs did here—by ensuring that parties receive timely notice of witnesses and evidence. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017). Under Rule 26(a)(1)-(2), parties must disclose witnesses and documents intended for use at trial in a timely manner, consistent with court-ordered schedules. If a party fails to do so, Rule 37(c)(1) prohibits the use of that witness or information, unless the failure was substantially justified or harmless. *See e.g., Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (affirming exclusion of expert witnesses under Rule 37(c)(1) where party failed to include their names in earlier designations pursuant to the scheduling order and Rule 26(a)); *N. Carolina State Conf. of NAACP v. Hirsch*, No. 1:18CV1034, 2024 WL 1974504 (M.D.N.C. May 4, 2024) (excluding witnesses under Rule 37(c)(1) where plaintiff failed to disclose intent to call them during discovery schedule, in violation of Rule 26(a)). Exclusion is proper here.

To determine whether the exclusionary sanction should apply, courts in this circuit consider five factors: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Sherwin-Williams Co.*, 318 F.3d at 596. Courts apply this same five-factor test whether the witness at issue is a fact witness or an expert. *See Id*. (providing the test for failure to disclose under all parts of Rule 26(a), which covers fact witnesses, experts, and other information). The first four factors primarily address whether the failure was harmless; the fifth addresses whether it

13

was justified. *Id.* The district court has broad discretion in conducting this analysis. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). The burden rests with the party who failed to disclose the witness to demonstrate that the failure was substantially justified or harmless. *Bresler*, 855 F.3d at 190. Here, the party with whom the burden rests is NAACP Plaintiffs, and the five *S. State* factors weigh heavily toward excluding Christopher Ketchie, his declaration, and NAACPPX374-453.

With trial imminent, the NAACP Plaintiffs completely surprised Legislative Defendants with the disclosure of Ketchie, his declaration, and the seventy-nine exhibits he generated. [D.E. 117-1, 117-2 at NAACPPX 374-453]. Ketchie was not included on any of Plaintiffs' initial disclosures; he appeared for the first time as a "may call" witness on the NAACP Plaintiff's Pretrial Disclosure list submitted on May 16, 2025, [D.E. 117-1], the same day Legislative Defendants received his declaration. [Ex. 8]. This declaration identifies Ketchie as the author of NAACPPX374-453. [Ex. 8; D.E. 117-2 at NAACPPX 374-453]. These exhibits were also never produced before their inclusion on the NAACP Plaintiffs' Exhibit List, despite Legislative Defendants' discovery requests for all testimony and analyses. [Ex. 4].

Worse, with less than 30 days before trial, there is no time to cure this surprise. The opportunity to cross-examine a witness at trial about an untimely disclosed document or opinion does not constitute an adequate cure. *S. States*, 318 F.3d at 598. Rule 26 is designed to give the opposing party a fair chance to scrutinize the information and prepare rebuttal— something that is not possible when, as is the case here, disclosure occurs on the eve of

14

trial.[23] *Id.* In some instances, courts can assist with curing the surprise by allowing the opposing party time to depose the witness and conduct meaningful rebuttal work. *See e.g., Bresler*, 855 F.3d at 192 (indicating the court would have permitted the opposing party to depose the witness had they sought to). But amid an already packed pretrial schedule, this is not an option—any additional time would severely delay the trial schedule. *See e.g., Wilkins*, 751 F.3d at 219-22 (excluding expert where his preliminary report was disclosed thirteen days after the deadline, followed by a full report thirty days late, and trial was scheduled to begin in less than ninety days, making cure and compliance with the pretrial schedule unfeasible).

The NAACP Plaintiffs offer no explanation for their untimely disclosure of Ketchie, his declaration, or the exhibits he generated. Nor are his testimony or exhibits of great importance to the NAACP Plaintiffs' case since Plaintiffs already have several testifying experts to address the same underlying data Ketchie relied upon to create his exhibits. Rather, the NAACP Plaintiffs' use of Ketchie appears to be nothing more than a belated attempt to establish a contingency plan in case their main presentation falls short. This does not justify inclusion. Because the NAACP Plaintiffs fail to demonstrate harmlessness or substantial justification, Ketchie and NAACPPX374-453 should be excluded according to Rule 37(c)(1).

---

[23] The NAACP Plaintiffs' disclosure of Ketchie and his analyses is a stark contrast to Dr. Barber's supplemental expert report. Not only was Dr. Barber timely disclosed as an expert and subjected to intensive discovery, but Legislative Defendants served Dr. Barber's supplemental report within the time provided for supplemental discovery. As this Court noted, the timing of Legislative Defendants' disclosure resulted in "little if any prejudice." [D.E. 05/19/2025 Text Order]. Here, the NAACP Plaintiffs' last-minute disclosure is highly prejudicial.

## <u>CONCLUSION</u>

The NAACP Plaintiffs' attempt to backdoor improper expert analyses and testimony on the eve of trial is a plain violation of this Court's Scheduling Order and the Rules of Civil Procedure. All relevant considerations weigh in favor of exclusion. Not only are Legislative Defendants highly prejudiced by these last-minute disclosures, but their use at trial would be highly disruptive. There is no justifiable reason supporting the NAACP Plaintiffs' delay or their disclosure of Ketchie and his exhibits in this manner. For the foregoing reasons, Legislative Defendants respectfully request that the Court enter an order excluding from trial: (1) NAACPPX 374-453 and any derivatives thereof; (2) the May 16, 2025, declaration of Christopher Ketchie; and (3) any trial testimony of Ketchie regarding these exhibits.

Respectfully submitted, this the 23rd day of May 2025.

**BAKER & HOSTETLER LLP**

Katherine L. McKnight*
DC Bar No. 994456
Richard B. Raile*
DC Bar No. 1015689
Trevor Stanley*
DC Bar No. 991207
1050 Connecticut Ave. NW
Suite 1100
Washington DC 20036
Ph: (202) 861-1500
rraile@bakerlaw.com
kmcknight@bakerlaw.com
tstanley@bakerlaw.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
   Phillip J. Strach
   North Carolina State Bar No. 29456
   Alyssa M. Riggins
   North Carolina State Bar No. 52366
   Cassie A. Holt
   North Carolina State Bar No. 56505
   Jordan A. Koonts
   North Carolina State Bar No. 59363
   301 Hillsborough Street, Suite 1400
   Raleigh, North Carolina 27603
   Ph: (919) 329-3800
   phil.strach@nelsonmullins.com
   alyssa.riggins@nelsonmullins.com

16

Patrick T. Lewis*
Ohio State Bar No. 0078314
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Ph: (216) 621-0200
plewis@bakerlaw.com

Erika D. Prouty*
Ohio State Bar No. 0095821
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Ph: (614) 462-4710
eprouty@bakerlaw.com

cassie.holt@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Attorneys for Legislative Defendants*

*\* Appeared via Special Notice*

17

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.3(d), I, Phillip J. Strach, hereby certify that the foregoing

brief includes 4,329 words as indicated by Microsoft Word, excluding the caption,

signature lines, certificate of service, and case caption.

This the 23rd day of May 2025.

<div style="margin-left:50%">

**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
<u>/s/ Phillip J. Strach</u>
Phillip J. Strach
N.C. State Bar No. 29456

</div>

## CERTIFICATE OF SERVICE

I, Phillip J. Strach, certify that on this, the 23rd day of May 2025, I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF electronic filing system, which will send a copy of the same to all counsel of record in the above-captioned matter.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456