# **<u>Exhibit 7</u>**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| SHAUNA WILLIAMS, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1057 |
| REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., | |
| *Defendants*. | |
| | |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1104 |
| PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., | |
| *Defendants.* | |

**EXPERT REPLY REPORT OF ANTHONY E. FAIRFAX**
**on the Development of Demonstrative Plans for**
**State Senate and House Districts for the State of North Carolina**

_____
October 17, 2024

1

the legislatures and other governmental bodies in charge of redistricting view compactness as a purely geographic construct for the district. So, when the state of North Carolina and other jurisdictions include the redistricting criteria for compactness, it is overwhelmingly applied to the district and not the population within.

37. Finally, the guidance of the *Gingles* I precondition is "the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district."[22] The "single-member district" portion points the map drawer to focus on the <u>district</u> (that reflects the compactness of the minority group) and not the internal population. Thus, the shape of the district is the focal point for the "geographically compact" component of *Gingles* I.

## VIII. Illustrative Senate Maps

### A.      Illustrative Senate Plan A & B SD2

38. SD2 for Illustrative Plan A and Illustrative Plan B are identical. Dr. Barber's primary criticism of the Illustrative Plans' SD2 lies with its crossing of county clusters. He does not allege that race predominates in the development of the Senate Illustrative Plans' SD2.[23]

39. Dr. Trende's only criticism of the Illustrative Plans' SD2 is that, in his opinion, the district "features disparate Black populations linked together across a large district" and the "Black communities included in this district have important socioeconomic dissimilarities."[24] This criticism is misplaced for a few reasons.

40. First, the first *Gingles* I precondition asks whether it is possible to construct a reasonably configured majority-minority district, which I have provided. It accounts for the fact that, through many states in the South, Black populations can occur in concentrated urban areas, that can nonetheless be included in reasonably compact districts that also encompass additional, separate urban and rural areas.[25]

41. Even accepting that Dr. Trende is applying the correct analysis here, an alternate perspective of the analysis of disparate Black populations from Dr. Trende's dot density maps can be seen using a thematic color (choropleth) of the Illustrative Plans' SD2. A different perception can be made by viewing the entire district and using Black Voting Age Population (VAP) or BVAP%[26] divided into five ranges. As Figure 4 shows, the Black population exists throughout the district and not in only three or four locations. The red and brown colored precincts

---

[22] *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986).
[23] Barber September 26, 2024 Report, pg 56.
[24] Trende September 26, 2024 Report, pg 59-61.
[25] *See supra* pgs 10-12 (discussing *Allen v. Milligan*).
[26] BVAP refers to the 2020 Census Not Hispanic Black Voting Age Population.

14

indicate majority Black. The yellow represents those precincts that are between 40% and 50% Black.



**Figure 4 - Senate Illustrative Plans A & B SD2 – Precincts Black VAP%**

42. Also, reviewing SD2 in Figure 5 at the census tracts level reveals that Illustrative Plans' SD2 consists mostly of census tracts that are in the bottom two quintiles[27] for median household income[28] for the state. Even Gates County contains two census tracts that are in the second to the bottom quintile (shown in brown). Contrary to Dr. Trende's opinion that Gates County has "important socioeconomic dissimilarities"[29] with the rest of the counties, it is clear that the lone higher income census tract is raising Gates County's median household income value, and that the majority of the county is in line with the rest of the district.

---

[27] Quintiles divides the features from top to bottom in five equal number of features. In this instance, the state's census tracts are sorted from high to low income and divided into five ranges with equal number of census tracts.
[28] Using Caliper Corp.'s 2022 Dataset that reflects 2021 5-Year ACS Data.
[29] Trende September 26, 2024 Report, pg 61.

15



**Figure 7 - Senate Illustrative Plan A SD5 – Precincts Black VAP%**

47. In addition, the city of Greenville has a demarcation of lower income households in the north and northwest and higher income households in the southeast. This makes the Greenville SD3 and SD5 boundary a reasonable choice. Figure 8 shows the median household income[35] for census tracts. It is important to note that census tracts routinely overlap precincts. Thus, there is not a direct alignment to follow for the socioeconomic data and district boundaries. The red and orange represent the bottom two quintiles of median household income of census tracts for the state while the darker and lighter green depict the top two quintiles.[36]

---

[35] Using Caliper Corp's 2022 Dataset that includes 2021 5-Year ACS Data.

[36] Quintiles divides the features from top to bottom in five equal number of features. In this instance, the state's census tracts are sorted from high to low income and divided into five ranges with equal number of census tracts.

19



**Figure 21 - Illustrative Plan B HD24 – Census Places**

## XI. Conclusion

72. After reviewing the analysis and responses from Dr. Barber and Dr. Trende, my opinions remain the same as in my August 1, 2024 Report.

Dated: 10/17/24                        Signed: _____

Anthony Fairfax

35