# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1057 |
| REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al., | |
| *Defendants*. | |
| _____ | |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 23 CV 1104 |
| PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., | |
| *Defendants.* | |

## <u>NAACP PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND SUMMARIES OF VOLUMINOUS MATERIALS</u>

1

## NATURE OF MATTER BEFORE THE COURT

The issue presented to the Court is straightforward: are various illustrative maps, Maptitude statpack reports, and screenshots of associated metadata (collectively, "Summary Exhibits") generated by NAACP Plaintiffs using previously disclosed or otherwise readily available public data properly admissible pursuant to Federal Rule of Evidence ("FRE") 1006 and/or, in the alternative, do these Summary Exhibits "present an illustrative aid to help the trier of fact understand the evidence" such that they may be presented at trial pursuant to FRE 107.  As demonstrated below, the Summary Exhibits readily qualify for admissibility under FRE 1006 and are also entirely appropriate for use as demonstratives at trial.  The inclusion of these Summary Exhibits on the exhibit list was timely and intended by NAACP Plaintiffs to avoid any prejudice to Legislative Defendants. Furthermore, NAACP Plaintiffs voluntarily submitted the declaration by Christopher Ketchie to provide Legislative Defendants with transparency about what the Summary Exhibits are and how they were generated, as a prelude to an anticipated meet and confer about their admissibility consistent with the Court's direction.

Legislative Defendants, in filing their Motion, obfuscate what should be a straightforward analysis under the FRE by instead claiming the dispute is about previously undisclosed expert testimony or new evidence.  It is about neither.  This is about the effort by NAACP Plaintiffs to take voluminous relevant data produced by Legislative Defendants or publicly available (collectively constituting thousands of pages of raw information) and summarize it in a manner consistent with the FRE so that it is more readily understood by this Court as the trier of fact.  Legislative Defendants have been given ample opportunity

2

to review the Summary Exhibits, have not identified any substantive errors in the documents, and cannot reasonably claim any prejudice.

For the reasons addressed herein, the Court should find the challenged Summary Exhibits admissible under FRE 1006 and/or, in the alternative, permit their use as demonstratives at trial.

## STATEMENT OF FACTS

Evaluating the claims in this case requires assessment of voluminous data about the characteristics of each of the relevant districts. These are districts that were drawn by Legislative Defendants and their hired map-drawer. And, in fact, prior to the close of discovery, Legislative Defendants produced dozens of data files related to draft and enacted state House, state Senate, and Congressional district plans. This data disclosure included excel files and .csv files – called "block assignment files" – providing the specific geographic boundaries for districts in the plans ("Legislative Defendants' Data").

Of course, Legislative Defendants' Data in native format is of little value to a trier of fact without using a computer program to reproduce those files graphically so as to "draw" the districts represented by those files or otherwise summarize the information included therein. Similarly, reviewing data about the demographics and characteristics of each of the relevant districts, available on the North Carolina General Assembly and U.S. Census Bureau websites, is not straightforward because the raw data is in tabular form and, in its entirety, runs thousands of pages. Intuitively, it is easier to understand the data when it is presented graphically in association with the relevant district plans. This is precisely what NAACP Plaintiffs did. The Summary Exhibits were created by NAACP Plaintiffs

3

using Legislative Defendants' Data, data files publicly available on the North Carolina General Assembly's redistricting website, and public information from the U.S. Census Bureau, in a format that could be more readily understood and interpreted by the Court. Doc. 123-8, ¶ 7. The Parties have stipulated to the authenticity of this information sourced from the North Carolina General Assembly and the U.S. Census Bureau. Doc. 112 at 3. As such, the underlying data used to prepare these Summary Exhibits was either in the possession of, or available to Legislative Defendants.

Pursuant to this Court's May 24, 2024 scheduling order, the parties were directed to disclose exhibits intended for use at trial on or before May 16, 2025. Doc. 115. On May 16, 2025, NAACP Plaintiffs disclosed their Trial Exhibit List to the other parties in this case, including the Summary Exhibits relevant to the Motion. *See* Doc. 117-2. Those Summary Exhibits consisted of the following:

(1) Geographic maps created in a widely used, free web application called Dave's Redistricting App ("DRA").[1] These maps represent (i) districts with county lines/names and background map characteristics, based upon Legislative Defendants' Data and other publicly available data, as well as (ii) these districts with demographic data, specifically Black Voting Age Population ("BVAP") data from the U.S. Census Bureau, indicated via shading in each specific Voting Tabulation District ("VTD").[2] Doc. 117-2 (NAACPPX 374, 376, 378, 380, 383, 386, 389, 392, 395, 398, 401, 404, 407, 410, 413, 416, 419, 422, 425, 428, 431,

---

[1] https://davesredistricting.org/maps#home.
[2] VTDs are also commonly referred to as "precincts."

4

434, 436, 438, 440, 442, 444-448, 450, 452, 454); Doc. 123-8, ¶ 6-9; *see also* DRA, "About Data" ("The 2020 and 2010 Census data include total population and voting age population data (VAP), and was obtained directly from the Census Bureau.").[3]  An example is attached as Appendix A (NAACPPX 380). The Trial Exhibit List included direct website links to the summary maps on DRA from which the map screen shots were sourced and electronic copies of all Summary Exhibits were provided via fileshare to the parties.  DRA allows any user, i.e., any member of the public, to import redistricting plans and data and graphically display information as a map, including the application of commonly used redistricting metrics.  Doc. 123-8, ¶ 6.  Legislative Defendants are aware of DRA and its availability and functionality.  In fact, nearly nine months ago, NAACP Plaintiffs presented several of these same Summary Exhibits, prepared with DRA and Legislative Defendants' Data, during the depositions of Legislative Defendants' witnesses, Blake Springhetti and Senator Ralph Hise. *See, e.g*., Appendix B (Oct. 3, 2024 Springhetti Dep. Tr. 171:12-175:7, 176:2-24, 187:1-188:1, 198:2-20, 206:7-209:24, and 214:6-12; Dep. Ex. 7); Appendix C (Sept. 17, 2024 Hise Dep. Tr. 418:5-17; 473:2-474:13; Dep. Ex. 32).

(2) <u>Maptitude statpack reports</u>.  These statpack reports reflect map statistics related to traditional redistricting criteria, including Population Summary, Measures of Compactness (ALT), Political Subdivision Splits, and Communities of Interest,

_____

[3] https://davesredistricting.org/maps#aboutdata.

5

calculated from and based upon Legislative Defendants' Data, using the Maptitude for Redistricting application. *See* Doc. 123-8, ¶ 10-13; Doc. 117-2 (NAACPPX 375, 377, 379, 381, 384, 387, 390, 393, 396, 399, 402, 405, 408, 411, 414, 417, 420, 423, 426, 429, 432, 435, 437, 439, 441, 443, 449, 451, 453). An example is attached as Appendix D (NAACPPX 381). Maptitude is also a program known by Legislative Defendants, who themselves had staff run similar reports for some (but not all) drafts during the redistricting process. *See, e.g.*, Appendix E (Doc. 118-1: LDTX042, Senate Bill 757/SL 2023-145 StatPack Report with Race). And, several of the Summary Exhibits of Maptitude statpacks were presented during Senator Hise's depositions. *, e.g.*, Appendix C (Sept. 17, 2024 Hise Dep. Tr. 463:23-465:8; Dep. Ex. 44 excerpts).

(3) <u>Metadata</u>. NAACP Plaintiffs also voluntarily included metadata screenshots that show the creation date for Legislative Defendants' Data by either right-clicking to show the "Get info" field, or by opening data files as text files. Doc. 117-2 (NAACPPX 382, 385, 388, 391, 394, 397, 400, 403, 406, 409, 412, 415, 418, 421, 424, 427, 430, 433); *see* Doc. 123-8, ¶ 14. By viewing the metadata of these files, NAACP Plaintiffs were able to appropriately sequence the data files (and thus draft plans) produced by Defendants. An example is attached as Appendix F (NAACPPX 382).

In addition, NAACP Plaintiffs voluntarily provided a declaration from Christopher Ketchie describing the method by which each of the Summary Exhibits were prepared.

Doc. 123-8.[4]  The declaration was intended to ensure that Legislative Defendants could review and confirm the accuracy of the Summary Exhibits well before trial.  In tandem with the Trial Exhibit List, NAACP Plaintiffs also included Mr. Ketchie on their Trial Witness List as a "may call" witness provided with their pretrial disclosures on May 16, 2025, Doc. 117-1, in case his testimony was necessary to introduce the Summary Exhibits under FRE 1006 or to sponsor the documents as demonstratives under FRE 107.  As evidenced in the Trial Witness List, NAACP Plaintiffs are not offering Mr. Ketchie as an expert witness in this matter.  Mr. Ketchie's testimony, if necessary, would be in a factual capacity solely confined to introduction of the Summary Exhibits.  NAACP Plaintiffs are not proposing to call Mr. Ketchie to testify about any specialized knowledge of the redistricting process or underlying facts relevant to NAACP Plaintiffs' claims in this matter beyond having generated illustrative Summary Exhibits.

Finally, NAACP Plaintiffs' disclosures included Legislative Defendants' Data, as well as similar block assignment files for the enacted state House, state Senate, and Congressional district maps made available to the public on the North Carolina General Assembly's redistricting website.  *See* Doc. 117-2 (NAACPPX 455-478).

---

[4] Legislative Defendants' assertion that Mr. Ketchie's declaration includes "instructions for how to perform certain tasks, see, e.g., [Ex. 8 at ¶11], but no mention of whether he followed that practice" is incorrect and a disingenuously strained reading of his declaration. Doc. 123 at 12.  In the paragraph cited, Mr. Ketchie plainly states the block assignment files were "imported into Maptitude" and then provides a link for "Instructions for how to import a block assignment file."  Doc. 123-8, ¶ 11.

7

Prior to filing their Motion, Legislative Defendants did not convey to NAACP Plaintiffs any concern as to the accuracy of the Summary Exhibits or otherwise, or that they intended to object to the Summary Exhibits.

## STATEMENT OF THE QUESTIONS PRESENTED

1. Where voluminous data is directly at issue, does FRE 1006 provide for the admission of accurate geographic illustrations and summaries of that voluminous data prepared utilizing data and processes equally available to all parties and timely produced on or before the Court ordered deadline to exchange exhibit lists?

2. Does FRE 107 allow for testimony to authenticate geographic illustrations and summaries of voluminous data using publicly available and widely used tools, where the witness is not offering any additional testimony nor offering any opinion interpreting the documents?

## ARGUMENT

**I.    The Summary Exhibits Are Admissible Pursuant to FRE 1006.**

FRE 1006 provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004) (quoting Fed. R. Evid. 1006(a)).  While the underlying data used to generate a summary must be admissible, it need not be independently introduced into evidence so long as it has been made available to the opposing party "at a reasonable time and place." *Janati*, 374 F.3d at 273; *see also* FRE 1006(b).  FRE 1006 is "[intended] to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents." *See id.*, *quoting United States v. Bakker*, 925 F.2d 728, 736 (4th Cir. 1991).

8

The Summary Exhibits fall precisely within the confines of FRE 1006. For instance, the district maps included within the Summary Exhibits merely summarize, by geographic illustration, the "state House, state Senate, and Congressional district maps *produced by Legislative Defendants* as well as block assignment files for enacted state House, state Senate, and Congressional district maps *available on the North Carolina General Assembly's redistricting website*." Doc. 123-8, ¶ 4 (emphasis added). Accordingly, the Summary Exhibits summarize objective, voluminous information contained within Legislative Defendants' Data or data available to them (and in their custody) as part of the North Carolina General Assembly's website.

Additionally, the BVAP-shading maps within the Summary Exhibits provide a summary of U.S. Census Bureau data that has been readily available to Defendants. *See* Appendix G (PDF version of U.S. Census BVAP data).[5] The provision of this admissible and stipulated data in a summary format pursuant to FRE 1006 is consistent with the rule's intent to provide a "convenient[]" way for the Court to review the content of "voluminous writings." The alternative to using the summaries would be cumbersome, time-consuming, and difficult for the Court to digest. NAACP Plaintiffs would need to introduce and walk through voluminous Census data – in tabular form – along with the U.S. Census Bureau's geographic data showing the location of specific precincts. *See, e.g.*, Appendix. H (PDF

---

[5] This BVAP data by voting precinct for North Carolina is also publicly accessible here: https://data.census.gov/table/DECENNIALPL2020.P3?t=Race+and+Ethnicity&g=040X X00US37$7000000&y=2020. Upon the Court's request, NAACP Plaintiffs would be happy to provide a native excel version of this data by email if helpful.

snapshot of U.S. Census data depicting VTDs for Wilmington, NC region).[6] Then, to identify whether specific districts contain VTDs with specific BVAP levels, NAACP Plaintiffs would have to "connect the dots" between several voluminous data sets and Legislative Defendants' districts as represented by Legislative Defendants' Data. While the data would be "introduced," visualizing the data and its implications at various geographic locations would remain a challenge for the Court, and even a second-best attempt to do so would require detailed post-trial briefing with simultaneous citation to multiple exhibits. In contrast, the Summary Exhibits prepared by NAACP Plaintiffs makes the exact same BVAP data immediately visually apparent utilizing summary maps.

The Fourth Circuit has upheld the admission of remarkably analogous maps, summarizing cell phone tower data. *United States v. Moore*, 843 F. App'x 498, 504 (4th Cir. 2021). In doing so, the Fourth Circuit rejected many of the arguments Legislative Defendants make here. *Id.* (upholding the admission of analogous maps pursuant to FRE 1006, despite defendant's claims that the maps were "manipulated and annotated" by the law enforcement witness, and that the maps were misleading due to the inclusion of pinpoints representing cell phone towers and arrows representing the direction defendant traveled).

---

[6] Appendix H is a PDF snapshot of a larger dynamic data file accessible via the U.S. Census Bureau's website. The following link shows the specific VTDs for the Wilmington area of North                                                                                                  Carolina. https://data.census.gov/map/040XX00US37$7000000/DECENNIALPL2020/P3?t=Race+ and+Ethnicity&y=2020&layer=VT_2020_700_00_PY_D1&loc=34.1754,- 77.8923,z10.8116. NAACP Plaintiffs anticipate that, to show the location of specific VTDs throughout all relevant areas of North Carolina, would require voluminous screen shots.

10

Consistent with the declaration voluntarily provided by NAACP Plaintiffs, Mr. Ketchie is available to testify that the Summary Exhibits accurately summarize Legislative Defendants' Data, as "[t]he contents of each block assignment file was imported unmodified" (with the exception of minor formatting changes that were described in Mr. Ketchie's declaration and did not alter the substance of any of Legislative Defendants' Data or the publicly available data from the U.S. Census Bureau and the General Assembly. Doc. 123-8, ¶ 7).

## II.    Alternatively, The Summary Exhibits Are Proper Demonstratives Pursuant TO FRE 107.

The Summary Exhibits, alternatively, should be allowed for use by NAACP Plaintiffs as illustrative aids pursuant to FRE 107. FRE 107 provides that "[t]he court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." Courts have recognized that exhibits admissible under FRE 1006 may also qualify as illustrative aids under FRE 107. *See, e.g.*, *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, PC*, 2024 WL 4987018 (S.D.N.Y. Dec. 2, 2024) at *8–9 ("Therefore, [Plaintiff] may, in the alternative, proffer the visual component of the videos as non-evidentiary illustrative aids …"). Courts have broad discretion in allowing the use of illustrative aids, with the key question being whether the document might "illuminate the record and assist the Court in understanding the issues of the case." *Id.* at *9.

11

Legislative Defendants do not assert that the Summary Exhibits will confuse the issues, mislead the factfinder, or waste time; and indeed the opposite is true. The Summary Exhibits will be offered to expedite testimony and facilitate the Court's understanding of Legislative Defendants' Data at the core of this case. Given the limited trial time and immense volume of Legislative Defendants' Data, the Summary Exhibits are of great utility here. Legislative Defendants' assertions that admitting the Summary Exhibits will cause unfair prejudice or undue delay are also unfounded. *See* Section III *infra*. At bottom, the balancing test prescribed by FRE 107 weighs strongly in favor of allowing for the use of the Summary Exhibits as demonstratives at trial.

## III. Neither The Summary Exhibits Nor Testimony Authenticating The Summary Exhibits Constitute Expert Opinion.

Legislative Defendants' arguments that Mr. Ketchie is being offered to provide expert witness testimony are unavailing, principally because there is no opinion contained in his declaration: He describes *how* summary exhibits have been prepared, not *what* those summary exhibits might mean for NAACP Plaintiffs' claims. More specifically:

1. Whether Mr. Ketchie could be hypothetically offered as an expert based on his experience working with maps and GIS is irrelevant here because he is affirmatively not being offered as an expert in this matter. Legislative Defendants cite certain cases to claim that "courts routinely consider reports that *assess* a districting plan's population and political splits, geographic compactness measures, and partisanship as expert testimony," Doc. 123 at 10, but in each of the cases Legislative Defendants cite as support, experts offered opinions as to what those reported metrics said *about* the reasonable configuration

12

of the districts. *See Harris v. McCrory*, 59 F. Supp. 3d 600, 618 (M.D.N.C. 2016) (experts opining on *whether* a district's Reock score meant it was compact or not); *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 784-85 (M.D. La. 2022), *vacated and remanded*, 86 F.4th 574 (5th Cir. 2023) (discussing a variety of statistics to determine *whether* districts are reasonably configured); *Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 700 F. Supp. 3d 1136, 1223 (N.D. Ga. 2023) (weighing a variety of factors and competing conclusions about the import of different statistics to reach a legal conclusion about whether the districts were reasonably configured); *Ohio A. Philip Randolph Inst. v. Householder*, 373 F. Supp. 3d 978, 1038-39, 1046 (S.D. Ohio 2019), *vacated and remanded*, 140 S. Ct. 101, (2019) and *vacated and remanded sub nom. Chabot v. Ohio A. Philip Randolph Inst.*, 140 S. Ct. 102v(2019) (drawing comparisons between the redistricting statistics of different plans to reach a legal conclusion as to whether those plans were reasonably configured); *Whitford v. Gill*, 218 F. Supp. 3d 837, 912-13 (W.D. Wis. 2016), *vacated and remanded*, 585 U.S. 48 (2018) (drawing comparisons of various election environments to reach legal conclusion about nature of state's political geography). Each of these citations involves experts "assess[ing]" (Doc. 123 at 11) the districts in question to come to an expert conclusion about the nature of their configurations, not merely testifying as to the objective, statistical qualities of the districts at issue. Mr. Ketchie will not offer any assessment of the plans at issue here – only objectively verifiable, stipulated-as-true facts regarding specific data points or geographic representations of those maps in a summary format to aid the Court in conducting its own assessment as the finder of fact.

13

2. Legislative Defendant's assertion that "Ketchie did more than just take underlying data or shapefiles and produce illustrations" (*Id.* at 11) is also plainly wrong. As Mr. Ketchie represented in his declaration (and as Legislative Defendants can confirm independently with the substantial supporting data NAACP Plaintiffs voluntarily tendered), Mr. Ketchie did not alter Legislative Defendants' Data files when creating the Summary Exhibits. And his choice of *how* to structure his summaries (such as opacity settings) merely reflects formatting choices. Those choices are similar in nature to choosing a font size and layout of a chart and certainly are not an expert opinion. Other questions raised by Legislative Defendants about how the summaries were created – *e.g.*, whether a key was provided and how data was loaded, are all appropriate for cross-examination but are not an independent basis to exclude the summaries. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F.Supp.2d 617, 638 (E.D. Penn. 2010) ("The purpose of [Rule 1006's requirement that a summary is made available to the opposing party for examination] is to provide the opposing party who desires to attack the authenticity of accuracy of the summary with the opportunity to prepare for cross-examination or offer rebuttal evidence." (citation omitted)).[7]

Legislative Defendants also argue that Mr. Ketchie exercised discretion in creating the Summary Exhibits by "focusing on certain districts or splits," but that presumption is

---

[7] Legislative Defendants' contention that metadata files are incomplete, Doc. 123 at 8 n.19, could have easily been resolved in meet and confers between the parties. In any event, NAACP Plaintiffs appropriately excerpted metadata indicating the date created for specific files and appropriately did not include voluminous data that will not aid the Court and is not necessary to evidence the time of creation (and thus sequencing) of draft maps. A complete data file for the Court's review is included as Appendix J.

14

not borne out by facts. Mr. Ketchie's declaration makes clear that he did not exercise any discretion. In actuality, Legislative Defendants' assertions are not critiques about choices Mr. Ketchie made, but critiques about which exhibits NAACP Plaintiffs have chosen to offer in support of their case. There is no basis to an interpretation of FRE 1006, as implicitly urged by Legislative Defendants, that a party must summarize *all* documents where it only intends to rely upon a subset of the data in those documents. Such critiques make little sense in the context of an adversarial legal proceeding, and certainly do not merit exclusion of the Summary Exhibits.

3. And, importantly, while Legislative Defendants argue that Mr. Ketchie must be an expert witness, they do not argue that expert testimony is necessary to lay the foundation for the admission of the Summary Exhibits. Nor do Legislative Defendants assert, because they cannot, that the Summary Exhibits provide subjective assessment of Legislative Defendants' Data. Courts have routinely found that summary charts need not be prepared by or presented in court by a witness with specialized expertise regarding the subject matter of the summary exhibits. *See, e.g.*, *United States v. Jennings*, 724 F.2d 436 (5th Cir. 1984); *United States v. Scales*, 594 F.2d 558 (6th Cir. 1979); *United States v. Swanquist*, 161 F.3d 1064 (7th Cir. 1998). Indeed, in *Moore* the Fourth Circuit upheld the admission of summary exhibits consisting of maps depicting voluminous cell phone tower data that was

introduced via a law enforcement officer, not an expert in maps, GIS, or cell phone tower data. 843 F. App'x at 504.[8]

NAACP Plaintiffs do not downplay Mr. Ketchie's credentials. He is an immensely qualified and credible witness, including for purposes of laying the foundation for the admission of the Summary Exhibits. But for purposes of this case, he is not and need not be an expert, and there is no basis for excluding his testimony or the Summary Exhibits based on Legislative Defendants' arguments otherwise.

## IV. The Summary Exhibits Were Timely Produced, Did Not Unfairly Surprise Legislative Defendants, and Do Not Cause Prejudice.

The Summary Exhibits were timely disclosed. As a starting point, FRE 1006 is an "evidentiary rule, not one of discovery." *United States v. Streb*, 477 F. Supp. 3d 835, 854 (S.D. Iowa 2020), *aff'd*, 36 F.4th 782 (8th Cir. 2022), *citing Colón–Fontánez v. Mun. of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011). Provided that the underlying data supporting the summary is made available "at a reasonable time and place," courts have rejected arguments that FRE 1006 imposes a deadline for disclosure of the summaries themselves. *United States v. Foley*, 598 F.2d 1323, 1338 (4th Cir. 1979) (allowing use of summaries produced the weekend before trial and rejecting argument that summary charts "should have been made available longer in advance of trial" under Rule 1006 because the rule

---

[8] Mr. Ketchie similarly offered testimony to authenticate summaries in the 2021-2022 litigation, *Harper v. Hall*, No. 21CVS500085 (N.C. Super. Ct, Wake Cnty.) without objection by Legislative Defendants, and he was not tendered or received as an expert to do so before those summary exhibits were entered into evidence. *See* Appendix I (2021 C. Ketchie Trial Testimony, Jan. 4, 2022 at Vol. 2, pp. 365-70). Those summary exhibits included DRA composite scores. *Id.* (Exhibits 1562, 1567).

16

"refers to making available the original documents, not the charts themselves") (citation omitted); *United States v. Mazkouri*, 945 F.3d 293, 301 (5th Cir. 2019) (Defendants' "argument about the timing of the charts' disclosure has no basis in Rule 1006, so we reject it."). "A reasonable time and place 'has been understood to be such that the opposing party has adequate time to examine the records to check the accuracy of the summary.'" *United States v. Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010) (citation omitted); *accord White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1070 n.10 (W.D. Mo. 1985) ("Ordinarily that 'reasonable time' [of Rule 1006] will be at some point before trial, since the object is to give opposing counsel a meaningful opportunity to prepare challenges to the materials; although it would be within the trial court's discretion to permit the matter to be dealt with during trial.") (citation omitted).

In fact, some courts have observed that a FRE 1006 summary could even be generated during trial if, at that point, counsel recognizes the benefit of providing the trier of fact with a summary of voluminous admitted exhibits. *See United States v. Mlikiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) ("For example, we can imagine instances in which an attorney does not realize until well into a trial that a summary chart would be beneficial, and admissible as evidence under Rule 1006, because the documents already admitted were too voluminous to be conveniently examined by the jury."). Here, the Summary Exhibits were provided to Legislative Defendants well in advance of trial, and included not only access to all of the underlying evidence used to generate the exhibits, but also metadata and Mr. Ketchie's Declaration describing how the Summary Exhibits were prepared. This meets the "reasonable time and place" requirement specified in FRE 1006.

17

Assuming *arguendo* that earlier disclosure of the Summary Exhibits (rather than with NAACP Plaintiffs' pretrial disclosures on May 16, 2025) was somehow required, Legislative Defendants have not been prejudiced in such a way that exclusion of the Summary Exhibits would be merited. Although NAACP Plaintiffs dispute that the five *Southern States* factors governing an assessment of prejudice are applicable under the circumstances, if applied, the factors would weigh strongly against excluding the Summary Exhibits. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (identifying the relevant factors as "'(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.'") (citation omitted). The Court has broad discretion in how it analyzes those factors. *See Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). The *Southern States* factors applied here are as follows:

Surprise to the party: NAACP Plaintiffs' identification of the Summary Exhibits posed little, if any, surprise because they summarize Legislative Defendants' own data and public data available to them, utilizing methods equally available to all parties and the public.

Ability to cure: Here, there is no prejudice or surprise to cure. Legislative Defendants have had access to the underlying data for years and are able to independently verify the accuracy of what has been produced. Legislative Defendants have notably taken no "steps to mitigate the purported surprise caused by the plaintiffs' delayed disclosure,"

18

nor would "earlier disclosure of [the Summary Exhibits] have enabled [Legislative Defendants] to conduct additional cross-examination . . . or to introduce competing evidence at trial," *Bresler v. Wilmington Tr. Co*., 855 F.3d 178, 194 (4th Cir. 2017).[9] NAACP Plaintiffs' disclosure of Mr. Ketchie as a potential witness and the Summary Exhibits have not affected Legislative Defendants "ability to conduct its defense in any material respect." *Id.*; *c.f.*, *accord. E.E.O.C. v. HBE Corp*., 135 F.3d 543, 553 (8th Cir. 1998) (where underlying data summarized in chart belonged to defendant and summary was disclosed three weeks in advance of trial, defendant had "ample time" to prepare and "cannot now complain that it was unable to cross examine effectively regarding its own files"). Accordingly, any surprise or prejudice here is easily curable and does not merit exclusion of the Summary Exhibits.[10]

Disruption to trial: Far from disrupting trial, the Summary Exhibits will accomplish the opposite by enabling the Court to more efficiently understand Legislative Defendants' Data and publicly available data at the crux of this case, which is especially crucial given the limited trial time available.

---

[9] Legislative Defendants note that in *Bresler*, the Court "would have permitted the opposing party to depose the witness had they sought to." However, the expert disclosure at issue in *Bresler* occurred in November 2013, with trial beginning in January 2014. The timing of the disclosure in *Bresler* was thus remarkably similar to the disclosures at issue here, and as in *Bresler*, Legislative Defendants have not sought to depose Mr. Ketchie.

[10] NAACP Plaintiffs are also willing to make Mr. Ketchie available for deposition and/or produce revised Summary Exhibits as needed to address Legislative Defendants' concerns regarding the omission of certain district numbers and a key, and would have offered to do so had NAACP Plaintiffs been alerted to Legislative Defendants' concerns prior to filing their Motion.

19

Explanation: NAACP Plaintiffs were not afforded the opportunity to explain their intent in voluntarily providing Mr. Ketchie's declaration or to address Legislative Defendants' purported concerns about the Summary Exhibits because Legislative Defendants failed to disclose such concerns prior to filing their Motion despite the parties' ongoing efforts to collaborate to identify joint exhibits and resolve objections. NAACP Plaintiffs' explanation for the timing of the disclosures is this: Mr. Ketchie is not being offered as an expert and the disclosures are timely.

Importance: In addition to enabling the trial to proceed efficiently and avoid disruption, the Summary Exhibits provide the Court with a consistent, easily digestible format for the voluminous Legislative Defendants' Data and publicly available data at issue in this case. The Summary Exhibits will also expedite testimony demonstrating how Legislative Defendants' maps were developed over time and are thus immensely important given the limited trial time available.

Thus, while the *Southern States* test does not apply here because the Summary Exhibits were timely disclosed, the factors nevertheless confirm there is no basis for excluding the Summary Exhibits. Accordingly, NAACP Plaintiffs' Summary Exhibits should be admitted and, if the Court deems necessary, NAACP Plaintiffs should be afforded the opportunity at trial to lay the foundation for admission of the Summary Exhibits through the testimony of Mr. Ketchie.

## CONCLUSION

The Summary Exhibits are admissible pursuant to FRE 1006 and, alternatively, are appropriate illustrative aids pursuant to FRE 107. Neither Mr. Ketchie's testimony nor the

Summary Exhibits include improper expert opinions and, thus, NAACP Plaintiffs have fully complied with the Court's May 24, 2024 Scheduling Order. And, no harm has or will result from the timing of the Summary Exhibits at issue, so exclusion is not warranted. NAACP Plaintiffs thus respectfully ask that the Court deny Legislative Defendants' Motion.

Dated: May 30, 2025

Respectfully submitted,

*/s/ Christopher Shenton*
Christopher Shenton

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
olivia.molodanof@hoganlovells.com
madeleine.bech@hoganlovells.com

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com
misty.howell@hoganlovells.com
odunayo.durojaye@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

**SOUTHERN COALITION FOR SOCIAL JUSTICE**

Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
Lily Talerman (State Bar #61131)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525
hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org
lily@scsj.org

21

Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special
Appearance pursuant to L-R 83.1(d)

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 7.3(d), I hereby certify that the foregoing brief includes 5218 words as calculated by Microsoft Word, excluding the caption, signature lines, certificates, and cover page.

_/s/ Christopher Shenton_
Christopher Shenton

## CERTIFICATE OF SERVICE

I certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_/s/ Christopher Shenton_
Christopher Shenton