IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al.,<br><br>    *Plaintiffs*,<br>  v.<br><br>REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al.,<br><br>    *Defendants*. | 1:23-CV-1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al.,<br><br>    *Plaintiffs*,<br>  v.<br><br>PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al.,<br><br>    *Defendants*. | 1:23-CV-1104 |

**MEMORANDUM ORDER**

    This matter is before the Court on NAACP Plaintiffs' Motion to Reconsider in Part the Court's Order on Partial Summary Judgment.[1] (Doc. 101.) NAACP Plaintiffs request that the Court

---

[1] "NAACP Plaintiffs" refers to Plaintiffs in case number 1:23-cv-1104 and includes the North Carolina State Conference of the NAACP, Common Cause, and six individuals.

1

vacate its April 8, 2025 memorandum order granting summary judgment to Legislative Defendants on Counts 3 and 7 of the initial complaint in case number 1:23-cv-1104.[2] (Doc. 98.) Legislative Defendants have filed a response in opposition (Doc. 113), and NAACP Plaintiffs have filed a reply (Doc. 124). For the following reasons, the motion is DENIED.

I. BACKGROUND

Plaintiffs in this consolidated action challenge the North Carolina General Assembly's 2023 redistricting efforts. Collectively, Plaintiffs allege that certain federal and state legislative districts violate the Equal Protection Clause of the Fourteenth Amendment, the Fifteenth Amendment, and Section 2 of the Voting Rights Act (VRA), 52 U.S.C. § 10301. (Docs. 105, 108.) As relevant here, after discovery Legislative Defendants moved for summary judgment on two counts of NAACP Plaintiffs' twelve-count complaint, specifically, their claims of malapportionment in violation of the Equal Protection Clause. (Docs. 78–79.) After careful review, we granted that motion. (Doc. 98 at 16–30.)

---

[2] "The Court's April 8, 2025 Order on Legislative Defendants' Motion for Partial Summary Judgment and any subsequent modifications to that Order apply to the NAACP Plaintiffs' claims of malapportionment in violation of the Fourteenth Amendment as alleged in Counts 3 and 6 of the First Amended Complaint (previously Counts 3 and 7 of the initial Complaint)." (Doc. 104 at 3.)

2

As we explained in our order, the Equal Protection Clause of the Fourteenth Amendment requires a State to "make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." Reynolds v. Sims, 377 U.S. 533, 577 (1964). The aim of achieving "substantial equality of population among the various districts" is to ensure "that the vote of any citizen is approximately equal in weight to that of any other citizen in the State." Id. at 579. "The Constitution, however, does not demand mathematical perfection." Harris v. Arizona Indep. Redistricting Comm'n, 578 U.S. 253, 258 (2016). A State, therefore, need not justify "minor deviations" from mathematical equality, which are "those in 'an apportionment plan with a maximum population deviation under 10%.'" Id. at 259 (quoting Brown v. Thomson, 462 U.S. 835, 842 (1983)). Instead, the burden rests on the plaintiff to "show that it is more probable than not that a deviation of less than 10% reflects the predominance of illegitimate reapportionment factors rather than the 'legitimate considerations'" incident to "'the effectuation of a rational state policy.'" Id. at 258–259 (quoting Reynolds, 377 U.S. at 579). "Given the inherent difficulty of measuring and comparing factors that may legitimately account for small deviations from strict mathematical equality, . . . attacks on deviations under 10% will succeed only rarely, in unusual cases." Id. at 259.

NAACP Plaintiffs challenged minor population deviations between state House districts within two county groupings and between state Senate districts within two other county groupings.³ At summary judgment, they asserted that the pursuit of partisan advantage——an allegedly illegitimate reapportionment factor——explained these minor deviations from population equality. (Doc. 82 at 16, 23.)

Assuming without deciding that partisan advantage could be an illegitimate redistricting factor, we nevertheless concluded that NAACP Plaintiffs had not met their burden on summary judgment. Specifically, they failed to "cite[] evidence from which a rational trier of fact could find that the [state] House and Senate plans' minor deviations from mathematical equality 'reflect the predominance' of this illegitimate factor over legitimate districting considerations." (Doc. 98 at 22 (quoting Harris, 578 U.S. at 259).) We observed that NAACP Plaintiffs did not identify "evidence of systematically overpopulated or underpopulated districts, or inconsistent incumbent protection," comparable to that in the cases on which they primarily relied. (Id. at 22–25.)

---

³ As described in our prior decision, the North Carolina Supreme Court has crafted a formula of county grouping and traversal rules for drawing legislative districts in order to honor the state constitution's whole-county provision to the maximum extent possible under federal law. (Doc. 98 at 16–17 (citing Stephenson v. Bartlett, 562 S.E.2d 377 (N.C. 2002).)

4

We considered their expert, Anthony Fairfax, who offered no opinion about what districting factors predominated but instead opined that alternative configurations could be drawn to reduce population deviations in the four challenged groupings. (Id. at 25-27.) And we reviewed the only other evidence NAACP Plaintiffs presented: excerpts from the depositions of Blake Springhetti and Senator Ralph Hise, who were involved in drawing the relevant maps. (Id. at 27-29.) Considering the evidence as a whole, we concluded that NAACP Plaintiffs failed to create a genuine issue for trial about whether the minor deviations from mathematical equality within the House and Senate maps reflect the predominance of partisan advantage over all traditional districting criteria.

## II. LEGAL STANDARD

NAACP Plaintiffs now seek reconsideration under Federal Rule of Civil Procedure 54(b). That rule permits a court to revise "any order . . . that adjudicates fewer than all the claims" at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). This "power is committed to the discretion of the district court." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). Though Rule 54(b) motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b), id. at 514, "courts in this Circuit have frequently looked to the

5

standards under Rule 59(e) for guidance in considering such motions," United States v. Lovely, 420 F. Supp. 3d 398, 403 (M.D.N.C. 2019). See also U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC, 899 F.3d 236, 257 (4th Cir. 2018).

Accordingly, a court may revise an interlocutory order when "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005); see U.S. Tobacco Coop., 899 F.3d at 257. "Like Rule 59(e) motions, Rule 54(b) motions 'should not be used to rehash arguments the court has already considered' or 'to raise new arguments or evidence that could have been raised previously.'" Lovely, 420 F. Supp. 3d at 403 (quoting South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) . . . may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (internal quotation marks omitted)).

**III. ANALYSIS**

NAACP Plaintiffs contend that newly available evidence and clear legal error warrant reconsideration of the Court's order

6

granting summary judgment on their malapportionment claims. We consider their arguments in turn.

### A. Previously Unavailable Evidence

NAACP Plaintiffs claim the supplemental report of Legislative Defendants' expert Dr. Michael Barber is new evidence that creates a triable issue of fact on their malapportionment claims. As a threshold matter, we doubt this evidence qualifies as previously unavailable. Legislative Defendants produced Barber's supplemental report on March 17, 2025.[4] While summary judgment briefing was already complete at that point, the Court did not issue its decision until April 8. Yet NAACP Plaintiffs waited until after the Court's ruling to bring Barber's supplemental report to our attention. To prevail on a motion for reconsideration based on "additional evidence," a party typically must demonstrate that "'the evidence is newly discovered <u>since the judgment was entered</u>.'" <u>I.P. by Newsome v. Pierce</u>, No. 5:19-cv-228-M, 2020 WL 3405209, at *2 (E.D.N.C. 2020) (quoting <u>Boryan v. United States</u>, 884 F.2d 767, 771 (4th Cir. 1989)) (emphasis added). That is not the case here, and we are disinclined to bless Plaintiffs' wait-and-see approach.

---

[4] <u>See</u> Order, No. 1:23-cv-1057-TDS-JLW (M.D.N.C. May 19, 2025) (rejecting challenges by Plaintiffs in case number 1:23-cv-1057 to the timeliness of this report).

7

However, even considering Barber's supplemental report, NAACP Plaintiffs do not demonstrate that reconsideration is warranted. Plaintiffs highlight two findings from Barber's report, the first of which responds to Plaintiffs' expert Anthony Fairfax. (Doc. 103 at 7–11.) Fairfax opined that he could reduce population deviations within the four county groupings Plaintiffs challenge by shifting one or two voting precincts between districts.[5] In his supplemental report, Barber opined that Fairfax's models were not viable alternatives to the State's enacted plan. Though Fairfax had reduced population deviations within county groupings, his "alterations d[id] not accomplish the objective of reducing population deviations while maintaining the status quo on other valid redistricting criteria." (Doc. 101-2 at 4.) According to Barber, Fairfax's changes would cause "sizable shift[s]" in highly competitive districts and "appear[ed] to universally benefit the Democratic Party in districts that will likely be competitive in future elections." (Id. at 4–7.)

---

[5] We reject NAACP Plaintiffs' effort to bolster their reconsideration motion with portions of Fairfax's reports that they did not cite in or attach to their summary judgment briefing. (See, e.g., Docs. 103 at 7 & n.2, 9–10; 124 at 8.) Those reports, and the opinions expressed therein, were available to Plaintiffs when they filed their summary judgment papers and are not new evidence properly presented for the first time on reconsideration. See Lovely, 420 F. Supp. 3d at 403.

8

NAACP Plaintiffs assert that Barber's analysis "implicitly recognizes that the challenged clusters are constructed to maximize Republican partisan advantage." (Doc. 103 at 9.) But in determining that Fairfax's configurations would favor Democrats across the board, Barber does not identify any deliberate effort by the North Carolina General Assembly. Citing Barber's supplemental deposition, NAACP Plaintiffs also claim he "confirmed that moving virtually any [voting precinct] into or out of the challenged districts would either harm the Republican partisan performance in that cluster or cause a district's population to exceed +/-5%." (Docs. 103 at 8; 124 at 11.) The cited portions of the record do not support that blanket statement. Moreover, much of Plaintiffs' argument in this vein is more akin to a partisan gerrymandering claim than a malapportionment claim (see, e.g., Doc. 124 at 6–8), which is concerned with devaluing the votes of citizens in overpopulated districts compared to those in underpopulated districts. See Reynolds, 377 U.S. at 579; cf. Rucho v. Common Cause, 139 S. Ct. 2484, 2506–2507 (2019) ("[P]artisan gerrymandering claims present political questions beyond the reach of the federal courts."). Barber's supplemental report, on which Plaintiffs rely, found that "the apportionment in each of the [challenged] clusters is not systematically associated with one party or the other." (Doc. 101-2 at 8.) "For example, in the Wake County House Cluster . . . , the least populated and most

9

populated districts are both represented by Republican legislators," with seven underpopulated Democratic districts and four overpopulated Democratic districts in between. (Id.) Plaintiffs do not dispute these findings. Viewing Barber's response to Fairfax's alternative maps alongside the evidence presented at summary judgment, NAACP Plaintiffs still do not create a genuine dispute about whether the minor population deviations in the House and Senate plans "reflect[] the predominance" of impermissible partisanship over legitimate districting considerations. Harris, 578 U.S. at 259; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).

Second, NAACP Plaintiffs request reconsideration based on Barber's findings about statewide correlations in district population deviations. (Doc. 103 at 12-14.) In his supplemental report, Barber found no statistically significant relationship between district population deviations and either race or partisanship. (Doc. 101-2 at 12-13.) Instead, he concluded that district population deviations across the State are correlated only with the average population deviation of the county grouping containing the districts. (Id. at 13.) As he explained, "[t]his makes sense given that districts that are drawn from county clusters that start out over (or under) populated are much more likely to themselves also be over (or under) populated." (Id.)

According to NAACP Plaintiffs, Barber's analysis demonstrates that "the most relevant analysis of an individual district's population deviation must take place <u>within</u> that district's cluster."[6] (Doc. 103 at 12.) Legislative Defendants draw a different conclusion, urging that Barber's analysis "confirmed that the General Assembly's goal of compliance with the county-grouping rule is the predominant factor explaining the deviations" statewide. (Doc. 113 at 15.) In our prior ruling, we considered the evidence pertaining to statewide population deviations and deviations within county groupings. (Doc. 98 at 20, 25–29.) Whether Barber's supplemental report bolsters either, or neither, approach, it does not undermine our prior ruling.

**B. Clear Error**

Next, and relatedly, NAACP Plaintiffs argue that the Court clearly erred because it "implicitly held that the <u>only way</u> Plaintiffs may prove a claim of malapportionment for deviations of less than 10% is to show plan-wide systematic malapportionment, as opposed to proving malapportionment within specific challenged districts." (Doc. 103 at 14.) Plaintiffs claim the parties did not "fully brief[]" this legal question at summary judgment and

---

[6] Plaintiffs also emphasize that, within each challenged grouping, at least one district comes "close to the absolute limit allowed by <u>Stephenson</u> of +/-5%." (Doc. 103 at 13; see also Doc. 124 at 5, 7.) The population deviations were already presented to, and considered by, the Court on summary judgment.

11

should be afforded the opportunity to do so now. (Id. at 4.) They are wrong in both respects.

First, at summary judgment the parties fulsomely briefed their competing views about how to prove whether minor population deviations between districts reflect the predominance of illegitimate partisanship. Legislative Defendants presented pages and pages of statewide evidence (Doc. 79 at 21–27) as well as graphs focused on the districts within the specific groupings Plaintiffs challenge (id. at 20). NAACP Plaintiffs advocated for "evaluat[ing] malapportionment on a cluster-specific basis" (Doc. 82 at 17) and urged the Court to reject "Defendants' statewide argument" (id. at 18) and any argument that would require "an overall correlation between partisanship and challenged deviations" (id. at 23).

NAACP Plaintiffs now wish to elaborate on their prior legal arguments. (See Docs. 103 at 14–21; 124 at 3–4.) But reconsideration "is not 'a do-over'" or a "'chance to craft new or improved legal positions.'"[7] Thomas v. UNC Health Care Sys., No. 5:24-cv-00009-M, 2025 WL 1384729, at *2 (E.D.N.C. Jan. 21, 2025)

---

[7] This observation equally applies to NAACP's reply in support of their motion to reconsider, where they rely on preexisting evidence they did not offer on summary judgment or even in their motion to reconsider. (See Doc. 124 at 9.) Reconsideration is not an opportunity to take a mulligan and present a better or expanded version of one's opposition to summary judgment.

12

(first quoting Evans v. Trinity Indus., Inc., 148 F. Supp. 3d 542, 546 (E.D. Va. 2015); and then quoting Wootten v. Virginia, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016)). Although a motion for reconsideration allows a district court to correct its own errors, litigants must realize that the court has already devoted substantial and careful consideration to the matter, and a reconsideration motion "does not serve as a vehicle for a party to relitigate old matters or raise new arguments or legal theories that could have been raised previously." Mathewson for Estate of Smith v. Cooper, 1:20-cv-00944, 2022 WL 18863955, at *2 (M.D.N.C. Aug. 22, 2022).

Second, NAACP Plaintiffs misconstrue our prior order as foreclosing anything less than a statewide malapportionment challenge. The Court's order did not endorse that position, nor did we refuse to consider Plaintiffs' grouping-specific evidence and arguments. Upon reviewing the relevant cases on which Plaintiffs relied in their briefing, we observed that "[c]hallenges to apportionment plans with a maximum population deviation under 10% have succeeded only on proof of a deliberate and systematic policy of overpopulating a disfavored class of districts and underpopulating a favored class of districts." (Doc. 98 at 22-24 (citing Larios v. Cox, 300 F. Supp. 2d 1320 (N.D. Ga. 2004) (per curiam), summarily aff'd, 542 U.S. 947 (2004); Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections, 827 F.3d 333

13

(4th Cir. 2016); City of Greensboro v. Guilford Cnty. Bd. of Elections, 251 F. Supp. 3d 935 (M.D.N.C. 2017)).) NAACP Plaintiffs did not produce evidence of systematically overpopulated or underpopulated districts, or inconsistent incumbent protection, in North Carolina's plans statewide or within the four challenged groupings.

Yet we did not stop our analysis at systematic partisanship———"the one type of evidence courts have found sufficient to prove malapportionment in prior cases with only minor deviations from population equality." (Id. at 25.) NAACP Plaintiffs asserted that such evidence was unnecessary, so we went on to consider the evidence they presented: excerpts from the report of their expert Fairfax and from the depositions of Hise and Springhetti. (Id. at 25-28.) After considering all the evidence Plaintiffs marshaled on summary judgment, we found no genuine issue for trial about whether the pursuit of partisan advantage predominated over all traditional districting criteria, resulting in the minor deviations from mathematical equality about which Plaintiffs complained. (Id. at 28-29.) NAACP Plaintiffs' arguments about a holding the Court did not make do not convince us this was clear error.

### C. Manifest Injustice

Lastly, NAACP Plaintiffs argue that reconsideration is necessary to avoid manifest injustice because Barber's

14

supplemental report, coupled with the evidence offered at summary judgment, creates a triable issue of fact on their malapportionment claims. (Doc. 103 at 21-22.) This argument simply repackages their new evidence claim. We disagree for the reasons given above and, in any event, find that NAACP Plaintiffs have not cleared the presumably higher bar of showing manifest injustice.

**IV. CONCLUSION**

Having carefully considered NAACP Plaintiffs' contentions,

IT IS ORDERED that NAACP Plaintiffs' Motion to Reconsider in Part (Doc. 101) is DENIED.

/s/ Allison J. Rushing
United States Circuit Judge

/s/ Richard E. Myers II
Chief United States District Judge

/s/ Thomas D. Schroeder
United States District Judge

June 9, 2025

15

Case 1:23-cv-01057-TDS-JLW   Document 140   Filed 06/09/25   Page 15 of 15