UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> REPRESENTATIVE HUGH BLACKWELL, in his official capacity as Chair of the House Standing Committee on Elections, et al., <br><br> *Defendants*. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al., <br><br> *Defendants*. | Civil Action No. 23 CV 1104 |

## WILLIAMS PLAINTIFFS' BRIEF IN RESPONSE TO THIS COURT'S OCTOBER 22, 2025 TEXT ORDER

On October 22, 2025, this Court issued an order noting that the General Assembly enacted Senate Bill 249 ("S.B. 249" or "2025 Plan") and directing the parties to submit briefs "addressing the effect of this development, including potential mootness, on the claims submitted to the Court in these consolidated cases." Text Order (Oct. 22, 2025). *Williams* Plaintiffs submit this brief in accordance with that order. The enactment of S.B.

249 does not moot *Williams* Plaintiffs' claims that have been submitted to the Court and should have no effect on the Court's resolution of those claims.

*Williams* Plaintiffs originally brought claims challenging Senate Bill 757 ("S.B. 757" or "2023 Plan") in 2023, and this Court held a bench trial on those claims in June and July 2025. At trial, *Williams* Plaintiffs challenged the constitutionality of the districts in the Piedmont Triad (CD-5, CD-6, CD-9, and CD-10) and the Mecklenburg area (CD-12 and CD-14). Those challenged districts remain unchanged by S.B. 249. The alterations made by S.B. 249 impact only CD-1 and CD-3. It is well established that the passage of a subsequent statute will not moot claims against a law where the subsequent statute does not alter the objectionable features of the original law. Because S.B. 249 does not alter or even address the challenged districts in the Piedmont Triad and Mecklenburg at all, the district lines *Williams* Plaintiffs have challenged in the 2023 Plan remain in effect and are still set by the 2023 Plan. As a result, Defendants cannot possibly meet their burden of showing that this case has become moot. The Court should thus proceed to rule on those claims based on the record created at trial.

## BACKGROUND

In October 2023, the North Carolina General Assembly enacted S.B. 757. Less than six weeks later, *Williams* Plaintiffs sued to challenge S.B. 757. The Court held a bench trial in June and July 2025 in a consolidated case that included *Williams* Plaintiffs' claims. At that trial, *Williams* Plaintiffs challenged two sets of congressional districts as drawn in the 2023 Plan: those in the Piedmont Triad (CD-5, CD-6, CD-9, and CD-10), and in the

Mecklenburg area (CD-12 and CD-14). *See generally Williams* Pls.' Pretrial Br., ECF No. 128; *Williams* Pls.' Proposed Findings of Fact & Conclusions of Law, ECF No. 166.

On October 22, 2025, before the Court had ruled on those legal challenges, the General Assembly passed S.B. 249. The only changes that S.B. 249 made to North Carolina's congressional map were to CD-1 and CD-3—indeed, those are the only districts that are even mentioned in S.B. 249's text. *See* S.B. 249 § 1. Accordingly, the boundaries for all of the other districts across the state—including those in the Piedmont Triad and Mecklenburg area—remain the same as they were in the 2023 Plan and are delineated exclusively in the 2023 Plan.

The following day, on October 23, *Williams* Plaintiffs filed a motion for leave to file a supplemental complaint together with a proposed Supplemental Complaint. *See generally Williams* Pls.' Mot for Leave to File a Suppl. Compl., ECF No. 169; Suppl. Compl. for Declaratory & Inj. Relief ("Suppl. Compl."), ECF No. 169-1. The proposed Supplemental Complaint "does not alter" *Williams* Plaintiffs' "existing claims against districts unaffected by the new map"—namely, those in the Piedmont Triad and Mecklenburg area. *Williams* Pls.' Mot for Leave to File a Suppl. Compl. at 2. Instead, it adds claims to challenge features that are entirely new to the 2025 Plan. These include challenges to the redrawn CD-1 and CD-3, as well as claims that the 2025 Plan is unjustifiably malapportioned and that it unnecessarily and unjustifiably considers racial and partisan demographics as part of a voluntary, mid-cycle redistricting. *See* Suppl. Compl. ¶¶ 95–102, 159–76.

## ARGUMENT

The mootness doctrine derives from Article III of the U.S. Constitution, which "restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). There is "no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 172 (citation modified). A case "becomes moot only when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)) (emphasis added). As "[t]he Supreme Court and the Fourth Circuit have both declared," "'[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *N.C. A. Philip Randolph Inst. v. N.C. State Bd. of Elections*, No. 1:20-CV-876, 2024 WL 1717482, at *4 (M.D.N.C. Apr. 22, 2024), *aff'd*, No. 24-1512, 2025 WL 2627027 (4th Cir. Sept. 12, 2025) (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 604 (4th Cir. 2020), and *Chafin*, 568 U.S. at 172). And it is Defendants—not *Williams* Plaintiffs—who "bear[] the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). This is true even where, as here, the court raises the mootness question sua sponte. *See N.C. A. Philip Randolph Inst.*, 2024 WL 1717482, at *4.

While "statutory changes that discontinue a challenged practice" may sometimes render a case moot, "changes that do not address the essence of a plaintiff's claims[] will not forestall legal challenges to the original statute." *Holloway v. City of Virginia Beach*,

42 F.4th 266, 273 (4th Cir. 2022). Instead, where a challenged law is replaced or amended but the "superseding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot." *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) (holding amendments to challenged regulations did not render controversy moot because "the challenged aspects of that scheme remain essentially as they were before the amendments"); *see also Clarke v. CFTC*, 74 F.4th 627, 636 (5th Cir. 2023) (A "case is not moot when the government rescinds one law only to enact a different version that 'disadvantages [the plaintiffs] in the same fundamental way.'" (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993))).

In the context of redistricting, courts have specifically held that a plaintiff's challenge to a map is not mooted upon enactment of a new map in which the challenged districts remain the same. In *North Carolina v. Covington*—in which the North Carolina General Assembly similarly adopted new maps during the pendency of litigation—the U.S. Supreme Court flatly rejected the defendants' argument that the case was moot because the prior statute had been repealed. 585 U.S. 969, 975–76 (2018) (per curiam). It held that plaintiffs' claims arose from their allegations that they had been separated into different districts on the basis of race and "did not become moot" because "some of the new districts were *mere continuations of the old, gerrymandered districts*." *Id.* at 976 (emphasis added). "Because the plaintiffs asserted that they remained segregated on the basis of race," the Supreme Court reasoned, "their claims remained the subject of a live dispute, and the District Court properly retained jurisdiction." *Id.*; *see also Perez v. Perry*, 26 F. Supp. 3d

- 5 -

612, 621–22 (W.D. Tex. 2014) (denying motion to dismiss moot claims based on 2011 map where Texas legislature "engaged in the same conduct or incorporated the identical portions of the 2011 plans alleged to be illegal into the 2013 plans").

This case is plainly not moot. There can be no suggestion that the 2025 map "discontinue[s] [the] challenged practice[s]" of the 2023 Plan, *Holloway*, 42 F.4th at 273 (quotation omitted), because S.B. 249 does not change the boundaries of the originally challenged districts. *See* S.B. 249. In fact, S.B. 249 did not even replicate the 2023 versions of the 12 districts outside of CD-1 and CD-3; the newly-enacted statute makes no reference to those districts at all. The Court and the parties would thus search S.B. 249 in vain to understand the metes and bounds of the Piedmont Triad or Mecklenburg districts. Those district lines are exclusively delineated in the 2023 statute enacting the 2023 map. During the legislative hearings for the 2025 Plan, Senator Hise, the drafter of both the 2023 and 2025 Plans, confirmed as much, making clear that nothing in S.B. 249 addresses or corrects the alleged violations of the 2023 Plan. *See* Suppl. Compl. ¶ 80. The 2025 Plan thus leaves the "objectionable features" of the 2023 Plan not just "substantially undisturbed" but entirely untouched. *Naturist Soc'y*, 958 F.2d at 1520. As a result, *Williams* Plaintiffs' claims against the originally challenged districts in the Piedmont Triad and in the Mecklenburg area as drawn in the 2023 Plan remain live. *See generally Williams* Pls.' Pretrial Br.; *Williams* Pls.' Proposed Findings of Fact & Conclusions of Law.

This case is wholly unlike those that the Fourth Circuit has concluded are moot—cases in which a subsequent statute eliminates "the chief offending features of the [state's]

challenged system" or in which a decision by a district court would be "an advisory opinion as to the legal status of an effectively defunct electoral system." *Holloway*, 42 F.4th at 275. *Williams* Plaintiffs' claims against the Piedmont Triad and Mecklenburg districts in the 2023 Plan remain "live" because the statutory framework with respect to those claims is entirely unchanged. *See Chafin*, 568 U.S. at 172. As a result, *Williams* Plaintiffs continue to have a stake in the "claims submitted to the Court," Text Order (Oct. 22, 2025), and this Court can grant effectual relief to *Williams* Plaintiffs by ruling on those now-fully-litigated challenges to the Piedmont Triad- and Mecklenburg-area districts. *See Chafin*, 568 U.S. at 172.

This conclusion is further buttressed by sound considerations of judicial economy. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (district courts "possess[] inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quotation omitted)). This litigation has been ongoing for nearly two years, and this Court has conducted an entire trial on *Williams* Plaintiffs' claims; all that remains is for this Court to render a decision. To hold those claims moot now would require substantial resources to needlessly relitigate claims that remain live and identical to the claims that were pressed at trial. *See Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 490 (3d Cir. 1992) (concluding that because the parties were "reasonably likely to relitigate the issue," the "resulting expenditure of judicial resources counsels against our finding this case to be moot"); *Thomas v. Bennett*, 856 F.2d 1165, 1168 n.3 (8th Cir. 1988) (holding

case not moot and noting that "to declare this matter moot would result in a needless waste of judicial resources" as "[i]dentical issues could be raised in a new lawsuit").

* * *

For the reasons stated above, *Williams* Plaintiffs respectfully request that this Court conclude that their claims against the 2023 Plan are not moot, and resolve those claims based on the record created at trial.

Dated: October 27, 2025

| | |
|---|---|
| **PATTERSON HARKAVY LLP** | **ELIAS LAW GROUP LLP** |
| By: /s/ *Narendra K. Ghosh* <br> Narendra K. Ghosh, NC Bar No. 37649 <br> 100 Europa Dr., Suite 420 <br> Chapel Hill, NC 27517 <br> (919) 942-5200 <br> nghosh@pathlaw.com <br><br> *Counsel for Plaintiffs* | By: /s/ *Lalitha D. Madduri* <br> Lalitha D. Madduri* <br> Lucas Lallinger* <br> Qizhou Ge* <br> James J. Pinchak** <br> 250 Massachusetts Ave., Suite 400 <br> Washington, D.C. 20001 <br> Phone: (202) 968-4490 <br> Facsimile: (202) 968-4498 <br> LMadduri@elias.law <br> LLallinger@elias.law <br> AGe@elias.law <br> JPinchak@elias.law <br><br> Abha Khanna* <br> 1700 Seventh Avenue, Suite 2100 <br> Seattle, Washington 98101 <br> Phone: (206) 656-0177 <br> Facsimile: (206) 656-0180 <br> AKhanna@elias.law <br><br> \* *Special Appearance pursuant to Local Rule 83.1(d)* <br><br> \*\* *Notice of Special Appearance Pursuant to Local Rule 83.1(d) Forthcoming* |

- 9 -

Case 1:23-cv-01057-TDS-JLW   Document 172   Filed 10/27/25   Page 9 of 10

## CERTIFICATE OF SERVICE

On this 27th day of October, 2025, I electronically filed the foregoing using the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ <i>Lalitha D. Madduri</i><br>
Lalitha D. Madduri