# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAUNA WILLIAMS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>REPRESENTATIVE DESTIN HALL, in his official capacity as Chair of the House Standing Committee on Redistricting, et al.,<br><br>*Defendants*. | Civil Action No. 23 CV 1057 |
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>PHILIP BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate, et al.,<br><br>*Defendants*. | Civil Action No. 23 CV 1104 |

### NAACP PLAINTIFFS' BRIEF ON THE ENACTMENT OF SENATE BILL 249

NOW COME the NAACP Plaintiffs[1] to address the effect of the enactment of Senate Bill 249 by the North Carolina General Assembly, as directed by the Court in its Text Order dated October 22, 2025. For the reasons set forth below, NAACP Plaintiffs' challenges to the 2023 Senate Plan and the 2023 Congressional Plan are not moot.

## PROCEDURAL BACKGROUND

On December 4, 2023, NAACP Plaintiffs filed suit challenging, as relevant here, Congressional Districts 1, 5, 6, and 10 in North Carolina's 2023 Congressional Plan (S.L. 2023-145) as well as several districts in the 2023 Senate Plan (S.L. 2023-146) for violating Section 2 of the Voting Rights Act of 1965 and the Fourteenth and Fifteenth Amendments to the U.S. Constitution. NAACP Plaintiffs' suit was consolidated with the *Williams* matter on March 18, 2024, Doc. 34, followed by a period of discovery and the filing of a First Amended Complaint on April 22, 2025. Doc. 105.

The Court held a six-day bench trial on June 16, 17, 18, 20 and July 8 and 9, 2025, during which it heard testimony from dozens of witnesses and admitted hundreds of joint exhibits. *See* Doc. 137. Post-trial briefing was finalized on August 5, 2025, after which the matter was ripe for consideration and disposition by the Court.

On October 22, 2025, and acting without any external mandate, the North Carolina General Assembly enacted Senate Bill 249 (S.L. 2025-95), amending the provisions of Section 163-201(a) of the North Carolina General Statutes to change the configuration of Congressional Districts 1 and 3 ("S.B. 249"). Importantly, the bill text of S.B. 249 only

---

[1] Plaintiffs North Carolina State Conference of the NAACP, Common Cause, Mitzi Reynolds Turner, Dawn Daly-Mack, Corine Mack, Calvin Jones, Linda Sutton, and Syene Jasmin.

targeted these two Congressional districts, and the prior configuration of all others (including Congressional Districts 5, 6, 9, and 10) remained unchanged from their configuration as set forth in the 2023 Congressional Plan, S.L. 2023-145.[2]

NAACP Plaintiffs intend to file in short order a Motion for Leave to Supplement their First Amended Complaint, appending a proposed Supplemental Complaint setting forth allegations related to the enactment of S.B. 249 and challenging the mid-decade redrawing, and configuration of, Congressional Districts 1 and 3.

## ANALYSIS

I. **The Case Is Not Moot.**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *See United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted)). "But the bar for maintaining a legally cognizable claim is not high: 'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 604 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). In other words, "[a] case becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party." *Ketter*, 908 F.3d at 65 (4th Cir.

---

[2] *Compare* S.L. 2025-95, available at https://www.ncleg.gov/Sessions/2025/Bills/Senate/PDF/S249v4.pdf, *with* S.L. 2023-145, available at https://www.ncleg.gov/Sessions/2023/Bills/Senate/PDF/S757v4.pdf.

2018) (emphasis in original) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

That is not the situation here. The parties retain a strong and ongoing interest in the outcome of this case, notwithstanding the enactment of S.B. 249, for at least four reasons:

*First*, S.B. 249 did not alter any configuration of the districts in the 2023 Senate Plan challenged by NAACP Plaintiffs, and thus those challenges (counts one through five of the First Amended Complaint) remain ripe for final judgment. It is therefore appropriate for the Court to issue a partial judgment as to those specific counts pursuant to Federal Rule of Civil Procedure 54(b) in time to provide relief for the 2026 elections. *See* Fed. R. Civ. P. 54(b) ("[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."); *MCI Constructors, LLC v. City Of Greensboro*, 610 F.3d 849, 856 (4th Cir. 2010) (affirming Rule 54(b) judgment where resolved claims would neither affect nor be affected by adjudication of remaining claims).[3] This can be done, in fact, in time to provide relief for the 2026 elections.

---

[3] Legislative Defendants' notice of the recently decided case *Rodney Pierce v. North Carolina State Board of Elections*, No. 4:23-CV-193-D (E.D.N.C. Sept. 30, 2025), Doc. 167, provides no basis for this Court to withhold a ruling on the pending Senate Plan claims. The *Pierce* decision has been appealed and, in any event, has no preclusive effect here. The *Pierce* plaintiffs are entirely distinct from Plaintiffs in this action, and there is no identity or privity between the parties. See *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981) (res judicata requires "identity of parties or their privies" between the two actions); *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (collateral estoppel applies only when "the party against whom [it] is asserted had a full and fair opportunity to litigate the issue in the previous forum" (cleaned up)). Should the Court desire further briefing on the question of preclusion, Plaintiffs are prepared to provide it.

*Second*, S.B. 249 did not alter the configurations of challenged 2023 Congressional Districts 5, 6, and 10, the boundaries for which are set forth in the 2023 Congressional Plan, S.L. 2023-145.[4] Accordingly, the specific challenges implicating those districts (counts eight and nine of the First Amended Complaint), similarly remain ripe for final judgment pursuant to Rule 54(b).

*Third*, and with respect to the remaining claims set forth in the First Amended Complaint relating to 2023 Congressional District 1, S.B. 249 did not cure—and in fact expands upon—the unlawful features of the 2023 Congressional Plan, thereby perpetuating the same injuries already at the heart of this litigation. Indeed, Plaintiffs intend to file in short order a motion for leave to file a supplemental complaint challenging S.B. 249's alteration to Congressional Districts 1 and 3. The Court's resolution of those new claims will bear upon the same rights and obligations already at stake in this case.

The Fourth Circuit has held that a legislative amendment to a challenged law will moot a challenge "only when it 'significantly alters the posture of th[e] case.'" *Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 419 (4th Cir. 2022). Where a statute, as amended, "continues to abridge plaintiffs' rights, litigation may press on." *Id.*; *see also N.C. A. Philip Randolph Inst. v. N.C. State Bd. of Elections*, No. 1:20CV876, 2024 WL 1717482, at *5 (M.D.N.C. Apr. 22, 2024) ("[A] superseding statute or regulation that changes a prior law must remedy the challenged aspects of the prior law in order for a case challenging that law to be deemed moot."), *aff'd*, No. 24-1512, 2025 WL 2627027 (4th Cir. Sept. 12, 2025);

---

[4] *See supra*, n.1.

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) (same); *Rembert v. Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995) ("[W]hen an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot."); *North Carolina v. Covington*, 585 U.S. 969, 976 (2018) (holding gerrymandering claims were not mooted by new legislative map where "new districts were mere continuations of the old, gerrymandered districts").

In their post-trial briefing, Legislative Defendants argued, with respect to Congressional District 1, that "no evidence reflects racially discriminatory effect in CD1" because this district "performed in 2024 for Democrats whom Plaintiffs identified as the Black-preferred candidates." Doc. 164-1 at 37-38 (Legislative Defendants' Proposed Conclusions of Law). They asserted that "Plaintiffs cannot credibly claim discriminatory effect where their candidates of choice prevailed" and where "the [Black Voting Age Population] of these districts did not meaningfully change between plans." *Id.* at 38. Yet, as will be pleaded in NAACP Plaintiffs' proposed Supplemental Complaint, the basis for this defense has been even further undermined by the General Assembly's discriminatory targeting of Congressional District 1 by S.B. 249 last week, with Black Voting Age Population materially declining as part of a textbook cracking of Black voters in this area of the historic Black Belt of North Carolina between Congressional Districts 1 and 3.

As will be set forth in the proposed Supplemental Complaint, the changes in S.B. 249 has caused a significant drop in the Black Voting Age Population of Congressional District 1. As a consequence, and as demonstrated by past electoral data, it is unlikely that Black voters will overcome the extreme white bloc voting in this area to successfully elect

a candidate of their choice under this new, even more dilutive configuration. This is apparent from the electoral data indicating performance within 2025 Congressional Districts 1 and 3, made available during the legislative process, *see* S.B. 249 Stat Pack at PDF 2-31 (electoral performance results).[5]

In fact, the severity of the racially polarized voting in this area of the historic Black Belt was clearly demonstrated by the analysis of Dr. Kassra Oskooii at trial, as excerpted below:



Figure 9 from March 2023 Supplemental Expert Report of Dr. Kassra Oskooii (Trial Ex. NAACPPX 208)



Figure C-5 from Appendix C to March 2023 Supplemental Expert Report of Dr. Kassra Oskooii (Trial Ex. NAACPPX 211)

Since the enactment of S.B. 249 has only furthered and, indeed, worsened the same alleged vote dilution and harm caused by the 2023 Congressional Plan as identified in the First Amended Complaint, the case is not moot.

As provided in Federal Rule of Civil Procedure 15, and as will be made clear in the forthcoming Motion for Leave to Supplement the Complaint filed concomitantly with this Brief, the appropriate disposition of this matter is to permit the supplementation and allow

---

[5] Available at https://webservices.ncleg.gov/ViewBillDocument/2025/7665/0/SL%202025-95%20-%20StatPack%20Report.

7

the NAACP Plaintiffs' challenge to the amended configurations of Congressional Districts 1 and 3 to proceed, building upon the record already established at trial with those supplemental proceedings that the Court deems appropriate. Furthermore, since S.B. 249 is an amendment to the 2023 Congressional Plan, the enactment of and, indeed, prior challenge to the 2023 configurations of Congressional Districts 1 and 3 remains relevant legislative and procedural history to a challenge to S.B. 249, as does the testimony already adduced at trial as to the apparent primary map-drawer of both 2023 and 2025 Congressional drafts, Senator Ralph Hise. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977) (historical background of a state action is relevant to determining whether racially discriminatory intent existed). Accordingly, the interests of judicial efficiency are also served by allowing supplementation in this scenario.

*Fourth*, should S.B. 249 be struck down as NAACP Plaintiffs' will ask this Court to do in their proposed Supplemental Complaint, the prior configurations for Congressional Districts 1 and 3 as set forth in the 2023 Congressional Plan will be reinstated. At that point, the legality of those prior configurations would again become the subject of dispute. It would be contrary to the interests of judicial economy, and extremely prejudicial to the NAACP Plaintiffs, if the Court were to dismiss the challenge to the 2023 Congressional Plan—after hearing over a week of testimony—and force the matter to be retried in the event that the 2023 Congressional Plan were reinstated at some point in the future.

It is not theoretical that the 2023 Congressional Plan could be before the Court again soon. This is because, far from enacting entirely new districts, S.B. 249 merely amended Section 163-201(a) of the North Carolina General Statutes as to the boundaries of

8

Congressional Districts 1 and 3.[6] Accordingly, if there were to be any injunction against S.B. 249, the NAACP Plaintiffs expect that the Congressional Districts would automatically revert their prior, unamended form. *Cf.* Order, *Democracy North Carolina v. Hirsch*, Case No. 23-CV-878 (M.D.N.C. July 21, 2025) (appended as Exhibit A) (noting that a case challenging a provision of the 2023 Senate Bill 747 was not moot despite a consent judgment altering that provision's administration because, if the plaintiffs prevailed, they could obtain an injunction restoring the pre-amendment legal framework).

Furthermore, while the provisions of Section 120-2.4 of the North Carolina General Statutes permit remedial redistricting in some circumstances, it should not be triggered here based solely upon the enjoining of S.B. 249 because the General Assembly's *own plan*, as set forth in the 2023 Congressional Map (S.B. 2023-145), would automatically come into effect at that point. Section 120-2.4 prohibits any court from "impos[ing] its *own* substitute plan unless the court first gives the General Assembly a period of time to remedy any defects identified by the court in its findings of fact and conclusions of law" (emphasis added). That provision exists because, under ordinary circumstances, the General Assembly has undertaken the redrawing of districts following the release of the U.S. Census (requiring population rebalance and at times a change in the number of districts) or pursuant to court order requiring the remedy of specified defects. Neither circumstance is implicated here, where the General Assembly has decided to amend its *own* plan mid-decade. Because an injunction against enforcing S.B. 249 would revert the configurations

---

[6] *See supra*, n.1.

of Congressional Districts 1 and 3 back to the General Assembly's own configuration, no such court-ordered "substitute plan" is implicated and, as a result, the challenges to the 2023 Congressional Plan once again become in dispute and ripe for disposition.

This conclusion is consistent with the Supreme Court's reasoning in *Moore v. Harper*, 600 U.S. 1, 14-16 (2023), where the Court held that a case remained live even after the challenged legislative maps were no longer in effect—because they could "again take effect." The Court explained that because such a possibility existed, the parties "continue[d] to have a personal stake in the ultimate disposition of the lawsuit." *Id.* (cleaned up); *cf. Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) ("A case is not moot, and the exercise of federal jurisdiction may be appropriate . . . if . . . the apparent absence of a live dispute is merely a temporary abeyance of a harm that is 'capable of repetition, yet evading review.'").

For the reasons set forth above, the challenges brought in this consolidated case by the NAACP Plaintiffs are not moot. The appropriate course is for the Court to issue partial judgment on the challenges to the 2023 Senate Plan and 2023 Congressional Districts 5, 6, and 10 pursuant to Rule 54(b) of the Federal Rules of Procedure, permit supplementation of NAACP Plaintiffs' challenges to 2025 Congressional Districts 1 and 3 so that litigation on the Supplemental Complaint may proceed with respect to those districts, and hold in abeyance Plaintiffs' challenges to the 2023 Congressional Districts 1 and 3, which will once again be ripe for consideration if and when the 2025 configurations be struck down.

This approach promotes judicial economy by preserving the extensive trial record already developed, avoiding the needless repetition of evidence and testimony, and is of no

10

Case 1:23-cv-01057-TDS-JLW    Document 174    Filed 10/27/25    Page 10 of 13

prejudice to Legislative Defendants who chose, at their sole discretion, to redistrict Congressional District 1 and 3 while a decision on the merits of the trial was pending before this Court. Legislative Defendants have already defended the 2023 configurations of Congressional Districts 1 and 3 at trial and would suffer no prejudice from holding those claims in abeyance.

In contrast, dismissing the 2023 District 1 and 3 claims as moot would substantially prejudice Plaintiffs—who would be forced to refile and re-litigate those claims in full if the 2025 configurations are struck down—while also impose a substantial and unnecessary burden on the Court, which would be required to rehear evidence already presented rather than relying on the existing trial record. Holding the claims relating to Congressional Districts 1 and 3 under the 2023 Congressional Plan in abeyance while litigation under the Supplemental Complaint proceeds as to those districts with the benefit of the existing record therefore represents the most efficient and equitable path forward.

Dated: October 27, 2025

Respectfully submitted,

*/s/ Hilary Harris Klein*
Hilary Harris Klein

**HOGAN LOVELLS US LLP**

J. Tom Boer*
Olivia Molodanof*
Madeleine Bech*
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: 415-374-2300
Facsimile: 415-374-2499
tom.boer@hoganlovells.com
olivia.molodanof@hoganlovells.com
madeleine.bech@hoganlovells.com

**SOUTHERN COALITION FOR SOCIAL JUSTICE**

Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Christopher Shenton (State Bar #60442)
Mitchell D. Brown (State Bar #56122)
Lily Talerman (State Bar #61131)
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
Telephone: 919-794-4213
Facsimile: 919-908-1525

Jessica L. Ellsworth*
Misty Howell*
Odunayo Durojaye*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
jessica.ellsworth@hoganlovells.com
misty.howell@hoganlovells.com
odunayo.durojaye@hoganlovells.com

Harmony Gbe*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-785-4600
Facsimile: 310-785-4601
harmony.gbe@hoganlovells.com

*Appearing in this matter by Special Appearance pursuant to L-R 83.1(d)

hilaryhklein@scsj.org
jeffloperfido@scsj.org
chrisshenton@scsj.org
mitchellbrown@scsj.org
lily@scsj.org

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          /s/ *Hilary Harris Klein*
                                          Hilary Harris Klein